# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BLUERADIOS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 21-cv-10488-DJC |
| HAMILTON, BROOK, SMITH & REYNOLDS, P.C., DAVID J. THIBODEAU, JR., LAWRENCE P. COGSWELL III, GERALD KAZANJIAN, DAVID E. BROOK, JOSHUA MATLOFF, NELSON SCOTT PIERCE, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

CASPER, J.                                                          January 14, 2022

## I.    Introduction

Plaintiff BlueRadios, Inc. ("BlueRadios") has filed this lawsuit against Defendants Hamilton, Brook, Smith & Reynolds, P.C. (the "Law Firm"), David J. Thibodeau, Jr. ("Thibodeau"),  Lawrence P. Cogswell III ("Cogswell"), Gerald Kazanjian ("Kazanjian"), David E. Brook ("Brook"), Joshua Matloff ("Matloff"), Nelson Scott Pierce ("Pierce") (collectively, "Defendants") alleging legal malpractice (Count I), breach of fiduciary duty (Count II), aiding and abetting breach of fiduciary duty (Count III), fraudulent nondisclosure or fraudulent concealment (Count IV), aiding and abetting fraudulent concealment (Count V), civil conspiracy (Count VI), and a violation of Mass Gen. L. c. 93A ("Chapter 93A") (Count VII).  D. 47.  Defendants have

1

partially moved to dismiss.[1]  D. 54.  For the reasons stated below, the Court ALLOWS the motion

in part and DENIES it in part.

## II.      Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant

to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim

for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation

omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific

inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must

perform a close reading of the claim to distinguish the factual allegations from the conclusory legal

allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory

legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual

allegations present a "reasonable inference that the defendant is liable for the conduct alleged."

Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint

must provide sufficient factual allegations for the Court to find the claim "plausible on its face."

García-Catalán, 734 F.3d at 103 (citation omitted).

## III.     Factual Background

The following summary is based upon the allegations in BlueRadios' amended complaint,

D. 47, which are accepted as true to resolve the motion to dismiss.

### A.      BlueRadios' Initial Dealings with Kopin

BlueRadios developed and marketed wireless hardware and software to manufacturers in

various industries looking to equip products with Bluetooth technology.  D. 47 ¶¶ 18-20.  Kramer,

---

[1] All Defendants have moved to dismiss Counts III-VII of the complaint, and Brook, Cogswell,
Matloff and Pierce have moved to dismiss Counts I-II of the complaint.  D. 54.

Tucker, Sample and Jones were employees of BlueRadios.  Id.  ¶¶ 21-24.  Kopin manufactured microdisplays that it sold in military, industrial and consumer markets.  Id. ¶ 26.  Fan, Choi, Pombo and Jacobsen were employees of Kopin.  Id.  ¶¶ 27-30.

In 2006, BlueRadios and Kopin discussed a potential business relationship to design, develop, and manufacture a headset, later called "Golden-i," that would wirelessly play audio and video.  Id. ¶ 32.  BlueRadios began sharing its technology, which would be incorporated into the Golden-i.  Id. ¶¶ 39, 162-63.  Jacobsen and Kramer discussed the need to draft and file provisional patent applications for the technology to be developed during the Golden-i project.  Id. ¶ 41.  In April 2007, Kramer and Sample traveled to Kopin's headquarters and demonstrated BlueRadios' technology to Kopin, and providing Kopin with detailed information about how a head-mounted, wireless computer could become commercially feasible.  Id. ¶¶ 44-45.  In May 2007, Jacobsen e-mailed Kramer that Kopin believed BlueRadios' technology was essential to Golden-i's development and stated that it "is important that we protect the technology, file patents where appropriate and make [sure] that BlueRadios receives all royalties and benefits coming to them." Id. ¶¶ 46-47.

In May 2007, the parties signed and entered into the "Golden-i Contract,"[2] which states in relevant part:

> BlueRadios will own all rights, title and interest including intellectual property rights in any and all technology and products developed by it before the start of this contract or developed outside the scope of this contract.
>
> Any intellectual property rights developed by BlueRadios in the course of this development contract ("Joint Developments"), will be owned jointly with no obligation of financial accounting to the other party; provided, however, that BlueRadios agrees not to use, sell or license Joint Developments for any micro-display applications.

---

[2] The parties renewed the Golden-i Contract in October 2008.  See id. ¶¶ 202-04.

> Kopin will have the sole right and responsibility to decide whether or not to seek patent protection with respect to any intellectual property rights that are developed as part of or incorporated into the project deliverables and to file for, procure and maintain such patents at Kopin's expense.

Id. ¶¶ 48-49; D. 47-1 at 5.[3]  After the parties signed the contract, Jacobsen met with BlueRadios employees to discuss the BlueRadios' technology further and how BlueRadios planned to incorporate aspects of that technology into Golden-i.  D. 47 ¶ 50.  Jacobsen assured Jones that Kopin would keep BlueRadios' information confidential until they filed patent applications and that these applications would name BlueRadios' employees as inventors.  Id. ¶ 51.  BlueRadios then began adapting its previously developed technology, and developing new technology, for use in Golden-i, and Kopin began paying BlueRadios per the contract.  Id. ¶ 52.

