# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUERADIOS, INC.,<br>A Colorado corporation,<br><br>       Plaintiff,<br><br>v.<br><br>HAMILTON, BROOK, SMITH &<br>REYNOLDS, P.C., et al.<br><br>       Defendants. | Civil Action No.:  1:21-cv-10488-DJC |

## PLAINTIFF BLUERADIOS, INC.'S *CORRECTED* RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Leave to File Excess Pages Granted on January 29, 2024] [Leave to File Corrected Version Granted on February 13, 2024]

Plaintiff BlueRadios, Inc. ("**BlueRadios**"), through its attorneys, submits its

Response in Opposition of Defendants' (collectively, "HBSR") Motion for Summary

Judgement, Stating as follows:

## I.   INTRODUCTION

"An issue is 'genuine' when a rational factfinder could resolve it in either direction."

*Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 5 (1st Cir), *rev. denied*, 885 F.3d 52 (1st Cir.

2018), citing *Borges ex. rel. S.M.B.W.  v. Serrano-Isern,* 605 F.3d 1, 4 (1st Cir. 2010)).  "A fact

is 'material' when its (non)existence could change a case's outcome."  *Id*., citing *Borges*, 605

F.3d at 5. As set forth herein, there exist genuine issues of material facts such that HBSR's

Motion for Summary Judgment should be denied in its entirety.

## II.  BLUERADIOS TIMELY FILED ITS CLAIMS AGAINST HBSR

### A.  HSBR Ignores Distinctions Between Applicable Statutes of Limitations and the Applicable Accrual Doctrines.

As an initial matter, HBSR glosses over the distinctions between the various

statutes of limitations and accrual principles that govern the timeliness of BlueRadios' six

distinct claims for relief, summarized as follows:

| Claim | SOL | Accrual Principles |
|-------|-----|--------------------|
| 1<br>Legal Malpractice | 3 years after the cause of action accrues; M.G.L. c. 260 § 4 | "Once a client or former client knows or reasonably should know that he or she has sustained appreciable harm *as a result of the lawyer's conduct*, the statute of limitations starts to run." *Williams v. Ely,* 423 Mass. 467, 473 (1996) (emphasis added).  "To start the statute of limitations running, '[t]here must be notice of a *causal relationship* between the harmful event attributed to the defendant . . . and the harm suffered by the plaintiff.'" *Rosen Constr. Ventures, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.,* 364 F.3d 399, 407 (1st Cir. 2004) (citations omitted). |
| 2, 3<br>Breach of Fiduciary Duty in Confidential Relationship; Aiding and Abetting Breach of Fiduciary Duty | 3 years after the cause of action accrues; M.G.L. c. 260 § 2A | *Tocci v. Tocci*, 490 Mass. 1, 12 (Mass. 2022) (breach of fiduciary duty); *Int'l Strategies Group, Ltd. v. Greenberg Traurig, LLP,* 482 F.3d 1, 14 (1st Cir. 2007) (aiding and abetting).  "Where claims arise out of a fiduciary relationship, the statute of limitations is tolled 'until a plaintiff has 'actual knowledge' that [he or] she has been injured by the fiduciary's conduct.'" *Tocci,* 490 Mass. at 12 (quoting *Doe v. Harbor Schs., Inc.*, 466 Mass. 245, 254 (2006)).  The statute of limitations does not begin "once a plaintiff gains knowledge of <u>any</u> wrongdoing by the fiduciary, but, rather, begins only when the plaintiff gains knowledge of the particular harm forming the basis for his or her claim." *Tocci,* 490 Mass. at 12 (citing cases).  "Constructive knowledge is irrelevant." *Id.* at 13. |
| 4, 5<br>Fraudulent Nondisclosure; Aiding and Abetting | 3 years after the cause of action accrues; tolled during period of concealment; | "Where there is fraudulent concealment, the common-law discovery rule gives way to the statutory discovery rule set forth in G. L. c. 260, § 12."  "Under this statutory discovery rule, fraudulent concealment tolls the statute of limitations where 'the defendant[s] concealed the existence of a cause of action with intent |

| Fraudulent Nondisclosure | M.G.L. c. 260 § 2A, § 12 | to deceive.'" *Magliacane v. City of Gardner*, 483 Mass. 842, 851–52 (2020) (citation omitted). "Where a fiduciary relationship exists, the failure adequately to disclose the facts that would give rise to knowledge of a cause of action constitutes fraudulent conduct and is equivalent to fraudulent concealment for purposes of applying § 12." *Demoulas v. Demoulas Super Markets, Inc.*, 424 Mass. 501, 519 (1997). |
| 7 Ch. 93A[1] | 4 years after the cause of action accrues; M.G.L. c. 260 § 5A | "[A]ccrual of a chapter 93A claim typically occurs at the time injury results from the assertedly unfair or deceptive acts." *Cambridge Plating Co. v. Napco*, 991 F.2d 21, 25 (1st Cir. 1993), citing *International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass. App. Ct. 215, 229 (1991). The limitations period is "subject to tolling until the plaintiff knew or should have known of the alleged injury." *Lambert v. Fleet Nat'l Bank*, 449 Mass. 119, 126 (2007), quoting *Albrecht v. Clifford*, 436 Mass. 706, 714-715 (2002). |

As explained below, applying the principles summarized above reveals the timeliness of all of BlueRadios' claims for relief.

**B. HBSR Fails to Meet Its Summary Judgment Burden to Conclusively Establish the Statutes of Limitations Apply.**

HBSR also misstates the burden. *Cf.* memo., p. 4.[2] HSBR must establish—with "conclusive" evidence and "beyond peradventure"— that BlueRadios' claims are time-barred under their respective limitations periods and that there is no genuine issue of material fact on that point. *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35-36 (1st Cir. 1998).

---

[1] Contrary to HBSR's assertion, MSJ at 5, "the mere fact that the G.L c. 93A violations alleged . . . also support a common-law tort claim does not make them subject to" a "three-year limitation period." *Passatempo v. McMenimen*, 461 Mass. 279, 295 (2012). HBSR's argument, ignoring *Passatempo* and instead relying on two unpublished opinions, MSJ at 5, runs afoul of Massachusetts law. *Solfisburg v. Glenco, Inc.,* No. 1:18-CV-10266-IT, 2022 WL 20086812, *9 (D. Mass. Feb. 2, 2022).

[2] All references to "Memo." refer to the Memorandum in Support of Defendants' Motion for Summary Judgment [Dkt. 214].

"If the application of the statute of limitations 'turns on disputed issues of fact, those facts must be resolved by a jury.'" *Taylor v. Grunigen*, No. CV 19-11947-MBB, 2022 WL 1239955, at *14 (D. Mass. Apr. 26, 2022) (quoting *Schneider v. BMW of N. Am., LLC*, No. CV-12239-IT, 2019 WL 4771567, at *7 (D. Mass. Sept. 27, 2019)). Only "[i]f the defendant produces such conclusive evidence," does "'the burden shift[] to the plaintiff to establish that the statute of limitations does not apply.'" *Ouellette v. Beaupre*, 977 F.3d 127, 135 (1st Cir. 2020) (quoting *Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jiménez*, 659 F.3d 42, 50 n.10 (1st Cir. 2011)).

HBSR and BlueRadios agree that they entered into a tolling agreement on December 5, 2017. DSOF, ¶ 88.[3] Thus, BlueRadios timely filed Claims 1 through 5 if they did not begin to accrue on or before December 5, 2014 (or tolling applies) and Claim 7 if it did not begin to accrue on or before December 5, 2013 (or tolling applies). *See id*. HBSR fails to conclusively establish that there is no genuine dispute as to any material fact that BlueRadios' knew, or reasonably should have known, that it suffered injury because of HBSR's conduct on or before those dates. The facts that dictate accrual and tolling render summary judgment improper.

### C. BlueRadios Did Not Know, and Should Not Have Reasonably Known, That It Had Suffered Appreciable Harm as a Result of HBSR's Conduct Before December 6, 2014.

The statute of limitations clock did not start running until BlueRadios knew, or reasonably should have known, that it sustained appreciable harm as a result of HBSR's conduct. See Section II.A, supra.; *Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis,*

---

[3] All references to "DSOF" refers to Plaintiffs's Response to Defendants' Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment, Section I.

*Inc.*, 29 Mass. App. Ct. 215, 218 (1990) (citing *Hendrickson v. Sears*, 365 Mass. 83, 89-90 (1974)).  BlueRadios' claims did not accrue on or before December 5, 2014.  At the very least, there are numerous disputes of material fact as to whether they did.

In *Hendrickson,* 365 Mass. at 89-90, the Supreme Judicial Court explained why accrual of a claim against lawyers requires notice not only of the harm but also that the lawyer was the cause of the harm:

> The attorney . . . is an expert, and much of his work is done out of the client's view. The client is not an expert; he cannot be expected to recognize professional negligence if he sees it, and he should not be expected to watch over the professional or to retain a second professional to do so. The relation of attorney and client is highly fiduciary in its nature. The attorney owes his client a duty of full and fair disclosure of facts material to the client's interests.