**B.** **Initial Patent Discussions and Decision to Engage the Law Firm**

Kopin expressed its desire to patent the technology it was developing with BlueRadios, but BlueRadios had no previous patent experience and no prior relationship with a patent law firm. Id. ¶¶ 54-56.  Kopin had a longstanding and close relationship with the Law Firm.  Id. ¶ 57.  Brook, a founder a principal of the Law Firm, had served on Kopin's Board since 1984 and counsels Kopin on developing IP strategies to protect Kopin's investments.  Id. ¶ 58.  Brook was also a Kopin shareholder, owning more than 300,000 shares of Kopin until he sold a majority of his shares for more than $2.8 million prior to BlueRadios' filing this lawsuit.  Id. ¶ 60.  In 2007, BlueRadios was not aware that Brook served on Kopin's board or held shares of the company, and neither the Law Firm nor Kopin disclosed this to BlueRadios.  Id. ¶ 61.

---

[3] In deciding a motion to dismiss, the Court may consider any document, like the Golden-i contract, fairly incorporated into the complaint.  See Schatz, 669 F.3d at 55.

Kopin insisted that BlueRadios and Kopin use the Law Firm for patent work on the technology developed for Golden-i.  Id. ¶ 62.  BlueRadios agreed to use the Law Firm to prepare, file, prosecute, procure and maintain the project's patents ("Patent Work").  Id. ¶ 63.  Per the Golden-i Contract, Kopin would pay the Law Firm's fees and costs associated with its Patent Work.  Id. ¶ 64.

Brook, Thibodeau and Pierce were the Law Firm's partners responsible for overseeing the Patent Work.  Id. ¶ 74.  As such, Brook, Thibodeau and Pierce were kept informed of, were involved in, oversaw, and directed the Patent Work.  Id. ¶ 75.  The Law Firm did not disclaim representation of BlueRadios or inquire into whether BlueRadios had its own representation.  Id. ¶ 77.  Kramer and Tucker believed that Thibodeau was aware of the arrangement between BlueRadios and Kopin and that the Law Firm would be working to further both BlueRadios' and Kopin's interests with the Patent Work.  Id.

Throughout Summer 2007, BlueRadios continued to provide information to the Law Firm abouts its technology so that the Law Firm could prepare patent applications for same.  Id. ¶ 82.  Relying upon the Law Firm's advice about what was patentable, BlueRadios made decisions about and certain changes to its technology and designs.  Id. ¶ 96.  During these conversations, the Law Firm never told BlueRadios that the Law Firm did not represent it, nor about any potential conflicts in representing both BlueRadios and Kopin.  Id. ¶¶ 97-101.

## C.     **The Law Firm Files Provisional Patent Applications**

BlueRadios authorized the Law Firm to prepare, file and prosecute several patent applications on behalf of BlueRadios and its employee inventors, and executed powers of attorney authorizing the Law Firm to act in its interest before the U.S. Patent and Trademark Office

("USPTO") and other patent authorities, which the Law Firm filed with these offices.  Id. ¶¶ 149, 151.

### 1.    '177 Provisional Application

In December 2007, Thibodeau e-mailed Jacobsen and Tucker a first draft of BlueRadios' hardware patent application.  Id. ¶ 156.  The next month, January 2008, Thibodeau filed the '177 Provisional Application.  Id. ¶ 160.  The '177 Provisional Application named Thibodeau as the applicants' power of attorney and asked the USPTO to direct to him all correspondence related to same.  Id. ¶ 161.  The application named BlueRadios employees as applicants and inventors.  Id. ¶ 165.

### 2.    '090 Provisional Application

Thibodeau filed the '090 Provisional Application on January 4, 2008.  Id. ¶ 169.  That application named only Christopher Parkinson ("Parkinson") as the inventor and applicant.  Id. ¶ 171.[4]  Prior to filing, the draft '090 Provisional Application also named Tucker and Sample of BlueRadios as inventors.  Id. ¶ 170.  The '090 Provisional Application included BlueRadios' Hardware Figure and incorporated by reference the '177 Provisional Application in its description of the Hardware Figure, to which Parkinson did not contribute.  Id. ¶¶ 172-74.  The '090 Provisional Application also contains a claim whose subject matter was conceived entirely by BlueRadios employees.  Id. ¶ 176.  Thibodeau and the Law Firm later filed documents with the USPTO that assigned Parkinson's rights in the '090 Provisional Application to Kopin.  Id. ¶ 181.

---

[4] Parkinson initially worked for Kopin as a consultant and had met with BlueRadios on several occasions where BlueRadios shared the technology it was developing for Golden-i.  Id. ¶¶ 166-68. On July 28, 2008, BlueRadios hired Parkinson as an employee to work on Golden-i.  Id. ¶ 193. Parkinson signed a Proprietary Information and Inventions Agreement required Parkinson to list any invention he had prior to his employment at BlueRadios, and Parkinson stated that he had no prior inventions.  Id. ¶¶ 196-97.  BlueRadios employed Parkinson until June 24, 2009, at which point he went to work at Kopin, where he remained until 2015.  Id. ¶¶ 201, 337-38.