(internal citations omitted).   "Whether a plaintiff knew or should have known of an injury so as to trigger the running of a statute of limitations is, with rare exception, a jury issue." *Schwartz v. Indep. Appraisals, LLC*, No. CIV.A. 11-11051-RGS, 2011 WL 5593108, at *4 (D. Mass. Nov. 17, 2011) (citing *Santiago Hodge v. Parke, Davis & Co.*, 909 F.2d 628, 633 (1st Cir. 1990)).  Thus, the Court "must ask whether" there is no dispute of material fact that "[BlueRadios] had sufficient 'notice of a causal relationship between the harmful event attributed to [HBSR] . . . and the harm suffered by [BlueRadios]'" on or before December 5, 2014. *St. Paul Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 379 F. Supp. 2d 183, 196 (D. Mass. 2005), (quoting *Eck v. Kellem*, 51 Mass. App. Ct. 850, 853 (Mass. App. Ct.)).

HBSR ignores the fact that the individuals at BlueRadios "had no idea" about the determination of inventorship at the time HBSR prosecuted patents related to the Golden-i

project.  PSOF ¶ 11;[4] *see also* PSOF ¶¶ 1-4, 10; *cf. Taygeta Corp. v. Varian Assocs., Inc.*, 436

Mass. 217, 229 (2002) ("The appropriate standard to be applied when assessing knowledge

or notice is that of a 'reasonable person in the plaintiff's position'") (quoting *Riley*, 409

Mass. at 245).  Indeed, by that time, BlueRadios—a company owned exclusively by

engineers who had almost no knowledge of the patent prosecution process— had not

attempted to patent anything, did not know what a patent claim was, how inventorship was

determined, or what the designation of an "assignee" on a patent application meant.  PSOF

¶¶ 1-4, 10-11, 13; *cf. Williams*, 423 Mass. at 474-75 (rejecting argument that professional

fiduciary should have known implications of gift tax decision, as it posed "questions to

which a lawyer, but not a lay person, might have known the answers").

Moreover, HBSR's argument ignores the evidence that shows that BlueRadios did

not learn that (i) it had sustained appreciable harm and (ii) that HBSR caused that harm,

until well after December 5, 2014, in the spring of 2017.  PSOF ¶¶ 14-45, 50; *see Rosen

Const. Ventures, Inc.*, 364 F.3d at 405, 412-15.

None of the facts HBSR relies upon—devoid of context—establish the absence of a

genuine factual dispute that BlueRadios should have possessed such knowledge before

December 6, 2014.  *Cf.* MSJ 6-8.  The communications HBSR cites relate to the '090

Provisional, which was never capable of producing a patent and expired on January 4,

2009.  MSJ at 6; PSOF ¶¶ 14-16.[5]  Thus, even assuming BlueRadios knew the intricacies of

patent law (it did not), the '090 Provisional was not capable, on its own, of producing harm

---

[4] All references to "DSOF" refers to Plaintiffs's Response to Defendants'
Statement of Undisputed Material Facts in Support of Defendants' Motion for
Summary Judgment, Section II.

[5] Defendants also reference the '223 Provisional, which expired without a non-
provisional claiming benefit to it and does not form a basis for BlueRadios' claims for relief.
DSOF ¶ 62; *see Gilead Servs., Inc. v. United States*, 151 Fed. Cl. 742, 748 (2020); *see
generally*, Dkt. 47.

for the purposes of the statute of limitations.  *See Gilead Servs., Inc.*, 151 Fed. Cl. at 748 (holding filing of patent application does not establish damages to trigger statute of limitations; the issuance of a patent does).  Rather, the '090 Provisional's import relates to the non-provisional applications claiming benefit to it.  When Tucker noticed language in the '090 relating to the "Bluetooth proxy," which BlueRadios had helped to develop, he notified HBSR and trusted the law firm to use it appropriately.  PSOF ¶¶ 5-6, 12,17-20.

Critically, when HBSR sent Tucker the as-filed versions of the non-provisional applications capable of producing patents and claiming the benefit of the '090 Provisional (the '462 Application and the '646 Application), the applications listed Tucker and Sample as inventors.  PSOF ¶¶ 21-23, 27-31.  BlueRadios had no reason to know that HBSR had ignored Tucker's e-mail about the '090 Provisional.  PSOF ¶¶ 19-23, 27-31.  Only later did HBSR—without telling BlueRadios—delete Tucker and Sample from the non-provisional Applications.  PSOF ¶¶ 24, 32.  Thus, none of HBSR's facts regarding the provisional patent applications, the '462 Application, or the '646 Application conclusively establish BlueRadios knew, or reasonably should have known, that it had suffered appreciable harm due to HBSR's conduct.  *See Rosen Const. Ventures, Inc.*, 364 F.3d at 405, 412-15; *Mass. Eye & Ear Infirmary v. QLT Phototheraputics, Inc.*, 412 F.3d 215, 238-41 (1st Cir. 2005).

The same holds true with respect to the '627 Application.  HBSR incorrectly asserts that BlueRadios alleges the '627 Application "'failed to name [] BlueRadios employees as inventors.'"  MSJ at 6 (quoting Dkt. 47).  As filed, the '627 Application names three BlueRadios employees as inventors.  PSOF ¶ 35.  Rather, BlueRadios contends HBSR erroneously swapped Jacobsen in as an inventor of the '627 Application. Dkt. 47, ¶ 222. But, at the time, BlueRadios had no idea whether there was a good reason for doing so and only discovered—based on notes produced by HBSR in the Colorado litigation in 2017—that Jacobsen "added himself as an inventor" and "may not be an inventor," which HBSR never

asked BlueRadios about.  PSOF ¶¶ 37-39.  Thus, none of HBSR's arguments about the '627 Application conclusively establish BlueRadios knew, or reasonably should have known, that BlueRadios had suffered appreciable harm due to HBSR's conduct.

### 1.  BlueRadios' November 2014 engagement of Klobucar did not start "the limitations clock" on BlueRadios' claims.

HBSR argues that BlueRadios' engagement of another lawyer, James Klobucar, in November 2014 "conclusively establishes BlueRadios' knowledge of its harm by November 2014, when BlueRadios instructed" Klobucar "to investigate HBSR's actions."  MSJ at 8. There is no factual basis, let alone an undisputed factual basis, for HBSR's assertions.

BlueRadios did not engage, or pay, Klobucar to investigate HBSR's actions at any point before December 6, 2014.  PSOF ¶ 42.  BlueRadios did not have concerns about inventorship at that time.  PSOF ¶ 43.  Rather, BlueRadios asked Klobucar to review information for the purposes of making a request *of Kopin*.  PSOF ¶ 43.  By December 6, 2014, Klobucar had not been asked to, and had not taken any steps, to evaluate, critique, or try to correct anything HBSR had done.  PSOF ¶ 44-45. Thus, by December 6, 2014, Klobucar had made no determinations whatsoever as to whether BlueRadios had sustained any type of injury as a result of anything HBSR had done, or failed to do.  *Id*.

HBSR's also fails on the law.  HBSR's cited authority (*Cantu*, *Pelletier*, and *Frankston*) stands for the proposition that the engagement of new counsel *for the purpose of correcting the defendant-attorney's errors* constitutes "harm" for the purposes of the statute. of limitations.  MSJ at 9.  The plaintiffs in those cases, unlike BlueRadios here, had already "discovered" the malpractice before they engaged counsel, so the issue was when the plaintiff was harmed. BlueRadios did not engage Klobucar in November 2014 to correct HBSR's mistakes.  PSOF ¶¶ 41-45.  In *St. Paul Fire and Marine*, the defendant law firm made the same argument HBSR makes here and this Court rejected it, explaining:

> The statute of limitations is not triggered under Massachusetts law merely because a client knew he was incurring additional legal fees; the client must know that he or she is incurring those fees *because of* the alleged malpractice.

*St. Paul Fire and Marine*, 379 F. Supp. 2d at 198-99 (emphasis added); *see also Rosen Constr. Ventures, Inc.*, 364 F.3d at 403, 407 (retention of lawyer to assess and handle breach of contract claim against third-party did not satisfy causal relationship necessary to trigger running of limitations period).

HBSR fails to establish that there is no disputed issue of material fact that BlueRadios knew, or reasonably should have known, that it had suffered appreciable harm due to HBSR' conduct before December 6, 2014 (Claims 1 through 5) or December 6, 2013 (Claim 7).  BlueRadios' claims are timely.