3.      '662 Provisional Application

On May 8, 2009, Kazanjian filed the '662 Provisional Application that contained subject matter conceived by Parkinson while he was employed at BlueRadios, but the application did not name any BlueRadios employees as inventors and named only Kopin as the applicant/assignee. Id. ¶¶ 325-36.   After Parkinson began working as a Kopin employee, the Law Firm filed patent applications that contained the same figures in the '662 Provisional Application (i.e., technology that Parkinson conceived while at BlueRadios).  Id. ¶¶ 341-42.

**D.      The Law Firm Files Non-Provisional Patent Applications**

In December 2008, Kazanjian e-mailed Choi, Kopin's Chief Technology Officer, Jacobsen and Parkinson about converting the '177 and '090 Provisional Applications to non-provisional applications.  Id. ¶ 205.  Jacobsen, Tucker and Parkinson discussed adding Sample of BlueRadios as an inventor, and on January 2, 2009, Jacobsen e-mailed Choi and Kazanjian, blind copying Tucker, stating that Sample should be added to the non-provisional applications.  Id. ¶¶ 207-09. Sample was never added as an inventor and BlueRadios alleges that Kopin asked Kazanjian and the Law Firm to keep Sample off the application.  Id. ¶¶ 211-12.

1.      '627 Application

The Law Firm drafted the '627 Application, with the assistance of Tucker, and filed it on January 5, 2009, to claim priority to the '177 Provisional Application.  Id. ¶¶ 215-18, 221.  The '627 Application listed Jacobsen as an inventor in the place of Jones, a BlueRadios employee.  Id. ¶ 221.  Jacobsen did not contribute to the conception of the subject matter in any of the patent claims.  Id. ¶ 222.  The Law Firm never amended the '627 Application to remove Jacobsen.  Id. ¶ 229.  The related patent issued on January 15, 2013 and named Jacobsen as an inventor.  Id. ¶ 230.

### 2.    '462 Application

On May 14, 2008, the Law Firm filed the '462 Application, which claimed priority to the '177 Application, and contained the Bubble Figure and Hardware Figure conceived by BlueRadios employees.  Id. ¶¶ 231-33.  The application originally named employees from BlueRadios and Kopin as inventors but named Kopin as the sole assignee of inventive rights.  Id. ¶¶ 234-35.[5]  On November 21, 2008, Kazanjian and Thibodeau asked Tucker to sign a declaration of inventorship for the '462 Application, which Tucker signed and returned to the Law Firm.  Id. ¶¶ 249-50.  On January 12, 2009, the Law Firm filed declarations signed by Jacobsen, Parkinson and Pombo naming themselves as inventors on the '462 Application but did not file any declaration from Tucker or Sample who were co-inventors.  Id. ¶¶ 248, 251-52.  On March 6, 2009, Kazanjian filed an amendment to the '462 Application, which BlueRadios was not aware of, cancelling the '462 Application's claim of benefit to the '177 Provisional Application and stated to the USPTO that the '462 Application should only name Jacobsen, Parkinson and Pombo of Kopin as inventors.  Id. ¶ 253.  After the amendment, the '462 Application still contained BlueRadios' Hardware Figure, Bubble Figure and one claim.  Id. ¶ 254.  The '462 Application issued on August 15, 2015.  Id. ¶ 262.

### 3.    International Applications

On May 14, 2008, Thibodeau also filed an international application ("'147 PCT") that contained identical claims to the '462 Application filed with the USPTO, but the '147 PCT named BlueRadios inventors.  Id. ¶¶ 263-71.  The Law Firm and Kopin abandoned the '147 PCT in May 2011 before a patent issued but never informed BlueRadios.  Id. ¶¶ 272-75.

---

[5] On January 5, 2009, the Law Firm filed the '646 Application as a continuation of the '462 Application and similarly contained inventions conceived by BlueRadios employees but named only Kopin as the assignee of inventive rights.  Id. ¶¶ 237-45.

On March 27, 2009, Thibodeau filed another international application ("601 PCT") that included BlueRadios' Hardware Figure but named only Kopin employees as inventors and applicants.  Id. ¶¶ 279-85.  Neither Kopin nor the Law Firm informed BlueRadios that it had filed the '601 PCT.  Id. ¶ 286.