## D.  The Statutes of Limitations Were Tolled.

HBSR incorrectly argues tolling does not apply based on the false premise that BlueRadios had actual knowledge it had been harmed as a result of HBSR'S conduct.  *Cf.* Memo, p. 9-10; Section II.C, *supra.*

### 1.    *Continuous representation tolls the statutes of limitations.*

The continuous representation doctrine recognizes that "a person seeking professional assistance has a right to repose confidence in the professional[] . . . and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered." *St. Paul Fire and Marine*, 379 F. Supp. 2d at 198 (citing *Cantu*, 401 Mass. at 58).  "[I]n contrast with the discovery rule, '[i]f a client reasonably should know that the attorney has caused the client appreciable harm, *but does not actually know it*, the continuing representation rule continues to apply.'" *Spatorico v.*

*Egan Flanagan & Cohen*, No. 2:19-CV-30090-KAR, 2020 WL 2490029, at *3 (D. Mass. May 13, 2020) (emphasis added) (quoting *Parr v. Rosenthal*, 57 N.E.3d 947, 961 (Mass. 2016)).

HBSR began representing BlueRadios in 2007 in connection with the prosecution of patent applications relating to the Golden-i project, Section III.A, *infra*., and continued representing BlueRadios for years. *Id.*; PSOF ¶ 51. Neither BlueRadios nor HBSR ever formally terminated their attorney-client relationship. PSOF ¶¶ 51-53. HBSR continued to prosecute patents that at one point named BlueRadios' inventors through at least August 25, 2015, and BlueRadios believed HBSR was looking out for its interests through at least August 2016. PSOF ¶¶ 25, 51. Obviously, the precise contours of the attorney-client relationship at issue are disputed. But that is precisely why HBSR's motion for summary judgment fails. It is "a question of fact as to when the services of" HBSR "were undertaken and when they were terminated" and, thus, whether the continuous representation doctrine tolls the statute. *Murphy v. Smith*, 411 Mass. 133, 168 (1991).

### 2.    *Fraudulent concealment tolls the statutes of limitations.*

The statute of limitations is tolled if the defendant fraudulently conceals a cause of action from the plaintiff:

> Fraudulent concealment; Commencement of limitations. If a person liable to a personal action fraudulently conceals the cause of action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action.

Mass. Gen. L. Ch. 260, § 12. "Under this law, the statute of limitations 'will be tolled if the wrongdoer . . . breached a fiduciary duty of full disclosure.'" *Mass. Eye and Ear Infirmary*, 412 F.3d at 242 (*quoting Stark v. Advanced Magnetics, Inc.*, 50 Mass. App. Ct. 226, 233 (2000)). As explained in Section V, *infra*., HBSR owed BlueRadios a duty of full disclosure.

See *Williams*, 423 Mass. at 477 ("'The attorney owes his client a duty of full and fair disclosure of facts material to the client's interests'") (*quoting Hendrickson*, 365 Mass. at 90); *Gagnon v. Coombs*, 39 Mass. App. Ct. 144, 156 (1995) ("An agent's duty to make full disclosure to the principal of all material facts relevant to the agency is a necessary corollary . . . of undivided loyalty and utmost good faith . . . particularly if the agent is engaging in any arrangement adverse to the principal's interest") (internal quotations, citations omitted). Tolling occurs even if BlueRadios "should have discovered" its claims against HBSR because BlueRadios did not have "actual knowledge" of those claims. *See Demoulas*, 424 Mass. at 519-520 (1997).

HBSR fails to "to prove that [BlueRadios] had actual knowledge of all of" HBSR's misconduct before December 6, 2014 "in order to prevent tolling of the statute." *Mass. Eye and Ear Infirmary,* 412 F.3d at 242. HBSR does nothing to establish that BlueRadios actually knew that HBSR (i) held back declarations HBSR told Tucker they would file with the USPTO for the purposes of removing Tucker as an inventor from the '462 Application, PSOF ¶¶ 20, 23-24, stripped BlueRadios' inventors from the '646 Application that they had previously appeared on when they sent it to BlueRadios, PSOF ¶¶ 30-32, allowed Jacobsen to add himself as an inventor to the '627 Application, PSOF ¶ 39, or claimed BlueRadios' technology in at least 22 patent applications that omitted BlueRadios inventors. Section VIII.A., *infra*. Thus, even if the statutes of limitations began to run before December 6, 2014 (they did not), they are tolled. At the very least, there is a dispute of material fact as to whether they should be.

### III.  AN ATTORNEY-CLIENT RELATIONSHIP EXISTED BETWEEN HBSR AND BLUERADIOS

The existence of an attorney-client relationship is ordinarily a question of fact.[6]
*Max-Planck-Gesellschaft Zur Foerderung der Wissenschaften E.V. v. Wolf Greenfield & Sacks, PC*, 736 F. Supp. 2d 353, 359 (D. Mass. 2010).  There is ample evidence to establish such a relationship between HBSR and BlueRadios.

### A.  BlueRadios Requested Legal Advice and Assistance From HBSR.

The *contract itself* established that HBSR, as the counsel selected to perform the patent work, would be performing "individualized" and "personal" legal services for BlueRadios. HBSR was prosecuting patents to be *solely owned* by BlueRadios (intellectual property rights developed by BlueRadios before the start of the contract or developed outside the course of the contract, including those incorporated into the project deliverables) as well as patents to be *jointly-owned* by BlueRadios and Kopin (intellectual property rights developed by BlueRadios in the course of the contract). DSOF ¶15, Ex.15 at BRREV151098.  For the jointly-owned patents, BlueRadios agreed not to license the patents for micro-display applications and for BlueRadios' solely owned patents, if they were incorporated into the project deliverables, BlueRadios granted Kopin a limited license to Kopin for use in micro-display applications.  *Id.* at BRREV151098-99.  Upon termination of the contract, Kopin's limited use license terminated.  *Id*. HBSR's patent prosecution was for the benefit of BlueRadios.

HBSR argues that because the contract granted Kopin "the exclusive authority to make patent decisions" regarding intellection property rights "developed as part of or

---

[6] BlueRadios has moved for summary judgment determination that, as a matter of law, an attorney-client relationship existed between HBSR and BlueRadios.  See, Dkt. 208, 211, and 212. The arguments and evidence presented in support of the motion are incorporated herein.

incorporated into the project deliverables," BlueRadios was not requesting legal services

from HBSR. But the contract granted Kopin the "right and *responsibility* to determine

whether or not to seek patent protection that are developed as a part of incorporated into

the project deliverables and to file for, procure and maintain such patents at Kopin's

expense." *Id.* at BRREV151098 (emphasis added). The contract did not eliminate

BlueRadios' interests in the intellectual property and resulting patents. And HBSR

undertook the patent work for patent protection Kopin determined to seek under the

contract, which included HBSR's assessment and prosecution of all of BlueRadios' unique

technologies, technical solutions, and processes. See PSOF ¶220. HBSR was clearly

providing legal services to *BlueRadios*. *See* Section III(B), below.

     "[I]t is not necessary to expressly request confidential legal assistance when that

request is implied." *Mass. Eye & Ear Infirmary*, 167 F. Supp. 2d at 117. Invention

disclosures of confidential information are requests for legal services in preparing and

prosecuting patent applications and can be the basis of an attorney client relationship. *Id.*

at 120-121.[7]    BlueRadios communicated directly with HBSR[8] "primarily for the purpose of

obtaining legal advice on patentability and legal services in preparing []patent

application[s]." *Spalding*, at 806; Resp. To DSOF ¶¶ 30-31, 34, 36, 40, 42. And BlueRadios

also communicated with HBSR through the Golden-i project manager, Jacobsen for those

---

[7] HBSR states that BlueRadios did not share confidential information with HBSR that it did not also share with Kopin. In the joint-client relationship here, that is of no consequence. *See FDIC v. Ogden Corp*. 202 F.3d 454, 461 (1st Cir. 2000) ("when a lawyer represents multiple clients having a common interest, communications between the lawyer and any one (or more) of the clients are privileged as to outsiders but not *inter sese*).

[8] HBSR calls the communications "limited" but characterizes as a "kitchen sink approach" BlueRadios' response identifying extensive communications. Some of the communications were provided in support of BlueRadios' Motion for Partial Summary Judgment on the Issue of the Attorney-Client Relationship. *See, e.g.*, Dkt. 211, ¶¶ 43, 46-47, 50, 54-58, 61, 63. Communications are also described in Ex.26 to DSOF, pp. 3-38. And BlueRadios disputes HBSR's calculation of the email communications between HBSR and BlueRadios. See Resp. to DSOF 36. Regardless, it is undisputed that BlueRadios communicated with HBSR about the prosecution of the Golden-i patents.

legal services, as is common and prudent in joint development projects and in the joint-representation setting. PSOF paras 1-4; *Merck Eprova AG v. ProThera, Inc.*, 670 F.Supp.2d 201, 211-12 (S.D.N.Y. 2009) (reasonable for second client to understand there was a joint-client relationship for the prosecution of patents even though second client had no direct communications with counsel).