### E.      BlueRadios Removed from Patent Applications

On June 29, 2012, Thibodeau and Matloff e-mailed Choi about the '646 Application, copying Brook, Cogswell, Pierce and Fan (but nobody from BlueRadios) about "strategies for handling and BlueRadios related claims."  Id. ¶ 292.  The e-mail discussed how Kopin could drop BlueRadios related claims through either claim amendment, which would cancel claims having BlueRadios subject matter and list only Kopin inventors, or through a request to correct inventorship.  Id.  The e-mail noted that the latter course may require approval from BlueRadios. Id.  On July 30, 2012, Matloff e-mailed Choi, Jacobsen and Parkinson, copying Brook, Thibodeau and Pierce, requesting Kopin's input regarding "strategy for handling BlueRadios related claims." Id. ¶ 297.  Choi replied to the Law Firm that he preferred filing a continuation to the '646 Application with revised claims that involved Kopin inventors only, which would not require BlueRadios' approval.  Id. ¶ 298.  On August 27, 2012, Matloff e-mailed Choi stating that the Law Firm had researched procedures on correcting inventorship and determined that it was unnecessary to file a continuation application, but rather the same goals could be accomplished through claim amendments.  Id. ¶ 299.  Choi agreed to this proposal on September 5, 2012.  Id.  Matloff drafted and filed documents with the USPTO amending the '646 Application by cancelling claims containing subject matter conceived by BlueRadios inventors and requesting that the USPTO delete BlueRadios inventors from the '646 Application.  Id. ¶¶ 301-03.  The '646 Application

issued on December 9, 2014, naming only Parkinson and Jacobsen as inventors in the patent that issued.  Id. ¶ 311.

### F.     **Patents Filed and Prosecuted Without Naming BlueRadios**

On August 22, 2014, Cogswell and the Law Firm prepared and filed the '333 Application, a continuation in part of prior applications, which included BlueRadios' Hardware Figure, Bubble Figure and developments associated with same, but named only Jacobsen, Pombo and Parkinson as inventors, and Kopin as the sole applicant.  Id. ¶¶ 313-18.  The Law Firm never informed BlueRadios of its intent to file or its filing of the '333 Application.  Id. ¶ 320.  On May 21, 2020, the USPTO sent the Law Firm a notice of abandonment of the '333 Application, which the Law Firm never disclosed to BlueRadios.  Id. ¶ 324.

## IV.     Procedural History

BlueRadios instituted this action on March 22, 2021, D. 1, and then amended its complaint. D. 47.  Defendants have now moved to dismiss.  D. 54.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 68.

## V.     Discussion

### A.     **Aiding and Abetting Breach of Fiduciary Duty and Fraudulent Nondisclosure (Counts III and V)**

Defendants assert that BlueRadios' aiding and abetting claims (Counts III and V) fail to state a claim because they do not allege elements of the underlying torts:  breach of fiduciary duty and fraudulent nondisclosure.  D. 55 at 18-20.

"Fiduciary duties may arise . . . as a matter of law . . . or [] as determined by the facts established upon evidence indicating that one person is in fact dependent on another's judgment in business affairs or property matters."  UBS Fin. Servs., Inc. v. Aliberti, 483 Mass. 396, 406 (2019) (citations and internal quotation marks omitted).

As an initial matter, the Court is not persuaded by BlueRadios' argument that it has alleged a fiduciary relationship between BlueRadios and Kopin as a matter of fact.  The amended complaint does not allege that BlueRadios faced "great disparity or inequality" relative to Kopin or that Kopin abused such disparity with respect to their own business.  See Gemini Invs., Inc. v. Ches-Mont Disposal, LLC, 629 F. Supp. 2d 163, 168 (D. Mass. 2009).  To the contrary, BlueRadios' alleges that it had superior technical knowledge that Kopin needed for manufacturing its products.  See D. 47 ¶¶ 33-34, 42.  Moreover, to transform a business relationship into a fiduciary relationship as a matter of fact, BlueRadios would need to allege, which it has not, that it relied upon Kopin's guidance in a transaction where Kopin had specialized knowledge.  See Gemini Invs., Inc., 629 F. Supp. 2d at 168 (quoting Industrial General Corp. v. Sequoia Pacific Systems Corp., 44 F.3d 40, 44 (1st Cir. 1995)).  BlueRadios contends that it relied upon Kopin for patent protection, and to select a patent law firm, see D. 59 at 13, but there is no allegation that Kopin had specialized knowledge in this area, aside from having prior experience in seeking patents for its own inventions and working with the Law Firm for same.

BlueRadios' argument that a fiduciary relationship arose as a matter of law fares better.  "Joint ventures in Massachusetts create fiduciary duties between the parties, demanding the utmost duty of good faith and loyalty."  Petricca Dev. Ltd. P'ship v. Pioneer Dev. Co., 40 F. Supp. 2d 49, 52–53 (D. Mass. 1999), aff'd, 214 F.3d 216 (1st Cir. 2000) (citing Cardullo v. Landau, 329 Mass. 5 (1952)).  Joint ventures "arise only if the parties intended to create such a relationship," and the "parties' contractual agreement establishes their obligations to each other and dictates whether they created a joint venture."  Id.  Courts consider several factors when assessing the parties' contract for the existence of a joint venture:

> (1) an agreement by the parties manifesting their intention to associate for joint profit not amounting to a partnership or a

> corporation; (2) a contribution of money, property, effort, knowledge, skill, or other assets to a common undertaking; (3) a joint property interest in all or parts of the subject matter of the venture; (4) a right to participate in the control or management of the enterprise; (5) an expectation of profit; (6) a right to share in profits; (7) an express or implied duty to share in losses; and (8) a limitation to a single undertaking (or possibly a small number of enterprises).