HBSR relies on inapposite cases involving inventors, corporate officers, or investors claiming attorney-client relationships with their assignee's, company's, or investment firm's counsel. Here, HBSR undertook the prosecution of patents to which BlueRadios was an *owner* (or should have been). *Sun Studs, Inc. v. Applied Theory Assocs., Inc.*, 772 F.2d 1557, 1569 (Fed. Cir. 1985) provides "no guidance with respect to the issue of joint representation for co-owners of patent rights." *Merck*, 670 F.Supp.2d at 212, quoted in *Max-Planck*, at 360. *Int'l Strategies,* 482 F.3d 1 (1st Cir. 2007), is not on point. There, the attorney represented an investment firm in its efforts to recover funds lost through fraudulent transfers. That the plaintiff, who had invested in the investment firm, stood to gain by the firm's recovery was insufficient to establish an attorney-client relationship. *Int'l Strategies Grp.*, at 12. *Sheinkopf v. Stone*, 927 F.2d 1259 (1st Cir.) involved the distinction between a lawyer's provision of investment advice versus a lawyer's provision of legal advice. And *Robertson v. Gaston Snow & Ely Bartlett,* 404 Mass. 515 (1989), *cert. denied*, 493 U.S. 894 (1989), involved a corporate officer claiming an attorney-client relationship with the corporate counsel.

BlueRadios and Kopin had a common purpose to jointly develop the Golden-i patent portfolio. HBSR was selected as counsel to prosecute Golden-i patents which BlueRadios would own, solely or jointly. HBSR's patent work and BlueRadios' communications with

HBSR were to preserve *BlueRadios'* intellectual property rights. *See*, *e.g.*, PSOF ¶ 220. BlueRadios' belief that HBSR represented it in the patent work was entirely reasonable.

### B.  HBSR Agreed to and Actually Gave the Desired Advice or Assistance.

It is undisputed that HBSR agreed to perform the Golden-i patent work, prepared and prosecuted Golden-i patent applications for BlueRadios, and communicated with BlueRadios about these legal services.

HBSR argues that its advice and assistance was "consistent with HBSR's provision of legal services to Kopin." (Dkt. 214, p.14). That HBSR provided legal services to Kopin in no way precludes a finding that it also provided legal services to BlueRadios.[9] And BlueRadios' benefit from those legal services was not merely "incidental." Section III.A, *supra*.

That HBSR was referred to as "Kopin lawyers" on a few emails does not establish that BlueRadios did not reasonably believe HBSR was its counsel. Undisputedly, HBSR had a prior relationship with Kopin. Using the term "Kopin's lawyers" merely reflects this. Resp. to DSOF ¶ 28; Kopin did not refer to itself as only "Kopin's lawyers" and did not tell BlueRadios it only represented Kopin. PSOF ¶ 219. And, HBSR *did* act as counsel for BlueRadios. PSOF ¶ 220. *See also*, DSOF ¶¶ 29.

HBSR argues in a footnote that cases in which a joint-client relationship was found involve situations "only" where the party asserting the attorney-client relationship exists (BlueRadios) has "equal or greater rights" than the party with the previously existing attorney-client relationship (Kopin). Here, BlueRadios' rights under the contract arguably

---

[9] The advice and assistance should have been consistent with representing *both* Kopin and BlueRadios, who had a common goal and interest in jointly developing the Golden-i patent portfolio. Things went awry when HBSR failed to recognize or failed to tell BlueRadios at the outset, or during the representation, that it could not or would not represent both Kopin and BlueRadios "consistently."

were *greater* than Kopin's.  See, § III(A), above.  Regardless, the cases HBSR cites make no such finding.  Whether the "rights" of the existing client exceed the "rights" of the joint-client is not determinative.  *See, e.g.*, *Protostrom, LLC v. Antonelli*, 834 F.Supp.2d 141 (Dist. N.Y. 2011) (inventor/corporate principal may be a co-client along with corporate client/assignee of patent); *Merck*, 670 F.Supp.2d 201 (though existing client would direct, control, and pay for the patent prosecution legal fees, joint-client relationship existed).

A reasonable lawyer should have known that BlueRadios likely believed HBSR was its counsel. PSOF ¶ 223.  And yet HBSR never asked BlueRadios if it had other counsel, never advised BlueRadios to obtain other counsel, never told BlueRadios it could not represent BlueRadios, and never told BlueRadios it did not represent it. PSOF ¶ 219.

An attorney-client relationship existed.  At the least, the issue remains one of fact.

## IV.  ALTERNATIVELY, HBSR OWED DUTIES TO BLUERADIOS AS A NONCLIENT

HBSR seeks to avoid liability by disclaiming any duty to BlueRadios as a nonclient on the basis that "potential conflicts" between BlueRadios and Kopin preclude the imposition on HBSR of any duty to BlueRadios as a matter of law.  *Memo.*, pp. 19-20.[10] HBSR's relationship with BlueRadios and Kopin raises fact issues that preclude summary judgment on this basis.

Lawyers are not "absolutely insulated from liability to nonclients." *Page v. Frazier*, 388 Mass. 55, 65 (1983).  Lawyers owe duties to nonclients (i) "who the attorney knows will rely on the services rendered," *Robertson*, 404 Mass. at 524, (ii) for the knowing or negligent provision of false information," *Nova Assignments, Inc. v. Kunian*, 77 Mass. App. Ct. 34, 38

---

[10]    In its Memorandum, HBSR does not challenge BlueRadios' allegations that BlueRadios relied on HBSR's services or that such reliance was foreseeable and reasonable – elements for duty to a nonclient.  To avoid that duty, HBSR relies solely on the "potential conflict" disqualifier.

(2010) (citing *Kirkland Constr. Co. v. James*, 39 Mass. App. Ct. 559, 561-64 (1995), and

Restatement (Second) of Torts § 552 (1977)), and (iii) when the lawyer "is acting for the

benefit of both the client and the non-client." *Cheswell, Inc. v. Premier Homes and Land

Corp.*, 319 F. Supp. 2d 144, 151 (D. Mass. 2004) (collecting cases).

Massachusetts courts are less likely to impose a duty to a nonclient "where an

attorney is also under an independent and potentially conflicting duty to a client." *Page*,

388 Mass. at 63.  In *Lamare v. Basbanes*, the court explained:

> The rule is founded on the realization that, if a duty was owed
> to the adversary of an attorney's client, an unacceptable conflict
> of interest would be created, and because it would be inimical to
> the adversary system for an adverse party to be allowed to rely
> on an opposing party's attorney. *Beecy v. Pucciarelli,* 387 Mass.
> 589-597, 441, N.E.2d 1035 (1982). It is well established that
> attorneys owe no duty to their client's adversary.

418 Mass. 274, 276 (1994) (citing *Page*, 388 Mass. at 63). The "rule" is "inapposite" where

the nonclient is not an adversary.  *Nova Assignments*, 77 Mass. App. Ct. at 34.          Thus,

the foreseeable reliance duty of care "will be more readily allowed" when the client and

nonclient are in a nonadversary setting "and the [lawyer's] service is intended to benefit the

client as well as the third party." *Kirkland Constr.*, 39 Mass. App. Ct. at 562; *Spinner v.

Nutt*, 417 Mass. 549, 554 (1994) (lawyer whose errors thwarted the testator's wishes may be

liable to nonclient beneficiaries); *Logotheti v. Gordon*, 414 Mass. 308, 311 (1993).

HBSR's cited authorities involve commercial relationships that are, by their very

nature, adversarial and prone to conflict.[11]  By contrast, when HBSR began working on the

Golden-i project, BlueRadios and Kopin were parties to a joint development agreement in

---

[11]  *Schlecht v. Smith*, Civ. A. No. 92-30099, 1994 WL 621594, at *7 (D. Mass.
Nov. 7, 1994) (lender's reliance on borrower's attorney "unreasonable as a matter of
law"); *One Nat'l Bank v. Antonellis*, 80 F.3d 606 (1st Cir. 1996) (bank's lawyer who
closed original loan transaction owed no duty to nonclient bank that purchased the
promissory note).

which they agreed to jointly develop the technology and obtain the necessary intellectual property protection for the project. They agreed to use HBSR to obtain those protections. Neither Kopin nor BlueRadios anticipated a conflict. Ex. 34, Kramer Decl. ¶ 4. Nor did HBSR, which never sought a conflict waiver from BlueRadios.

The facts presented here come closer to those in *Baker v. Wilmer Cutler Pickering Hale and Dorr LLP*, 91 Mass. App. Ct. 835, 846 (2017), in which the court rejected the defendant's "potential conflict" argument to avoid liability to nonclient shareholders. The court first noted that "the determination of whether a fiduciary relationship exists outside one of the well-defined relationships is largely a question of fact in Massachusetts ........ And the factual inquiry here is particularly complicated due to the alleged covert nature of counsel's actions." *Id.* at 844-845. The *Baker* court explained that "the minority members should have been able to repose trust and confidence that any counsel hired by the company would have communicated and consulted with them prior to undoing those protections," *id.* at 846, and "we can see the 'logic' in imposing a fiduciary duty on counsel for this closely held company to protect minority rights." *Id.* at 845.