Petricca Dev. Ltd. P'ship, 40 F. Supp. 2d at 53 (quoting Shain Investment Co., Inc. v. Cohen, 15 Mass. App. Ct. 4, 8-9 (1982)); see Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 623–24 (1990) (crediting Shain factors).  "Although not dispositive, the sharing of losses is a significant factor indicating the existence of a [joint] venture." Laudano v. 214 S. St. Corp., 608 F. Supp. 2d 185, 193 (D. Mass. 2009) (citing Shain, 15 Mass. App. Ct. at 8–9) (concluding no joint venture where there was no evidence of agreement to "share in any potential losses or expenses" and "control in the management of the venture not merely as an employee but as an executive or stakeholder of the related entities").

Here, BlueRadios' contract with Kopin establishes these factors.  See D. 47-1; D. 47 ¶¶ 35-36, 50 (describing parties' positions in Golden-i project).  The parties contracted to participate jointly in developing Golden-i (i.e., a common undertaking) for mutual profit, but did not enter a partnership or form a corporation.  See D. 47-1 at 2-5.  BlueRadios controlled the development of certain Bluetooth technologies and provided those to Kopin, who would assist in developing and manufacturing the hardware products, the costs of which Kopin covered.  See id.  The parties further agreed to a division of royalties based on sales of same (i.e., a division of expected profit and contemplation of shared loss), and divided responsibility and control over the development of the software and hardware.  See id.

Defendants' sole argument to the contrary is that the contract does not establish a joint venture with respect to obtaining patent rights, which was the exclusive control of Kopin.  See D.

62 at 8.  But that argument misstates the focus of the factors outlined above, which look to the objective of the enterprise in general, an intent to associate for joint business purpose, not one term of the contract related to one facet of the venture.   See Gurry, 406 Mass. at 623 (explaining that Shain factors evince "key requirement" of joint venture, which is an "intent to associate"); Judge v. Gallagher, 17 Mass. App. Ct. 636, 640-41 (1984) (applying Shain factors and assessing whether parties shared control or management of enterprise in general, looking to all aspects of parties' participation in same).  Accordingly, because the Golden-i contract arguably reflects such joint venture, BlueRadios has, at least, alleged the existence of a fiduciary duty between the two, giving rise to a duty to disclose by Kopin.  See Stolzoff v. Waste Sys. Int'l, Inc., 58 Mass. App. Ct. 747, 763 (2003); Taylor v. Am. Chemistry Council, 576 F.3d 16, 31 (1st Cir. 2009).

Accordingly, the Court denies the motion to dismiss as to Counts III and V on this basis.

**B.**     **Challenging Lack of Unlawful Intent as to Counts III through VI**

Defendants assert that Counts III-VI (breach of fiduciary duty, fraudulent nondisclosure and aiding and abetting of same claims along with the civil conspiracy claim) fail because BlueRadios' has not plausibly alleged the "unlawful intent" element that each claim requires.[6]  D. 55 at 20.  To satisfy the "unlawful intent" element, BlueRadios must show that Defendants had "[1] knowledge that the other's conduct is tortious, and [2] an intent to substantially assist or encourage that conduct."  Taylor, 576 F.3d at 35 (citing Payton, 512 F. Supp. at 1035).[7]

---

[6] Unlawful intent is not an element of a nondisclosure claim (Count IV), but rather it applies to aiding and abetting liability for same (Count V) as well as to aiding and abetting breach of fiduciary duty (Count III) and civil conspiracy (Count VI).  See Thomas v. Harrington, 909 F.3d 483, 491 (1st Cir. 2018); Payton v. Abbott Labs, 512 F. Supp. 1031, 1035 (D. Mass. 1981).

[7] Defendants note that when the underlying tort of an aiding and abetting claim is fraud, a plaintiff must share the "alleged objective to defraud."  D. 55 at 20 (quoting Taylor, 576 F.3d at 36 n.21 (citing Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458 (2002)).  That requirement, however, applies to a fraudulent misrepresentation claim, which is distinct from the claim brought

Here, the amended complaint plausibly alleges that Defendants were aware of the fiduciary relationship between BlueRadios and Kopin, such that certain actions taken by Kopin and the Law Firm would need to be disclosed to BlueRadios based on the relationship, but that the Law Firm worked with Kopin to avoid such disclosure.  See, e.g., D. 47 ¶ 66 (alleging that Law Firm was sent Golden-i contract, which established joint venture), ¶ 292 (alleging that Law Firm exchanged e-mail with Kopin that outlined options to remove BlueRadios' inventors from patents and acknowledging that one option required disclosure to BlueRadios), ¶ 298 (alleging that Kopin selected option that did not require disclosure).  Additionally, the amended complaint plausibly alleges that the Law Firm was aware that certain patent applications contained BlueRadios' inventions, that the Law Firm discussed whether to include BlueRadios' employees in these applications, and that Kopin employees erroneously claimed inventor rights in certain patent applications.  See id. ¶¶ 221-23, 228.