Similarly, here, HBSR was aware of the joint development agreement between Kopin and the protections accorded to BlueRadios thereunder. BlueRadios entrusted the protection of its intellectual property to HBSR and Kopin based upon its understanding that HBSR would effectuate the shared objectives of BlueRadios and Kopin: the development and protection of the Golden-i invention and related technology. PSOF ¶¶ 57. BlueRadios' reliance on Kopin was not only reasonably foreseeable to HBSR, but demonstrated throughout the relationship. As in *Baker*, whether any potential conflict between HBSR's duties to Kopin and its duties to BlueRadios presents – at the very least – a question for the jury.

Further, HBSR's conduct during its dealings with BlueRadios belies its current

argument that conflicts of interest and concerns about confidentiality would have prevented

its having a duty to BlueRadios.

## V.  HBSR HAS NOT PROVED, AS A MATTER OF LAW, THAT IT IS ENTITLED TO SUMMARY JUDGMENT ON BLUERADIOS' CLAIM 4 FOR FRAUDULENT NONDISCLOSURE OR CONCEALMENT

HBSR recites the elements of fraudulent nondisclosure: (i) concealment of material

information and (ii) a duty requiring disclosure, *Buffalo-Water I, LLC v. Fidelity Real

Estate Co., LLC*, 481 Mass. 13, 25 (2018), and then summarily claims that BlueRadios

cannot prove these elements.  That bare assertion does not carry HBSR's burden.  *Carmona

v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000); Fed. R. Civ. P. 56(a).

An "attorney owes his client a duty of full and fair disclosure of facts material to the

client's interests." *Hendrickson*, 365 Mass. at 90; *see* Section I.D.2, *supra*.  HBSR has not

established, as a matter of law, that it owed did not owe BlueRadios such a duty.  On the

contrary, the facts establish that HBSR did.  Dkt. 208, 212.  But a fiduciary relationship is

not the only scenario giving rise to such a duty. *AcBel Polytech, Inc. v. Fairchild

Semiconductor Int'l, Inc.*, Civ. Act. No. 13-13-46-DJC, 2014 WL 4656608 at *10 (D. Mass.

Sept. 12, 2014).  A duty to disclose also arises when one party holds a position of superior

knowledge in relation to the other, or when one party makes partial disclosures, thus

triggering a duty of full disclosure. *Id.*, citing *First Choice Armor & Equip., Inc. v. Toyobo

Am., Inc.*, 717 F. Supp. 2d 156, 162 (D. Mass. 2010); *Stolzoff v. Waste Sys. Int'l, Inc.*, 58

Mass. App. Ct. 747, 763-64 (2003) (duty arose when defendants met specific inquiries "with,

at best, half-truths and misleading assurances and information").

HBSR's claim that it concealed nothing from BlueRadios is baseless.  Despite owing

a duty of full disclosure to BlueRadios as its attorneys, HBSR failed to inform BlueRadios

19

that they were (i) removing BlueRadios inventors from the '462 Application, (ii) deleting BlueRadios' inventors from the '646 Application, (iii) allowing Jacobsen to add himself to the '627 Application without inquiry, (iv) or claimed BlueRadios' technology in at least 22 patent applications that omitted BlueRadios inventors. Section I.D.2, *supra*.; Section VII.A., *infra*.. Furthermore, HBSR withheld that information from BlueRadios, despite (i) soliciting a declaration from Tucker regarding his status as an inventor of the '462 Application for the purposes of filing the declaration with the USPTO (which HBSR never did) and (ii) sending Tucker the as-filed version of the '646 Application that named him and Sample as inventors (and then deleting them without telling BlueRadios). *Id.*

Ample facts show that HBSR owed BlueRadios a duty to disclose information to that HBSR never disclosed. Moreover, BlueRadios' lawyer expert witnesses are scathing in their evaluation of HBSR's conduct, *i.e.*, a deliberate scheme to limit BlueRadios' ownership rights in the Golden-i patent portfolio and to expand the rights of their other client, Kopin. PSOF ¶ *See* Ex. 16 (Tu Report), pp. 58-60 (opining that HBSR engaged in "inequitable conduct"); Ex. 38 (Chao Report), ¶ 39 (discussing HBSR's three tactics to limit BlueRadios' ownership rights and expand Kopin's ownership rights; i*d.*, at ¶ 132-153 (discussing that Defendants knew that they did not name the correct inventors and the consequences of inequitable conduct).

## VI.   HBSR OWED DUTIES TO ACT AS REASONABLE, UNCONFLICTED COUNSEL

HBSR's argument set forth in section II(D) of its memorandum is essentially the same argument it makes regarding the foreseeability of the damages. See, section VIII, below. HBSR argues its scope of duties extends only to what Kopin asked it to do under the contract. That conflict and resulting breach of fiduciary duties is the basis of HBSR's liability, not HBSR's shelter from liability.

HBSR's duty was to act as reasonable, unconflicted counsel under the circumstances. HBSR knew that even within the confines of the Golden-i project, a primary goal of Kopin and BlueRadios was to secure a patent portfolio broadly covering BlueRadios' technology. *See, e.g.,* PSOF ¶220 (Kopin discussed with HBSR "how important it is to have at least the first, *all inclusive* BlueTooth and wireless technology disclosure filed by the end of August '07") (emphasis added).  Had it acted as reasonable, unconflicted counsel, HBSR would have protected BlueRadios' technology and should have obtained a significant patent portfolio for BlueRadios. See section VIII, below.

Professor Chao's three tiers of technology are based on what should have been patented had HBSR been unconflicted counsel.  As Professor Chao opines, if HBSR had been unconflicted, it should have and would have protected BlueRadios' intellectual property. PSOF ¶224-227.  BlueRadios would have a significant patent portfolio but for HBSR's misdoings. *Id.* See section VIII, below.

## VII.   BLUERADIOS' AIDING AND ABETTING CLAIMS DERIVE FROM THE FIDUCIARY RELATIONSHIP CREATED BY THE CONTRACT

HBSR contends that there is no fiduciary relationship arising from the Contract because (1) the Colorado District Court decided the issue and BlueRadios is precluded from raising it again, and (2) there was not a sharing of profits or losses. HBSR's argument fails.

### A. The Colorado District Court's Partial Summary Judgment Order is Not Preclusive Because it is Not a Final Order.

HBSR's assertion that BlueRadios cannot relitigate the issue of whether Kopin owed BlueRadios fiduciary duties fails to account for the fact Judge Kane's order was a *partial* summary judgment order, leaving unresolved claims, relief, and ultimate resolution. Federal common law issue preclusion requires the party invoking issue preclusion to make

a four-part showing, including "the prior court decided that issue in a *final judgment*." *Vargas-Colon v. Fundacion Damas, Inc.*, 864 F.3d 14, 25 (1st Cir. 2017) (emphasis added) (internal quotation and citation omitted).

"A *partial* summary judgment order is not final judgment but is merely a pre-trial adjudication that certain issues are established for trial and district court retains jurisdiction to modify such an order at any time." *Alberty-Velez v. Corporacion de Puerto Rico Para La Difusion Publica*, 361 F.3d 1, 1 (1st Cir. 2004); *see Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945) (district court's decision is "final" if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."). Judge Kane's order for *partial* summary judgment did not resolve all the claims, thus, Judge Kane's order is not a "final judgment" with preclusive effect. *See Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 154 (1st Cir. 2017); *see also Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 738 (1976); *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund*, 967 F.2d 688, 690 (1st Cir. 1992).

## B. Genuine Disputes of Material Fact Exist as to Whether BlueRadios and Kopin Shared a Fiduciary Relationship.

HBSR contends that even if a fiduciary relationship existed, there was not a sharing of profits or losses needed to establish such a relationship. "Fiduciary duties may arise…as a matter of law…indicating that one person is in fact dependent on another's judgment in business affairs or property matters." *UBS Fin. Servs., Inc. v. Aliberti*, 483 Mass. 396, 406 (2019) (citations and internal quotation marks omitted).  A court weighs several factors to determine whether a fiduciary relationship in the context of a joint venture exists:

> (1) an agreement by the parties manifesting their intention to
> associate for joint profit not amounting to a partnership or a
> corporation; (2) a contribution of money, property, effort,

> knowledge, skill, or other assets to a common undertaking; (3) a joint property interest in all or parts of the subject matter of the venture; (4) a right to participate in the control or management of the enterprise; (5) an expectation of profit; (6) a right to share in profits; (7) an express or implied duty to share in losses; and (8) a limitation to a single undertaking (or possibly a small number of enterprises).

*Petricca Dev. Ltd. P'ship v. Pioneer Dev. Co.*, 40 F. Supp. 2d 49, 53 (D. Mass. 1999), *aff'd*, 214 F.3d 216 (1st Cir. 2000) (internal quotation and citation omitted). The sharing of losses is only a factor and is not—contrary to HBSR's position—dispositive. *See Laudano v. 214 S. St. Corp.*, 608 F. Supp. 2d 185, 193 (D. Mass. 2009). The crux of whether a fiduciary relationship exists hinges on "the parties' intent[ion] to create such a relationship." *Id.* at 192*; Petricca Dev. Ltd. P'ship*, 40 F. Supp. 2d at 52-53; *see Gurry v. Cumberland Farms, Inc.*, 406 Mass. 615, 623 (1990).