Defendants counter by attempting to characterize BlueRadios' underlying claims as sounding in breach of contract, see D. 55 at 21, but a fair reading of the amended complaint shows the underlying claim is for breach of fiduciary duty and nondisclosure arising from same.  See D. 47.  "Under Massachusetts law, a claim for breach of fiduciary duty is an affirmative cause-of-action sounding in tort."  Pearson v. United States, 831 F. Supp. 2d 514, 519 (D. Mass. 2011); see also Taylor, 576 F.3d at 31 (explaining circumstances where nondisclosure gives rise to tort liability).  Defendants also argue that the Golden-i contract makes the alleged conduct lawful, where the contract gives Kopin the exclusive right to decide whether to seek patent protection for inventions, see D. 55 at 21-22, but that provision also does not speak to these underlying tort claims

---

here, tortious nondisclosure, "sometimes called 'fraudulent concealment.'"  Taylor, 576 F.3d at 31-32 (contrasting misrepresentation and nondisclosure).

and the Law Firm's liability for same, or permit Kopin or the Law Firm to file erroneous patent applications, as alleged.

Accordingly, the Court denies the motion to dismiss Counts III through VI on this basis.

**C.     Challenge to Counts III, V and VI for Lack of Substantial Assistance**

"The elements of the tort of aiding and abetting a breach of fiduciary duty are: (1) there must be a breach of fiduciary duty; (2) the defendants must know of the breach; and (3) the defendants must have actively participated or substantially assisted in or encouraged the breach to such a degree that they could not reasonably have been acting in good faith." Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 91 Mass. App. Ct. 835, 847-48 (2017) (citation omitted). "The claim for civil conspiracy [to breach a fiduciary duty] similarly requires a showing that the defendants (1) knew that the conduct . . . constituted a breach of fiduciary duty and (2) substantially assisted in or encouraged that conduct." Id. (citation omitted). Defendants argue that the aiding and abetting and civil conspiracy claims (Counts III, V & VI) fail because BlueRadios has not plausibly alleged such substantial assistance. D. 55 at 24. Defendants contend that the routine provision of legal services by the Law Firm does not rise to the level of substantial assistance, nor does the Law Firm's execution of the patent applications at Kopin's direction. Id. at 25-26.

The alleged assistance must be a "substantial factor in causing the resulting tort." Taylor, 576 F.3d at 35. "To determine whether this threshold is met, courts should consider 'the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind.'" Id. (quoting Restatement (Second) of Torts § 876).

Here, as described above, the amended complaint plausibly alleges that that Defendants were aware of a fiduciary relationship between BlueRadios and Kopin, such that certain actions

taken by Kopin and the Law Firm would need to be disclosed to BlueRadios based upon the relationship, but that the Law Firm allegedly worked with Kopin to avoid such disclosure.  See D. 47 ¶¶ 221-23, 228, 292, 298; Baker, 91 Mass. App. Ct. at 848 (concluding that allegations were sufficient at motion to dismiss stage to show defendant attorneys substantially assisted in aiding and abetting and civil conspiracy where defendants were aware of fiduciary relationship and devised plan to evade rights in violation of that duty).

Defendants' arguments to the contrary are not persuasive.  Defendants first argue that a plaintiff cannot show substantial assistance through the routine provision of professional services. D. 55 at 25.  Accepting BlueRadios' allegations as true, however, the Defendants' conduct was not routine, and Baker explicitly rejected the same argument where, like here, plaintiffs alleged that defendants were aware of a fiduciary relationship and the law firm's provision of services contributed to evading those rights in violation of a fiduciary duty.  See Baker, 91 Mass. App. Ct. at 848 (distinguishing Spinner v. Nutt, 417 Mass. 549, 556 (1994) (establishing proposition that acting under legal advice, without more, is insufficient to give rise to third-party liability)). Second, Defendants argue that "executing a transaction with one party that happens to breach a duty to a third party is not, on its own, substantial assistance to the breach."  D. 55 at 26 (citing Arcidi v. Nat'l Ass'n of Gov't Emps., Inc., 447 Mass. 616, 624 (2006) (concluding no substantial assistance where "only evidence of . . . participation is the fact that he entered into [a contract")). Here, as discussed above, BlueRadios alleges active participation beyond merely entering intro contracts or performing under same.  Finally, Defendants argue that the allegations as to substantial assistance are not pled with sufficient particularity.  See D. 55 at 26.  The Court declines to dismiss the claims on this basis.  Assuming arguendo that 9(b) applies to these claims, although there are some allegations that rely upon "information and belief, see id., there are also allegations here

quote communications, name individuals, and provide dates for same.  See, e.g., D. 47 ¶¶ 221-23,

228, 292, 298; U.S. ex rel. Rost v. Pfizer, Inc., 253 F.R.D. 11, 15 (D. Mass. 2008) (articulating

9(b) standard).

Accordingly, the Court denies the motion to dismiss Counts III, V and VI on this basis.

D.    **Conspiracy**

Putting aside Defendants' other challenges specific to the civil conspiracy claim (Count

VI), this claim fails as to the intra-corporate conspiracy doctrine.  The doctrine generally forecloses

the existence of a conspiracy among a single entity because that entity "cannot conspire with

itself."   Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 131 (1st Cir. 2006) (applying

doctrine to Massachusetts civil conspiracy claim); see Ziglar v. Abbasi, __ U.S. __, 137 S. Ct.