"Factors indicating such an intent include an agreement among the participants for joint profits and a sharing of losses; a contribution of money, assets, talents, etc., to a common undertaking; a joint property interest in the subject matter of the venture; and a right to participate in the control of the venture." *Centaur Diagnostics, Inc. v. Mittel*, No. CV 19-11644-RGS, 2019 WL 6307242, at *5 (D. Mass. Nov. 25, 2019) (internal citations and quotations omitted). "When the issue of a party's intent constitutes the essential element of a cause of action or defense, the granting of summary judgment is disfavored." *Gurry*, 406 Mass. at 550 (1990).

HBSR relies on two purported facts to support its Motion for Summary Judgment: (1) BlueRadios did not share in the profits or losses, and (2) Kramer was not sure of whether the Contract was a joint venture. *Memo*, at 25. However, BlueRadios ***did share*** in the profits. As HBSR notes, BlueRadios received per-unit-royalty payments based on the sales, establishing a sharing of revenue. DSOF ¶ 16; PSOF ¶¶98, 104; *See Kleinschmidt v.*

*United States*, 146 F. Supp. 253, 254-256 (D. Mass. 1956). Moreover, BlueRadios discounted their normal rate, absorbed several risks, and was responsible for their incurred losses. DSOF ¶ 15(b); Resp. To DSOF ¶16 (Kramer Dep. Tr. 265: 18-25, 266:1-20 (July 21, 2023)).

Even if HBSR's assertions are correct, the factors weigh heavily in favor of a fiduciary relationship. First, BlueRadios and Kopin intended to jointly develop Golden-i. DSOF ¶ 18; PSOF ¶¶102-103. Kopin needed someone in the Bluetooth space as Kopin had no experience in this area, and Kopin supplied expertise in designing and manufacturing optical micro-displays. Second, BlueRadios and Kopin contributed to the joint development of Golden-i. BlueRadios provided, *inter alia*, sources codes, working prototypes, tested PCB board product assemblies, and schematics. PSOF ¶105. Kopin contributed by fronting several costs for the development of the technology. Resp. DSOF ¶15(a).

Third the Contract made clear that intellectual property rights created during the development would be "owned jointly." DSOF ¶15(d). Fourth, each party had control or management of the project. Kopin had the right and responsibility to seek patent protection for any intellectual property rights developed during the project, Resp. DSOF ¶15(b), while BlueRadios reserved all rights for all non-micro-display applications. DSOF ¶15(d).

Fifth and sixth, there was a sharing and expectation of profits as Kopin had a license to sell products with BlueRadios intellectual property, and BlueRadios was to receive a royalty. PSOF ¶104. Accordingly, the disputed evidence creates a genuine issue of material fact as to whether BlueRadios and Kopin had a fiduciary relationship.

## VIII.    THE FACTS AND EVIDENCE SUPPORT A CHAPTER 93A CLAIM

### A.  The Facts Show that HBSR Engaged in Deceitful and Fraudulent Conduct.

BlueRadios' expert witnesses – accomplished lawyers and scholars – certainly believe that HBSR was negligent and breached its fiduciary duties to BlueRadios.  Tu Report, at pp. 3,

25-52; Ex. 38, Chao Report, at ¶¶ 18, 65-118; Ex. 15, Hricik Report, ¶¶ 544-606.  But the experts' opinions go well beyond chronicling clear-cut acts of negligence, conflicts of interest, and breach of fiduciary duty; their opinions about HBSR's egregious and inequitable conduct are detailed and scathing.  *See*, *e.g.,* Ex. 16, Tu Report, pp. 58-59.

The evidence shows that HBSR used its expertise in patent prosecution to manipulate the process to exclude BlueRadios' employees as inventors from patent applications that included BlueRadios' inventions or, if that couldn't be done, to amend the applications to remove the BlueRadios inventors but keep control of BlueRadios' technology. This was all in the service of expanding Kopin's ownership rights in the Golden-i technology and diminishing BlueRadios' ownership rights.

Professor Chao states that HBSR used three basic tactics to limit BlueRadios' ownership rights, and expand Kopin's, in the Golden-i patent portfolio.  Ex. 38, Chao Report, ¶ 39; PSOF ¶137.  <u>First</u>, HBSR repeatedly and intentionally named the wrong inventors on patent applications. Ex. 38, Chao Report, ¶¶ 40-64; PSOF ¶137. <u>Second</u>, HBSR unnecessarily added Kopin's technology to patent applications that initially covered only BlueRadios' technology, thus giving Kopin joint ownership of patents that BlueRadios would otherwise solely own. *Id.*, at ¶¶ 65-100; PSOF ¶137. <u>Third</u>, HBSR amended patent applications to exclude BlueRadios inventors but still keep the benefit of BlueRadios' technology. *Id.*, at ¶¶ 65-100.

These are examples of HBSR's egregious behavior as to the <u>first</u> tactic:

1.  HBSR filed applications resulting in 23 issued patents in which the *claims* clearly include BlueRadios' wireless streaming technology, but the patents (except for one) do not identify BlueRadios employees as inventors such that BlueRadios has no ownership rights in the patents. PSOF ¶¶ 148-154; see also Ex. 38 (Chao Report), at ¶¶ 40-59.
2.  HBSR filed other applications resulting in 24 issued patents in which BlueRadios' wireless streaming technology is included in the specifications, but in which

BlueRadios has no ownership rights because HBSR drafted the claims to exclude BlueRadios inventors. PSOF ¶¶ 148-154; see also Ex. 38 (Chao Report), at ¶¶ 40-59.

3. HBSR copied a lengthy description of the preferred embodiment of technology that is indisputably BlueRadios' invention (from the '671 Patent), and, with minor tweaks, used the *same* preferred embodiment in at several other applications but did not identify BlueRadios inventors. PSOF ¶¶148-154. As HBSR's expert witness, Robert Stoll (the former U.S. Commissioner of Patents) acknowledged, and as the law states, a patent specification's preferred embodiment, *i.e.*, the best mode of practicing the patent, is almost always inherent in the patent's claims. PSOF 162. Thus, while BlueRadios' conceptions are at the core of each invention, BlueRadios does not own the patents because HBSR did not identify BlueRadios' inventors. One time may be negligence; multiple times is a pattern of deceit.

As to the <u>second</u> tactic, HBSR unnecessarily added Kopin employee Jeffrey Jacobsen to an application (the '627 Application) that originally included only BlueRadios' inventors, thus giving Kopin co-ownership of a patent that BlueRadios should solely own. PSOF ¶ 137.

As to the <u>third</u> tactic, HBSR engaged in numerous practices of amending patent applications to ultimately scrape off BlueRadios inventors but allowed Kopin to obtain the benefit of the technology or exposed BlueRadios' trade secrets to the public so as to make BlueRadios' technology unpatentable. PSOF ¶ 137.

As BlueRadios' Statement of Additional Facts shows, substantial other evidence establishes HBSR's deceitful and fraudulent conduct.  Professor Tu, an expert in the patent prosecution process, opines that HBSR's abuse of the patent prosecution system and its treatment of BlueRadios was so egregious, and so fraudulent and deceitful to a degree that it amounts to "inequitable conduct," a serious charge that places in jeopardy the validity of the entire Golden-i patent portfolio. PSOF ¶ Ex. 16 (Tu Report), pp. 58-60*; see also* Ex. 38 (Chao Report), at ¶¶ 130-135 (discussing how HBSR's inequitable conduct jeopardizes the Golden-i patent portfolio).

While some of the individual Defendants may be more directly involved than others, each of them has some way engaged in fraud and deceit as to BlueRadios. *See* Ex. 38 (Chao Report), ¶¶ 26, 71-101, 116, 131, 132 (Thibodeau, Kazanjian, Matloff, Cogswell, Pierce,

Brook); Ex. 15 (Hricik Report), ¶¶ 545-549; 552-604 (Thibodeau, Kazanjian, Matloff, Cogswell, Pierce, Brook).

Given the Facts, the Law Supports BlueRadios' Chapter 93A Claim.

HBSR seek to avoid liability under Chapter 93A by arguing that (i) BlueRadios' claims (i) are "derivative of underlying claims that fail," (ii) require an attorney-client or fiduciary relationship that does not exist, and (iii) do not allege sufficiently "extreme or egregious" misconduct on HBSR's part to warrant liability under Chapter 93A. *Memo.*, pp. 26-28. In large part, HBSR's arguments presume success on their other arguments that they were not BlueRadios' fiduciary or that BlueRadios' "underlying claims" are time-barred. BlueRadios' Chapter 93A claim is not, however, "derivative;" it is its own claim based on HBSR's egregious conduct punishable as a deceptive trade practice.