1843, 1867 (2017) (explaining that "[w]hen two [or more] agents of the same legal entity make an

agreement in the course of their official duties . . . as a practical and legal matter their acts are

attributed to their principal").  Courts have applied the doctrine to "an attorney and the attorney's

client," like the attorneys at the Law Firm and Kopin, their client, "unless the attorney . . . acted

'for their sole personal benefit and thus outside the course and scope of their employment.'"

Meyer v. Delaware Valley Lift Truck, Inc., 392 F. Supp. 3d 483, 496 (E.D. Pa. 2019) (quoting

Heffernan v. Hunter, 189 F.3d 405, 412 (3d Cir. 1999)).  Here, BlueRadios' complaint only alleges

personal benefit as to Brook, see D. 47 ¶¶ 58-60, but even his alleged conduct benefitted both the

Law Firm and Kopin, such that it would increase their respective fees and profits.  The complaint

otherwise describes the individual attorneys acting within the scope of their employment at the

Law Firm.  See D. 47 ¶ 13 (alleging that "[a]t all times relevant to the allegations . . . [attorneys]

were acting within the course and scope of their employment with the Law Firm); Wentworth

Precious Metals, LLC v. City of Everett, No. 11-cv-10909-DPW, 2013 WL 441094, at *14 (D.

Mass. Feb. 4, 2013) (noting that "[e]ven joining officers of a corporation . . . in their individual capacities 'is not enough to make them persons separate from the corporation in legal contemplation' if they are acting in the course of their employment") (internal citation omitted).

Accordingly, the Court allows the motion to dismiss Count VI.

### E.       Challenging Chapter 93A (Count VII)

Defendants argue that BlueRadios' Chapter 93A claim (Count VII) should be dismissed because it has not alleged that Defendants engaged in trade or commerce, and it has not alleged an unfair or deceptive act.  D. 55 at 30-31.  Both arguments are unavailing.

Defendants argue that claims based solely on the provision of legal services are not actionable as Chapter 93A claims.  The "practice of law," however, can "constitute[] 'trade or commerce' for purposes of liability under c. 93A."  Baker, 91 Mass. App. Ct. at 850; see Grand Pac. Fin. Corp. v. Brauer, 57 Mass. App. Ct. 407, 418 (2003) (explaining same).  "[T]he proper party to assert a c. 93A claim against an attorney is a client or someone acting on a client's behalf." Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 462 (1997) (citations omitted).  Here, the amended complaint alleges that the Law Firm provided legal services and legal advice to BlueRadios such that it is at least plausibly alleged at this stage that the Law Firm had an attorney-client relationship with BlueRadios.  See D. 47 ¶¶ 78-79, 82-83, 91; Baker, 91 Mass. App. Ct. at 850 (looking to parties' course of conduct for existence of relationship); Fossa, Ltd. v. I Jian Lin, No. 16-CV-11914-LTS, 2017 WL 4374483, at *6 (D. Mass. Sept. 29, 2017) (applying Baker as precedent for same); cf. Rodolakis v. Safety Ins. Co., 327 F. Supp. 3d 274, 277–78 (D. Mass. 2018) (dismissing Chapter 93A claim when non-client asserted claim against attorney where attorney was not engaged in trade or commerce with non-client).

Defendants' argument that BlueRadios has not alleged an unfair or deceptive act also fails. "[A] practice or act will be unfair under [Chapter 93A] if it is [] within the penumbra of a common law, statutory, or other established concept of unfairness." Incase Inc. v. Timex Corp., 488 F.3d 46, 57 (1st Cir. 2007) (citation omitted) (alteration in original). For example, aiding and abetting breach of fiduciary duty, if proven, can comprise a Chapter 93A violation. See Hanover Ins. Co. v. Sutton, 46 Mass. App. Ct. 153, 172 (1999); Pro. Servs. Grp., Inc. v. Town of Rockland, 515 F. Supp. 2d 179, 193 (D. Mass. 2007) (concluding that defendant violated Chapter 93A by aiding and abetting breach of fiduciary duty). So can Chapter 93A claims premised on nondisclosure. See V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411, 417 (1st Cir. 1985).[8]

Accordingly, the Court denies the motion to dismiss the c. 93A claim, Count VII.

**F.      Other Challenge to Fraudulent Nondisclosure Claim (Count IV)**

Defendants also argue that Count IV fails to state a claim because it does not plead the elements of a fraud claim with sufficient particularity. See D. 55 at 32 (citing Taylor, 576 F.3d at 31-32). As described above, however, BlueRadios does not bring a fraudulent misrepresentation claim, but rather a nondisclosure claim premised upon a duty to disclose, i.e., fraudulent concealment. See Taylor, 576 F.3d at 31-32 (distinguishing between fraudulent misrepresentation and nondisclosure). Nondisclosure is the "failure to 'disclose to another a fact that [one] knows may justifiably induce the other to act or refrain from acting in a business transaction . . . .'" Tomasella v. Nestle USA, Inc., 962 F.3d 60, 71–72 (1st Cir. 2020) (quoting Underwood v. Risman, 414 Mass. 96 (1993)) (alteration in original). Defendants' arguments do not specifically address