First, the preceding section detailing just *some* of HBSR's misconduct refutes HBSR's argument that BlueRadios offers no facts "unique" to the Chapter 93A claim and that the claims are "wholly dependent." Even though BlueRadios' Chapter 93A claim is different from its other claims, it need not be wholly independent of such other claims:

> To prove that a covered party has engaged in an 'unfair or deceptive act or practice,' it is 'neither necessary nor sufficient that a particular act or practice violate common or statutory law.' That is to say, the fact that conduct violates statute or common law does not necessarily mean that it is 'unfair or deceptive' so as to trigger liability under Chapter 93A. On the other hand, conduct that does not violate statute or common law is not necessarily exempt from liability under Chapter 93A.

*Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 16-17 (1st Cir. 2021) (internal citations omitted); *see also Mass. Eye and Ear Infirmary*, 412 F.3d at 242-43 ("the success of [plaintiff's] unfair trade practices claims is not necessarily dependent on the success of the unjust enrichment or trade secret claims"). HBSR's reliance on *Egan* and *Pembroke Country Club* as authority that BlueRadios' Chapter 93A claim should be dismissed for

want of "unique arguments" is misplaced because, unlike the plaintiffs in those cases who offered "no evidence" of improper motive or means, BlueRadios has presented substantial summary judgment evidence reflecting HBSR's improper motives (aiding long-time client Kopin and benefitting Defendant Brook financially), improper means (secretly removing BlueRadios' name from patent applications), and serious ethical violations.

Second, HBSR erroneously argues that BlueRadios must have had an attorney-client relationship or other fiduciary relationship with HBSR to sustain its Chapter 93A claim, relying on *Robertson v. Gaston Snow & Ely Bartlett*, 404 Mass. 515, 527 (1989) and *Int'l Strategies*, 482 F.3d at 14 – cases distinguishable because the plaintiffs specifically pled the defendants' legal representations as the sole basis for their claim. Chapter 93A claims clearly do not require an attorney-client or other fiduciary relationship, but even if they did, BlueRadios has presented substantial evidence proving (or at least raising a question of fact) that such relationship existed.[12] Moreover, each of BlueRadios' expert witnesses has opined and testified that, without a doubt, HBSR and BlueRadios had an attorney-client relationship. Ex. 15 (Hricik Report), ¶¶ 515-543; Ex. 16 (Tu Report), pp. 18-24; and Ex. 38 (Chao Report, ¶ 65. Similarly, U.S. District Judge Kane of the District of Colorado found that there was an attorney-client relationship between HBSR and BlueRadios.

Third, HBSR argues that its conduct does not meet the "heightened section 11 burden" of Chapter 93A, and that "[w]hether conduct violates Chapter 93A is a question of law." *Memo.*, p. 27. More accurately, "whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, [and] the boundaries of what may qualify for consideration as a [chapter] 93A violation is a question of law." *Chervin v. Travelers*

---

[12] BlueRadios' incorporates its Motion for Partial Summary Judgment [Dkt. 208]; Memorandum in support [Dkt. 212], and support exhibits.

*Ins. Co.,* 448 Mass. 95, 112 (2006), quoted in *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40 (1st

Cir. 2019) (other citations omitted); *see also Caper v. Foley & Lardner, LLP*,

1684CV01986BLS1, 2020 WL 977050, at *6 (Mass. Sup. Ct. Jan. 24, 2020) (issue of fact

precludes summary judgment).  BlueRadios' transactions with HBSR do not fall outside

"the boundaries of what may qualify for consideration as a chapter 93A violation." *See St.*

*Paul Fire and Marine Ins. Co. v. Ellis & Ellis*, 262 F.3d 53, 66-67 (1st Cir. 2001).

HBSR suggests that its misconduct can be more extreme without fear of Chapter

93A liability since BlueRadios is "unquestionably, a sophisticated business entity." *Memo.*,

p. 28.  As set forth herein, BlueRadios' principals are engineers who were not

"sophisticated" in the world of patent prosecution – and each of the Defendants knew that.

HBSR also ignores the context in which BlueRadios makes its Chapter 93A claim: the

fiduciary relationship involving lawyers and trusted advisors, which implicates

significantly different duties from those found in the "rough and tumble of the world of

commerce."[13]  What is actionable conduct for lawyers under Chapter 93A can be very

different from other actors' conduct.  *See Sears Roebuck and Co. v. Goldstone and Sudalter*,

128 F.3d 10, 20 (1st Cir. 1997) ("Chapter 93A applies to attorneys, and unlawful billing or

other unethical conduct can constitute a Chapter 93A violation," and "[v]iolations of the

rules governing the legal profession are evidence of legal malpractice, and are also relevant

in Chapter 93A determinations."); *Brown v. Gerstein*, 17 Mass. App. Ct. 558 (1984) (lawyer's

unethical deceit toward clients concerning litigation status violated Chapter 93A).  A

lawyer's duties to persons who are his clients, or even to those who are not but whom he

knows to be unrepresented and who rely upon him, requires a different analysis from that

---

[13] Defendants cite *Peabody Essex Museum, Inc. v. United States Fire Ins. Co.*, 802 F.3d
39, 54 (1st Cir. 2015), involving allegations of bad-faith settlement practices, which typically
involve "absence of good faith and extortionate tactics."

applied in the "rough and tumble world" that HBSR suggests is the background of their relationship with BlueRadios.

### IX. BLUERADIOS' DAMAGES WERE FORESEEABLE AND ARE NOT SPECULATIVE

When lawyers are engaged to protect intellectual property rights but instead act against their client's interests, it is reasonably foreseeable that the client will lose intellectual property rights. Here, HBSR's wrongful conduct caused BlueRadios to lose extraordinarily valuable intellectual property rights. That loss was foreseeable.

In a legal malpractice action, the inquiry about whether damages are speculative is *whether* the lawyer's conduct caused *any* injury, not the quantity of damages. Ronald E. Mallen, LEGAL MALPRACTICE, §21:7 (2024 ed.). "[D]ifficulty or imprecision in calculating damages does not exculpate an attorney." *Id.* "[D]amages are speculative only if the uncertainty concerns the fact of whether there is a compensable injury rather than uncertainty concerning the measure of the damages for an ascertainable injury." *Id.* HBSR is responsible to BlueRadios for "any reasonably foreseeable loss" caused by its malfeasance. *Fishman v. Brooks*, 396 Mass. 643, 646 (1986).

BlueRadios' damages are not contingent upon Kopin's liability. In the *Kopin* lawsuit, BlueRadios seeks relief from Kopin for its breach of contract and its unjust enrichment from misappropriating BlueRadios' technology. In this case, BlueRadios seeks to recover the value of a patent portfolio that it should and would have had but for HBSR's tortious conduct and for the expenses incurred in trying to mitigate the losses.

Arguing that damages here should be limited to what BlueRadios might recover from Kopin on a breach of contract claim, HBSR relies on inapposite breach of contract cases for the proposition that damages must be foreseeable "to the parties." *Cf., Hendricks & Assocs., Inc. v. Daewoo Corp.*, 923 F.2d 209, 214 (1st Cir. 1991) (damages for breach of

contract are those reasonably contemplated by the parties to the contract).  HBSR's statement that "BlueRadios acknowledges that the Contract defined the legal services HBSR would provide" is unsupported by the parenthetical quote, which deals with what *HBSR knew*, and misses the issue.  Damages are the reasonably foreseeable losses arising from the lawyer's breach of the duty to meet the standard of care and the duties of good faith and loyalty, not losses that would be recovered against a non-party for breach of a contract.  BlueRadios' damages claim is not based on what it should have earned under the Kopin contract but for the losses caused HBSR's actions.[14]  BlueRadios' damages are based on the patent portfolio it should have had but for HBSR's misconduct. HBSR owed *BlueRadios* fiduciary duties. Had HBSR acted as reasonable, unconflicted counsel, they would have protected BlueRadios' technology and should have obtained a significant patent portfolio for BlueRadios.  BlueRadios would then have avoided the extraordinary expense it has incurred in its lawsuit against Kopin to unwind some of the harm caused by HBSR's wrong-doing and the loss of a valuable patent portfolio. PSOF ¶¶ 224-227[15].

Not all of BlueRadios' damages are dependent upon the termination of the contract. A primary goal of the Golden-i project was to obtain broad patent protection of BlueRadios' intellectual property. See, PSOF ¶220.  If HBSR had acted to further that goal, BlueRadios would have an extensive patent portfolio covering both microdisplay and non-microdisplay applications. PSOF ¶225 (if the contract were place *and* BlueRadios had the hypothetical patent portfolio, the damages analysis would change); PSOF ¶¶224-227 (BlueRadios' should

---

[14] HBSR misrepresents BlueRadios' interests under the contract.  See, section III(A), above; Resp. to DSOF ¶98. Notably, HBSR does not address the ownership interests and licensing interests BlueRadios should have had under the Contract, which the Addendum did not change.