---

[8] For the same reasons, the Court rejects Defendants' argument that the Chapter 93A claim fails entirely because BlueRadios does not allege "with specificity what it would have done differently . . . had Defendants disclosed some piece of information." D. 55 at 34. BlueRadios has other available theories of Chapter 93A liability (i.e., breach of fiduciary duty, aiding and abetting of same) aside from nondisclosure.

these elements.  See D. 55 at 32-33.  Regardless, the amended complaint does plausibly allege, with reference to dates and individuals involved, that Defendants did not disclose communications regarding the filing and amending of patent applications involving BlueRadios' technology, and that BlueRadios may have sought correction to same had it known about these alleged actions. See D. 47 ¶¶ 223, 228, 251-55, 299-300, 364.  Moreover, the amended complaint alleges that that BlueRadios would not have agreed to work with the Law Firm and share its technology had it known about potential conflicts of interest.  See id. ¶¶ 80-81, 97-101.

Accordingly, the Court denies the motion to dismiss on this basis.

**G.      Legal Malpractice and Breach of Fiduciary Duty Claims (Counts I and II) as to Four Individual Defendants**

Lastly, Defendants argue that Counts I and II should be dismissed as to Brook, Cogswell, Matloff and Pierce because the complaint does not specifically allege an attorney-client relationship as to those attorneys, nor does it allege a fiduciary or confidential relationship between BlueRadios and these attorneys.  D. 55 at 36-40.

"In bringing a legal malpractice claim, [BlueRadios] must prove "(i) an attorney-client relationship, which by law imposes a duty on the attorney to 'exercise care, skill and knowledge in providing legal services to the client;' (ii) breach of such duty; and a 'connection of legally recognized causation between the breach and the resulting harm to the client.'"  Weber v. Sanborn, 526 F. Supp. 2d 135, 149 (D. Mass. 2007) (internal citations omitted).  "Under Massachusetts law, the existence of an attorney-client relationship is ordinarily a question of fact."  Max-Planck-Gesellschaft Zur Foerderung der Wissenschaften E.V. v. Wolf Greenfield & Sacks, PC, 736 F. Supp. 2d 353, 359, 362 (D. Mass. 2010) (citing Page v. Frazier, 388 Mass. 55, 61–62 (1983)).  "In a legal malpractice action it is not sufficient merely to prove an attorney-client relationship existed with respect to some matters [but] necessary to establish that the relationship existed with respect

to the act or omission upon which the malpractice claim is based." Page, 388 Mass. at 62 n.10 (quoting Kurtenbach v. Tekippe, 260 N.W.2d 53, 56 (Iowa 1977)).

Defendants do not dispute the existence of an attorney-client relationship as to the Law Firm, but rather assert there is none as to these four individual attorneys because they did not communicate with BlueRadios to provide legal advice related to the specific malpractice claims here. See D. 55 at 37. The complaint, however, alleges that Brook and Pierce were the Law Firm's "responsible partners" overseeing the Patent Work performed on behalf of BlueRadios such that they "were involved in, oversaw, and directed" it. D. 47 ¶¶ 74-75. Cogswell was also a partner at the Law Firm. Id. ¶ 9. As Defendants point out, the allegations as to these four attorneys, however, do not mention any communications with BlueRadios. See D. 47 ¶¶ 58-61, 150, 182, 189-190, 213-14, 226, 228, 274, 286, 292, 295-97, 299-301, 303-04, 308-10, 313, 317-22, 345-46, 371, 396, 398-403. In other words, Defendants "argue that since they were not actively involved in" representing BlueRadios, "they cannot be held personally liable for the conduct of other attorneys at the firm." Wells Fargo Bank, N.A. v. Ablitt, No. 15-CV-40027-ADB, 2016 WL 3350991, at *2 (D. Mass. June 15, 2016). This argument, however, appears foreclosed by SJC Rule 3:06(3)(b), which imposes liability on all of the owners of a professional corporation, like the Law Firm here, see D. 47 ¶ 6, "at the time of any negligent or wrongful act, error, or omission of any owner or employee of said entity which occurred in the performance of legal services." Id.; see Smith v. Kelley, 484 Mass. 111, 118 (2020) (describing scope of liability under Rule).

Accordingly, as to Brook, Cogswell and Pierce, all principals of the Law Firm, BlueRadios can maintain Counts I and II against them as it has plausibly alleged an attorney-client relationship, and thus a fiduciary relationship, with the Law Firm. See Wells Fargo Bank, N.A., 2016 WL

3350991, at *2.  In the absence, however, of allegations that Matloff, an associate at the Law Firm, is an owner of the Law Firm, the Court allows the motion to dismiss Counts I and II as to him.

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS in part and DENIES in part Defendants' partial motion to dismiss, D. 54.  Specifically, the Court allows the motion as to Counts I and II against Matloff and as to Count VI against all Defendants and otherwise denies the motion.

**So Ordered.**

<u>/s/ Denise J. Casper</u>
United States District Judge