[15] As Professor Hricik opines, "HBSR tried to pick and choose claims to require including only Kopin employees (even though that did not eliminate BlueRadios' ownership interests), resulting in a Frankenstein-ian mish-mash of intellectual property rights scattered among applications with inconsistent inventorship and ownership, a motion to correct inventorship, and two lawsuits no doubt costing both companies millions of dollars."

have received standalone patents for many different applications other than microdisplay, including Apple CarPlay and Android Auto Technologies).

Nevertheless,          HBSR should have known that the contract created conflicts of interest such that HBSR could not represent both Kopin and BlueRadios in the Golden-i development project as it stood. PSOF ¶228.  HBSR was required to disclose the conflict to BlueRadios (and to Kopin) and should not have given legal advice to BlueRadios other than to secure different counsel. See, Mass.R.Prof.C. 1.7(b); 37 C.F.R. § 11.107; PSOF ¶228. And if both Kopin and BlueRadios were insistent upon using HBSR, HBSR should have required the parties to renegotiate the contract, which would have required separate, unconflicted counsel. *Id.*

 Had BlueRadios known what HBSR had a duty to disclose—that HSBR had a conflict of interest in representing both BlueRadios and Kopin and that HBSR would not protect BlueRadios' interests—BlueRadios would have terminated the contract. PSOF ¶221.  But by the time BlueRadios learned of HBSR's and Kopin's wrong-doing, BlueRadios believed that Kopin had already licensed the Golden-i intellectual property to third-parties and terminating the contract did not make sense.[16]  PSOF ¶222.

*Berman v. Alexander*, 57 Mass. App. Ct. 181, 188 (2003) is inapposite.  In *Berman,* the plaintiff alleged that instead of following the (correct) advice of her lawyer she would have acted contrary to law. Here, BlueRadios could terminate the contract. Thus, an assumption that BlueRadios would have terminated the contract had HBSR acted properly from the outset is grounded in what a reasonable, unconflicted lawyer would have advised BlueRadios at the time, and what the contract permitted.  In *Van Bride Grp., Inc. v. Bowditch & Dewey*, 36 Mass. App. Ct. 509, 517-521, the court found speculative an

_____

[16] HBSR provides no reason why terminating the contract upon discovery of Defendants' wrong-doing almost a decade later would mitigate BlueRadios' damages.

assumption that an owner would have accepted a bankruptcy creditor's committee offer that was financially unsound.  Here, if BlueRadios had known that HBSR was not protecting its interests, it would make perfect sense for BlueRadios to terminate the contract to protect its valuable intellectual property rights.

## X. BLUERADIOS' KOPIN CASE EXPENSES ARE DAMAGES

Legal expenses incurred in attempting to ameliorate the harm caused by legal malpractice are damages. *Pelletier v. Chouinard,* 27 Mass. App. Ct. 92, 95 (1989) (legal expense incurred to ameliorate harm cause by negligent attorney is appreciable harm); *Levin v. Berley*, 728 F.2d 551, 554 (1st Cir. 1984) ("Levin would have been entitled to damages for attorney fees and other costs incurred in attempting to save the marital deduction even in the unlikely event he had later snatched victory from defeat in the tax action").  *See also,* Mallen, §21:29 (2024) ("If the client is successful in mitigating damages, the reasonable expenses of such efforts are chargeable to the attorney, as are the expenses of a reasonable but unsuccessful effort.").

Arguing that BlueRadios should not recover as damages its expenses incurred in the Kopin lawsuit, HBSR states the general proposition that the tort of another doctrine applies when a party's conduct "requires the plaintiff to bring an action against a third party." *Franchi v. Stella*, 42 Mass. App. Ct. 251, 259 (1997).  Applied here, HBSR's conduct required BlueRadios to bring an action against Kopin.[17] None of the cases HBSR cites involves a legal malpractice claim. BlueRadios is not suing HBSR as an agent or attorney for Kopin.  BlueRadios is suing HBSR for failing its duties to BlueRadios, *regardless of the duties it owed to Kopin.*

---

[17]HBSR's argument that "third parties [here, Kopin] do not include agents [here, allegedly, HBSR] of the tortfeasor against whom the plaintiff litigated in the prior action [here, Kopin]" is confusing.

BlueRadios does not seek a "double recovery," and does not seek to recover amounts that would put it in a better position than it would have been but for HBSR's misconduct. If BlueRadios is unsuccessful in the Kopin case, HBSR is still liable for the fees as damages in this case. *Pelletier,* 27 Mass. App. Ct. at 95; *Levin,* 728 F.2d at 554; Mallen, §21:29. HBSR's concern that BlueRadios will recover its Kopin case fees twice—first here and later in the Kopin case[18]—is an unfounded one, premised on BlueRadios seeking fees it has already recovered and Kopin failing to object. And if HBSR believes Kopin, as a joint-tortfeasor or otherwise, should be responsible for paying the damages HBSR has caused, it or its insurer may seek contribution from Kopin. *See* MA ST 231B§1.

BlueRadios has incurred expenses in reasonable but, as of today, unsuccessful efforts to mitigate the unjust enrichment Kopin received as a result of HBSR's misconduct. These are damages for which HBSR is responsible.

## XI. COGSWELL AND MATLOFF ARE PROPER DEFENDANTS

The Court should reject Defendants' plea to dismiss Claims 1 and 2 against Cogswell. MSJ at 35. Cogswell conducted the investigation Klobucar requested and maintained that "Kopin believe[d] that the correct inventors ha[d] been named for each of the pending patent applications and issued patents at issue," PSOF ¶¶ 46-49, a determination deemed incorrect by the U.S. District Court for the District of Colorado after years of litigation between BlueRadios and Kopin. PSOF ¶ 55. Moreover, Cogswell appeared on behalf of Kopin in that litigation until the court disqualified HBSR. PSOF ¶¶ 52-53. By doing so, Cogswell violated the standard of care and breached his fiduciary duties to BlueRadios. PSOF ¶ 54.

---

[18] Should BlueRadios recover its fees in the Kopin case before this case reaches trial, BlueRadios' damages calculations, of course, will be modified accordingly.

Matloff was involved in a scheme to scrape off Tucker and Sample as inventors on the '646 Application and resulting '296 Patent, and keep control of BlueRadios' technology in the process without telling BlueRadios. *See* PSOF ¶¶ 32, 197-198; *see also* Ex. 76, Chao Report, at ¶¶ 90-97 (discussing how Defendants' misconduct with respect to the '646 Application and the '296 Patent caused harm to BlueRadios); Ex. 16 (Tu Report), at pp. 39-46 (discussing the nuances of how Defendants used procedural maneuvers in the patent prosecution process to remove BlueRadios' ownership to the '296 Patent and expand Kopin's ownership interest, Brook, Pierce, Thibodeau and Matloff's misconduct and conflicts of interest). Ex. 15 (Hricik Report), at ¶¶ 531; 565-570 (discussing Matloff's, Pierce's and Thibodeau's misconduct and responsibility).

The Court should also maintain Claims 4 and 7 against Cogswell and Matloff. "[E]mployees are liable for torts in which they personally participated." *Instant Image Print Shop, Inc. v. Lavigne, Keating, Halstead, Inc.*, 1998 Mass. App. Div. 74, *3 (1998) (citing *Lyon v. Morphew*, 424 Mass. 828, 831-32 (1997)). "Even absent a fiduciary relationship," a person has "a duty to disclose material information" if (i) partial disclosures were made and (ii) that person had superior knowledge. *First Choice Armor*, 717 F. Supp. at 162. Given that HBSR had sent Tucker the as filed version of the '646 Application naming Tucker as an inventor, Matloff had a duty to disclose the fact that he intended to file, and did file, documents deleting Tucker as an inventor. PSOF ¶32. Similarly, because HBSR provided BlueRadios with only piecemeal information about the patent applications it prosecuted, Cogswell had superior knowledge about, and a duty to disclose, HBSR's conduct relating to the removal of BlueRadios inventors in response to Klobucar's inquiries. PSOF ¶¶ 46-49.

Respectfully submitted this 19th day of February, 2024.

/s/ Michael T. Mihm

Michael T. Mihm, Pro Hac Vice
Elizabeth J. Hyatt, Pro Hac Vice
James E. Fogg, Pro Hac Vice
OGBORN MIHM, LLP
1700 Lincoln Street, Suite 2700
Denver, Colorado  80203
Telephone: (303) 592-5900
Facsimile: (303) 592-5910
Michael.Mihm@OMTrial.com
Elizabeth.Hyatt@OMTrial.com
James.Fogg@OMTrial.com

David B. Seserman, Pro Hac Vice
SESERMAN LAW LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (303) 900-2406
Facsimile: (303) 670-0990
dseserman@seserman.law

Douglas W. Salvesen (BBO# 550322)
Sanford F. Remz (BBO# 549198)
YURKO PARTNERS, P.C.
One Tech Drive, Suite 205
Andover, Massachusetts 01810
Telephone: (617) 381-4404
DSalvesen@yurkopartners.com
SRemz@yurkopartners.com

*Counsel for Plaintiff, BlueRadios Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 19, 2024, I electronically served the foregoing on all counsel of record.

_/s/ Michael T. Mihm_