# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUERADIOS, INC.,<br>A Colorado corporation,<br><br>       Plaintiff,<br><br>v.<br><br>HAMILTON, BROOK, SMITH &<br>REYNOLDS, P.C., a Massachusetts<br>Professional corporation;<br>DAVID J. THIBODEAU, JR., an<br>individual;<br>LAWRENCE P. COGSWELL III, an<br>Individual;<br>GERALD KAZANJIAN, an individual;<br>STEPHEN D. BROOK, as Personal<br>Representative of the Estate of David E.<br>Brook;<br>JOSHUA MATLOFF, an individual; and<br>NELSON SCOTT PIERCE, an individual.<br><br>       Defendants. | Civil Action No.: 1:21-cv-10488-DJC |

**PLAINTIFF'S *CORRECTED* RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS [Leave to File Corrected Version Granted on February 13, 2024]**

Plaintiff BlueRadios responds to Defendants' Statement of Undisputed Material Facts as follows:

## I)   BLUERADIOS' RESPONSES TO HBSR'S STATEMENT OF MATERIAL FACTS

### I.   Kopin discloses "Golden-i" to HBSR in December 2006, and the firm begins preparing and filing patent applications.

1. Kopin Corporation ("Kopin") is a Massachusetts corporation that has, for decades, designed and manufactured micro-display technology. D. 47 ¶ 1; Hauptman Decl., Ex. 1 (Choi Dep. Tr. 29:8-15 (Mar. 30, 2023)).

1

**Response: Undisputed.**

2.  Dating back at least to the 1990s, HBSR has prosecuted patent applications in the
    United States Patent and Trademark Office ("USPTO") for Kopin directed to
    features of monocular portable communication and display systems, including head-
    mountable display systems. Hauptman Decl., Ex. 2 (Dep. Ex. 112 (patent issued in
    Sept. 1998)); Hauptman Decl., Ex. 3 (Dep. Ex. 113 (patent issued in May 2008 from
    application filed in March 1997)); Hauptman Decl., Ex. 4 (Dep. Ex. 114 (publication
    of patent application filed in Aug. 2003)).

**Response: Undisputed.**

3.  Among other things, these applications and the patents that issued from them
    disclosed the wireless transmission of audio and video signals, including via
    Bluetooth and other wireless interfaces. Hauptman Decl., Ex. 2 (Dep. Ex. 112, at col.
    16, lines 26-28) ██████████████████████████
    ███████████████████████████████████████████);
    Hauptman Decl., Ex. 4 (Dep. Ex. 114, at col. 1, para. [0011]) ("The display system
    can also communicate with other devices using interfaces like Bluetooth, infrared
    (e.g., IRDA), or cable-based protocols.").

**Response:  Disputed.  Kopin did not have wireless technology, in patents or
otherwise, necessary to develop a head-mounted computing device until it took
that technology from BlueRadios.  See PL. Ex. 1 (BlueRadios' current and pre-
existing technology and know-how was necessary to launch the Golden-i in 2008);
PL. Ex. 2 (Depo. Ex. 12 (in March 2007, ██████████████████████
███████).**

4.  Jeffrey Jacobsen was a senior adviser to Kopin's CEO. Hauptman Decl., Ex. 5
    (Jacobsen Dep. Tr. 178:3-5 (Mar. 8, 2023)). He had been employed by Kopin in the

1990s and rejoined the company in October 2006 to 

*Id.* at 177:2-10,

177:20-178:2, 178:6-21.

**Response: Undisputed.**

5.  In December 2006, Jacobsen sent Dr. Hong Choi, Kopin's Chief Technology Officer

who oversaw Kopin's patent applications, an email with two attachments relating to

a                                              including a

Hauptman Decl., Ex. 6 (Dep. Ex. 115, at

HBSR_MA_003089-90); Hauptman Decl., Ex. 7 (Dep. Ex. 116); Hauptman Decl., Ex.

1 (Choi Dep. Tr. 292:9-18 (Mar. 30, 2023)); Hauptman Decl., Ex. 5 (Jacobsen Dep. Tr.

177:20-178:5, 202:24-203:10, 204:5-9 (Mar. 8, 2023)).

**Response:  Undisputed.**

6.  The claim template, which describes Jacobsen's ideas about the features for a device

that would become known as "Golden-i," discusses a high-resolution, head-wearable



and

functions.

Hauptman Decl., Ex. 7 (Dep. Ex. 116, at HBSR_MA_003021); Hauptman Decl., Ex. 5

(Jacobsen Dep. Tr. 204:5-9 (Mar. 8, 2023)). It further states that, among other

features, the device

including Bluetooth, Wi-Fi, or cellular wireless interfaces. Hauptman Decl., Ex. 7

(Dep. Ex. 116, at HBSR_MA_003021).

**Response:  Disputed that these were all Jacobsen's ideas.  Jacobsen began**

**discussing BlueRadios' wireless technology with Kramer in the fall of 2006.  PL.**

**Ex. 3 (Kramer Dep. 7/19/23 72:1-76:1).**

7. Dr. Choi forwarded Jacobsen's email and its attachments to HBSR, saying Kopin would like to file a patent application and asking HBSR to contact Jacobsen. Hauptman Decl., Ex. 6 (Dep. Ex. 115, at HBSR_MA_003089).

**Response: Undisputed.**

8. HBSR then began working on Golden-i patent applications, filing one and drafting and sending to Kopin three more through April 5, 2007. Hauptman Decl., Ex. 8 (Dep. Ex. 118 (filing receipt, cover sheet, and U.S. Provisional Application No. 60/880,270)); Hauptman Decl., Ex. 9 (Dep. Ex. 424 (HBSR sending a draft of another provisional patent application to Kopin)); Hauptman Decl, Ex. 10 (Dep. Ex. 600 (same)); Hauptman Decl., Ex. 11 (HBSR_121803 (same)); *see also* Hauptman Decl., Ex. 12 (HBSR Dep. Tr. 253:6-17 (Nov. 16, 2023)) (HBSR filed multiple provisional patent applications relating to Golden-i before it ever interacted with BlueRadios).

**Response: Undisputed.**

**II.    Kopin enters into a contract with BlueRadios for the provision of engineering services related to the development of Golden-i in 2007, and Kopin and BlueRadios later execute an addendum to the contract.**

9. Jacobsen served as manager for the development of Golden-i. Hauptman Decl., Ex. 5 (Jacobsen Dep. Tr. 92:13-15 (Mar. 8, 2023)).

**Response: Undisputed.**

10. For the development, Jacobsen wanted to ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ *Id.* at 235:16-20. His search, which he conducted at around the time he sent his Golden-i patent claim template to Dr. Choi, eventually led him to BlueRadios. *Id.* at 229:21-230:4.

**Response: Undisputed as to the quoted language. Disputed as to the chronology of facts. Jacobsen approached Fan in 2006 and disclosed his idea for *Golden-i*. PL. Ex. 4 (Jacobsen Dep. 7/26/2018 26:2-29:5). Jacobsen reached out to BlueRadios, through Kramer, before making his initial idea for a potential business relationship with BlueRadios known to HBSR. PL. Ex.4 (Jacobsen Dep. 7/26/2018 40:1-5; 44:10 – 47:5).**

11. BlueRadios is a Colorado corporation that develops wireless technology. D. 47 ¶ 1.

**Response: Undisputed.**

12. On February 14, 2007, Jacobsen sent Mark Kramer, BlueRadios' President and CEO, a fully executed Confidential Disclosure Agreement ("NDA") effective February 12, 2007. Hauptman Decl., Ex. 13 (Dep. Ex. 119); Hauptman Decl., Ex. 14 (Kramer Dep. Tr. 34:8-10 (July 19, 2023)).

**Response: Undisputed.**

13. The NDA permitted Kopin and BlueRadios to disclose to each other, subject to the NDA's terms, certain ██████████████ information. Hauptman Decl., Ex. 13 (Dep. Ex. 119, at BRREV410600-01).

**Response:  Undisputed.**

14. On June 5, 2007, Kopin and BlueRadios entered into a contract setting forth their respective rights and obligations relating to Golden-i development efforts (the "Contract"). Hauptman Decl., Ex. 15 (Dep. Ex. 179); Hauptman Decl., Ex. 16 (Kopin Dep. Tr. 15:23-16:22 (Aug. 4, 2023)).

**Response: Undisputed.**

15. The Contract includes, among other things, the following terms:

    a.  Kopin agreed to (1) pay BlueRadios $35,000 per month as a ████████ ████████████████████ to create specific deliverables, (2) be

responsible for costs, and (3) pay BlueRadios a per-unit royalty on Golden-i

product sales up to a $7.8 million cap. Hauptman Decl., Ex. 15 (Dep. Ex. 179,

at BRREV151097-98); Hauptman Decl., Ex. 16 (Kopin Dep. Tr. 24:22-25:13,

28:3-6 (Aug. 4, 2023)); Hauptman Decl, Ex. 17 (BlueRadios Dep. Tr. 233:12-15

(Nov. 28, 2023));

**Response: Disputed as this misstates the Contract. Kopin was not responsible for**

**all costs. Ex. 3 (Kramer Dep. 7/21/23 265:18-266:24).**

    b.  Kopin had exclusive control over patent prosecution:



Hauptman Decl., Ex. 15

(Dep. Ex. 179, at BRREV151098 (emphasis added)); Hauptman Decl., Ex. 14

(Kramer Dep. Tr. 142:13-16 (July 19, 2023)) (Kramer agreeing that

"BlueRadios had no authority to direct which patent applications were filed");

**Response: Undisputed the quoted language appears in the contract.  Disputed**

**that Kopin had exclusive control over patent prosecution.  Kopin had the right**

***and responsibility*** **to decide whether to seek patent protection for property rights**

**developed as part of or incorporated into the project deliverables.  Except for a**

**license for micro-display applications, Kopin did not have rights to BlueRadios'**

**intellectual property developed before the start of the contract or developed**

**outside the scope of the contract.  BlueRadios jointly owned intellectual property**

**rights with Kopin to intellectual property BlueRadios developed in the course of**

**the contract and BlueRadios agreed not to license or sell that intellectual**

**property for microdisplay applications. Kopin maintained a license to**

**BlueRadios' patent rights** ███████████████████████████████ **so long as Kopin continued to prosecute and maintain those patent rights.  BlueRadios' ownership interests in the patents did not turn on BlueRadios' contribution to a claimed invention.**

    c.  The ███████████████████████████████████████████ ███████████████████ and neither party will use the other's confidential information for any purposes other than those contemplated by the Contract. Hauptman Decl., Ex. 15 (Dep. Ex. 179, at BRREV151099);

**Response: Undisputed.**

    d.  Intellectual property ███████████████████████ ██████████████████████████████████ ███████████████████████████████████████ █████████████████████████████ ██████████████████████████ *Id.* at BRREV151098; and

**Response: Undisputed.**

    e.  BlueRadios granted ██████████████████████████ ████████████████████████████████████ ███████████████████████████████ ████████████████████ *Id.* at BRREV151098.

**Response: Undisputed.**

16. The Contract does not provide for any sharing of profits, losses, or revenue between Kopin and BlueRadios. *See generally id.*; *see also* Hauptman Decl., Ex. 14 (Kramer Dep. Tr. 105:4-19 (no revenue-sharing), 108:3-7 (no profit- or loss-sharing) (July 19, 2023)).

**Response: Disputed. There was** ███████████████████████████
██████████████████████ **PL. Ex. 3 (Kramer Dep. Tr. 266:22-24 (July
21, 2023)). There was a** ███████████████ **as BlueRadios discounted their
normal rates and absorbed all the costs and risks. PL. Ex. 3 (Kramer Dep. Tr.
265:18 – 266:21. (July 21, 2023)).**

17. Kramer drafted the Contract. Hauptman Decl., Ex. 14 (Kramer Dep. Tr. 87:17-88:4
(July 19, 2023)).

**Response: Undisputed.**

18. Kramer is not sure if, at the time of contracting, he believed the Contract was a joint
venture or if that was an ███████████ *Id*. 113:18-114:3.

**Response:  Disputed: Kramer considered the agreement with Kopin to be a joint
venture because they were to jointly own the technology and share in the risk
exposure for developing the technology. PL. Ex. 3 (Kramer Dep. Tr. 265:8-17 (July
21, 2023)). BlueRadios specifically rejected being a contract engineer. PL. Ex. 3
(Kramer Dep. Tr. 267:2-6 (July 21, 2023)).**

19. Kopin was not satisfied with the deliverables and told BlueRadios the Contract
would be terminated. Hauptman Decl., Ex. 16 (Kopin Dep. Tr. 48:4-14, 49:6-18 (Aug.
4, 2023)).

**Response: Disputed as this is misleading and misstates the facts. There is no
mention by Kopin they were dissatisfied with GEN 1 deliverables.**

20. Thereafter, on October 22, 2008, Kopin and BlueRadios executed an addendum to
the Contract (the "Addendum"). Hauptman Decl., Ex. 18 (Dep. Ex. 434).

**Response: Undisputed.**

21. Under the Addendum, BlueRadios waived the $35,000 monthly payment and agreed
to deliver ten ██████████████████████████████████

██████████████████████████████████████████ at which point
BlueRadios would become entitled to receive a reduced per-unit royalty on Golden-i
sales, again subject to a $7.8 million cap. *Id.* at BRREV162265.

**Response: Disputed.  The Addendum speaks for itself and did not alter the**
**termination provisions in the Contract. PL. Ex. 5 (BRREV162265).**

22. The Addendum provides that, ████████████████████████████
████████████████████████████ *Id.* at BRREV162265.

**Response:  Undisputed.**

23. No party has terminated the Contract. Hauptman Decl., Ex. 14 (Kramer Dep. Tr.
118:17-19 (July 19, 2023) (admitting that the Contract is "still in effect today"));
Hauptman Decl., Ex. 19 (Campanella Dep. Tr. 77:1-6 (Dec. 19, 2023)) ("I understand
the contract is still in place, yes."); Hauptman Decl., Ex. 17 (BlueRadios Dep. Tr.
281:9-12 (Nov. 28, 2023)) ("We haven't done anything with the patents to monetize
the patents because we're following the contract between BlueRadios and Kopin
that's still in effect.").

**Response: Undisputed that no party has terminated the contract, *but see* PSOF**
**¶¶ 221-222.**

### III.    Kopin introduces BlueRadios to "Kopin's IP law firm" HBSR and instructs HBSR and BlueRadios to work together to prepare certain patent applications.

24. On April 11, 2007, after HBSR had drafted or filed the above-referenced Golden-i
patent applications and before Kopin and BlueRadios executed the Contract,
Jacobsen told HBSR lawyers about Kopin's plan to work with BlueRadios.
Hauptman Decl., Ex. 20 (Cass Dep. Tr. 360:8-11, 361:18-362:5 (July 31, 2023));

9

Hauptman Decl., Ex. 21 (HBSR_126179 (third para. of email from Pierce to Choi summarizing meeting)).

**Response: Undisputed.**

25. Jacobsen told HBSR that BlueRadios  Hauptman Decl., Ex. 21 (HBSR_126179).

**Response: Undisputed that HBSR's Pierce told Kopin's Choi that BlueRadios**

26. Later that month, on April 26, Jacobsen emailed Kramer, suggesting that  speak to someone at BlueRadios. Hauptman Decl., Ex. 22 (BRREV093527) (emphasis added). Mr. Kramer responded that *Id*. (emphasis added).

**Response:  Undisputed.**

27. It was not until June 19, 2007, two weeks after Kopin and BlueRadios executed the Contract, that HBSR and BlueRadios were introduced. On that day, Jacobsen wrote to Kramer and BlueRadios' Chief Technology Officer, Wilfred Tucker, informing them that  would be contacting them to

Hauptman Decl., Ex. 23 (Dep. Ex. 20, at BRREV647491) (emphasis added); Hauptman Decl., Ex. 24 (Tucker Dep. Tr. 41:12-42:3 (July 21, 2023)).

**Response: Undisputed.**

28. On August 16, 2007, Jacobsen followed up with an email to Tucker, copied to Kramer, again referring to Cass as and instructing Tucker to

█████████████████████████████████████████

███████ Hauptman Decl., Ex. 25 (Dep. Ex. 278) (emphasis added).

**Response: Undisputed, but incomplete. Jacobsen's only reference to HBSR as "Kopin's" counsel in the email is by way of introduction. In the remainder of the email, discussing, *inter alia*, HBSR's work with BlueRadios, he refers to the lawyers as "HBS&R attorneys" and "HBS&R" and not as "Kopin's" lawyers. Hauptman Decl., Ex. 25. Furthermore, Kopin's Jacobsen and BlueRadios' Tucker colloquially referred to HBSR as "Kopin's lawyers" as a form of shorthand to refer to HBSR during its work in connection with the Golden-i project. PL. Ex. 6 (Tucker Dep. 106:8-21).**

29. At Kopin's direction, HBSR continued working on Golden-i patent applications, including some involving BlueRadios inventors and contributions. *See* Hauptman Decl., Ex. 12 (HBSR Dep. Tr. 9:17-22 (Nov. 16, 2023)) ████████████

█████████████████████████████████████████

█████████████████████████████████████████

███████████████████ ; *id.* at 40:6-13 (HBSR filed applications naming BlueRadios personnel as inventors at Kopin's request).

**Response: Disputed that HBSR worked only at Kopin's direction. BlueRadios requested advice and assistance from HBSR on numerous occasions in connection with the preparation and prosecution of patent applications relating to the technology BlueRadios developed prior to, and during, its joint development relationship with Kopin. PL. Ex. 7 (Plf.'s Resp. to Court-Ordered Interr., pp. 3-38).**

30. But "BlueRadios did not make individual requests for HBSR to perform discreet [sic] tasks in fulfilment of its role . . . ." Hauptman Decl., Ex. 26 (Ans. to Court-Ordered

Interrog. No. 1, at 4, Pl.'s Resps. to Court-Ordered Interrogs in Lieu of Add'l Fed. R.

Civ. P. 30(b)(6) Deposition Testimony (Jan. 5, 2023)). Nor did BlueRadios have

authority under the Contract to direct which patent applications were filed.

Hauptman Decl., Ex. 14 (Kramer Dep. Tr. 142:13-16 (July 19, 2023)).

**Response: Undisputed that BlueRadios did not make individual requests for
HBSR to perform its discreet tasks in fulfilling its role, but disputed that it did
not make any requests and that BlueRadios did not have authority to do so.  PL.
Ex. 7 (Plf.'s Resp. to Court-Ordered Interr., pp. 3-38); PL. Ex. 8 (DEPO. EX. 24 at
KPN22_00012720 to 12722; PL. Ex. 9 (DEPO. EX. 36 at HBSR_008662); PL. Ex. 10
(DEPO. EX. 57 at HBSR_008708); PL. Ex. 3 (Kramer 7/19/2023 Dep., 142:19-143:10);
PL. Ex. 11 (Jacobsen Dep. 12/1/2023 334:6-8).**

31. Aside from a single request that HBSR include in a Golden-i patent application

certain claim language directed to a particular WiFi embodiment—a request HBSR

did not fulfill—BlueRadios has not identified *any* specific request it made of HBSR

to do something BlueRadios now claims HBSR should have done. *Id.* at 134:11-

135:7.

**Response:  Disputed.  BlueRadios asked for legal advice from HBSR's attorneys
for the purposes of obtaining advice and assistance in securing patent protection,
including how to obtain protection for BlueRadios' wireless technology and
which aspects of that technology was patentable.  BlueRadios asked for direction
about what sort of information HBSR needed to prepare and prosecute patent
applications.  BlueRadios commented on draft patent applications HBSR sent to
it and sought HBSR's feedback on those comments Ex. __ (Plf.'s Resp. Court-
Ordered Interr., pp. 3-4, 6-9); *see also* PL. Ex. 8 (DEPO. EX. 24 at KPN22_00012720**

to 12722; PL. Ex. 9 (DEPO. EX. 36 at HBSR_008662); PL. Ex. 10 (DEPO. EX. 57 at HBSR_008708).

32. HBSR and BlueRadios last directly communicated on June 16, 2009. *See* Hauptman Decl., Ex. 27 (BRREV392446); In response to Defendants' interrogatory asking BlueRadios to state the basis for its allegation that "BlueRadios believed [HBSR] was its attorneys for purposes of the Patent Work," BlueRadios does not identify any communication with HBSR after March 30, 2009. Hauptman Decl., Ex. 78 (Pl.'s Second Am. & Suppl. Resps. to Defs.' First Set of Interrogs., Ans. to Interrog. No. 7, at 8-36 (Oct. 25, 2023)).

**Response:  Undisputed.**

33. In agreeing to the Contract, BlueRadios agreed that its confidential intellectual property would be shared with Kopin's lawyers. Hauptman Decl., Ex. 17 (BlueRadios Dep. Tr. 125:1-4 (Nov. 28, 2023)).

**Response:  Disputed. BlueRadios understood that, pursuant to the Contract, the lawyers at one law firm would represent both BlueRadios and Kopin.  PL. Ex. 3 (Kramer Dep. 153:12-157:2).**

34. BlueRadios did not send HBSR any documents that it had marked as confidential. *Id.* at 143:24-144:2.

**Response:  Disputed.  In response to HBSR's request, BlueRadios sent HBSR a detailed schematic regarding the hardware involved in BlueRadios' technology marked "Proprietary-Confidential."  PL. Ex. 12 (DEPO. EX. 27 at HBSR_008579 to 8581).  BlueRadios also sent HBSR a Software Design Specification drafted by Tucker and stamped "Proprietary and Confidential." PL. Ex. 8 (DEPO. EX. 24 at KPN22_00012719); PL. Ex. 13 (BRREV671437 to 671485).**

35. BlueRadios is unable to identify any confidential information that it shared with HBSR but did not also share with Kopin. *Id.* at 59:7-21.

**Response: Undisputed.**

36. HBSR, BlueRadios, and Kopin have produced 138,148 emails in this lawsuit. Hauptman Decl., Ex. 30 (Fed. R. Evid. 1006 Summary). During the two-year period in which HBSR and BlueRadios communicated, HBSR lawyers appear on only about 42 emails (after de-duplication) on which BlueRadios personnel also appear. *Id.* Of those emails, only 8 involve just BlueRadios and HBSR (and not Kopin). *Id.*

**Response: Disputed.  Defendants' "De-Duplication of Lesser Inclusive Threads" (and failure to include and identify emails) fails to account for multiple communications between HBSR and BlueRadios.  By way example, and in no way inclusive of the omissions, the list entitled "Emails on which HBSR and BlueRadios personnel appear as senders, recipients, or cc's" of Defendants' Ex. 30 omits emails of December 4, 2007 and December 6, 2007.  See, BRREV659691, BRREV673588.  Similarly, Defendants list BRREV673526 as a single email on January 4, 2008.  However, that email contains 9 communications, beginning on December 4, 2007. PL. Ex. 14 (BREEV659691, BRREV673588, BRREV673526). The "summary" Defendants have prepared is not accurate nor admissible. F.R.E. 1006.**

37. Throughout this time period, and ten months after HBSR filed the first Golden-i patent application naming BlueRadios inventors, BlueRadios still referred to HBSR as ███████████████ [sic]," Hauptman Decl., Ex. 31 (Dep. Ex. 279, at BRREV093430 (10/9/2008 email from Kramer to Jacobsen)), and as ███████████ Hauptman Decl., Ex. 32 (Dep. Ex. 280, at BRREV163866 (11/19/2008 email from Tucker to Kramer)).

**Response: Undisputed. Kopin Jacobsen and BlueRadios colloquially referred to HBSR as "Kopin's lawyers" as a form of shorthand to refer to HBSR during its work in connection with the Golden-i project.  PL. Ex. 6 (Tucker Dep. 106:8-21).**

38. In response to Defendants' interrogatory asking BlueRadios to state the basis for its allegation that "BlueRadios believed [HBSR] was its attorneys for purposes of the Patent Work," BlueRadios does not identify any communication in which it objected to or questioned HBSR's role as Kopin's counsel, referred to HBSR as its lawyers, indicated any belief that it had an attorney-client relationship with HBSR, or asked HBSR to represent it. Hauptman Decl., Ex. 78 (Pl.'s Second Am. & Suppl. Resps. to Defs.' First Set of Interrogs., Ans. to Interrog. No. 7, at 8-36 (Oct. 25, 2023)); *see also* Hauptman Decl., Ex. 14 (Kramer Dep. Tr. 179:16-180:3 (July 19, 2023) (BlueRadios did not communicate to HBSR its belief that any attorney from HBSR was representing BlueRadios)).

**Response: Disputed. BlueRadios' interrogatory response (Haptman Decl., Ex. 78 and PL. Ex. 7 (Plf.'s Resp. to Court-Ordered Interrog., pp. 3-38) describe numerous communications in which BlueRadios requested for legal services and advice from HBSR, and the advice HBSR provided, all of which indicated BlueRadios' belief it had an attorney-client relationship with HBSR.**

39. In response to Defendants' interrogatory asking BlueRadios to state the basis for its allegation that "BlueRadios believed [HBSR] was its attorneys for purposes of the Patent Work," BlueRadios does not identify any engagement letter or fee agreement with HBSR. Hauptman Decl., Ex. 78 (Pl.'s Second Am. & Suppl. Resps. to Defs.' First Set of Interrogs., Ans. to Interrog. No. 7, at 8-36 (Oct. 25, 2023)). Nor did BlueRadios pay HBSR for any legal services. Hauptman Decl., Ex. 14 Kramer Dep. Tr. 139:18-23 (July 19, 2023).

15

**Response: Undisputed.**

40. Nor did BlueRadios ever communicate to HBSR its belief that any attorney from HBSR was representing BlueRadios. Hauptman Decl., Ex. 14 (Kramer Dep. Tr. 179:16-180:3 (July 19, 2023)).

**Response: Disputed.  The contract itself, to which BlueRadios was a party and which HBSR reviewed numerous times, "communicated" to HBSR that HBSR would be acting as counsel for both BlueRadios and Kopin.  PL. Ex. 15 (Prof. Hricik Decl., Ex. A, ¶ 519; See also response to SOF ¶¶ 38 and 39. BlueRadios gave HBSR confidential information for the purpose of HBSR securing patent rights on BlueRadios' behalf.  BlueRadios and Kopin contracted for the HBSR (the law firm Kopin chose) to act as counsel for both BlueRadios and Kopin and HBSR. BlueRadios requested information and services from HBSR, including the prosecution of patents on its behalf, information regarding the status of that work, adjustments to the applications prepared on behalf of BlueRadios, identification of information HBSR needed to perform that work.  PL. Ex. 7 (Plf.'s Resp. Court-Ordered Interr., pp. 3-4, 6-9).  BlueRadios received the services from HBSR, BlueRadios did not have separate counsel and HBSR knew it did not have separate counsel.  Dkt. 47, ¶ 77; Dkt. 97, ¶ 77.  HBSR knew BlueRadios was unsophisticated in the area of patents.  All of this information communicated to HBSR that BlueRadios believed HBSR was its counsel. BlueRadios did not tell HBSR that it had other patent counsel (because it did not), BlueRadios did not tell HBSR that it believed HBSR was not BlueRadios counsel. These facts indicated to HBSR that BlueRadios believed HBSR was its counsel. PL. Ex. 15 (Prof. Hricik Decl., Ex. A, pp. 183-193); PL. Ex. 16 (Prof. Tu Decl., Ex. Tu A, pp. 19-**

24 ("a reasonable patent attorney under the circumstances would understand
that BlueRadios reasonably believed that HBSR was its counsel").

**IV.    At Kopin's instruction, HBSR files patent applications naming one or more
BlueRadios personnel as inventors.**

**Response:  This is argument. Disputed that HBSR worked only at Kopin's
direction.  BlueRadios requested advice and assistance from HBSR on numerous
occasions in connection with the preparation and prosecution of patent
applications relating to the technology BlueRadios developed prior to, and
during, its joint development relationship with Kopin.  PL. Ex. 7 (Plf.'s Resp. to
Court-Ordered Interr., pp. 3-38).**

41. In HBSR's docketing system, "0717" is the client number for Kopin, the four digits
    following that number refer to a family of patent applications, and the final three
    digits following the hyphen refer to an individual application within that family. *See*
    Hauptman Decl., Ex. 34 (Pierce Dep. Tr. 67:10-68:2 (June 29, 2023)); Hauptman
    Decl., Ex. 33 (HBSR Dep. Tr. 14:18-24 (Nov. 17, 2023)).

**Response:  Undisputed.**

42. At Kopin's instruction, between January 2008 and January 2009, HBSR filed a
    handful of Golden-i patent applications that named BlueRadios employees among
    the inventors and corresponded to a unique HBSR docket number:

**Response:  Disputed that HBSR worked only at Kopin's direction.  BlueRadios
requested advice and assistance from HBSR on numerous occasions in
connection with the preparation and prosecution of patent applications relating
to the technology BlueRadios developed prior to, and during, its joint**

development relationship with Kopin.  PL. Ex. 7 (Plf.'s Resp. to Court-Ordered

Interr., pp. 3-38).

    a.  The first, U.S. Provisional Patent Application No. 61/010,177 (the "'177

Application," HBSR Docket No. 0717.2082-000), was filed on January 4, 2008,

and named BlueRadios' Tucker, Kramer, John Sample, and Randall Jones as

inventors. *See* Hauptman Decl., Ex. 35 (Dep. Ex. 30 (file wrapper for '177

Application)). A provisional patent application is not examined by the USPTO

and cannot result in a patent. Hauptman Decl., Ex. 36 (Wakimura Dep. Tr.

42:2-4, 47:3-13 (June 27, 2023));

**Response: Undisputed.**

    b.  HBSR filed another, U.S. Utility Application No. 12/152,462 (the "'462

Application," HBSR Docket No. 0717.2074-001), on May 14, 2008, naming

Kopin's Jacobsen and Stephen Pombo, Integral RFID's Parkinson, and

BlueRadios' Tucker and Sample as inventors. Hauptman Decl., Ex. 37 (Dep.

Ex. 183, at HBSR_028082-83);

**Response:  Undisputed.**

    c.  That same day, HBSR filed a related application, PCT/US2008/006147 (the

"'147 PCT," HBSR Docket No. 0717.2074-002), with the World Intellectual

Property Organization, naming the same inventors it had named in the '462

Application. Hauptman Decl., Ex. 38 (PCT Request for '147 Application);

**Response:  Undisputed.**

    d.  HBSR filed four national-phase applications based on the '147 PCT in foreign

countries. *See* Hauptman Decl., Ex. 39 (Dep. Ex. 2, at Kopin_00209750-51

(applications identified with the docket number, *i.e.*, the value in the first

column, 0717.2074-003 through -006));

**Response:  Undisputed.**

      e.   Finally, HBSR filed two other applications naming BlueRadios inventors on January 5, 2009. One, U.S. Utility Application No. 12/348,627 (the "'627 Application," HBSR Docket No. 0717.2082-001), claimed priority to the '177 Application; was a continuation-in-part of another earlier-filed Golden-i application; and named BlueRadios' Kramer, Sample, and Tucker and Kopin's Jacobsen as inventors. Hauptman Decl., Ex. 40 ('627 Application).

**Response:  Undisputed**.

      f.   The other, U.S. Utility Application No. 12/348,646 (the "'646 Application," HBSR Docket No. 0717.2083-002), was a continuation-in-part of the '462 application; claimed priority to another earlier-filed Golden-i application; and named Integral RFID's Parkinson, BlueRadios' Tucker and Sample, and Kopin's Jacobsen as inventors. Hauptman Decl., Ex. 41 (Dep. Ex. 187, at HBSR_011990-91).

**Response:  Disputed.  Parkinson was a BlueRadios employee at that time.  *See* Resp. to DSOF ¶¶ 50-51.**

    43.Hauptman Decl., Ex. 12 (HBSR Dep. Tr. 9:17-22 (Nov. 16, 2023)) ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; *id.* at 40:6-13 (HBSR filed applications naming BlueRadios personnel as inventors at Kopin's request).

**Response:  Disputed that HBSR worked only at Kopin's direction.  BlueRadios requested advice and assistance from HBSR on numerous occasions in connection with the preparation and prosecution of patent applications relating to the technology BlueRadios developed prior to, and during, its joint**

development relationship with Kopin.  PL. Ex. 7 (Plf.'s Resp. to Court-Ordered

Interr., pp. 3-38).

44. These patent applications and their file histories are, and long have been, publicly

visible. For example:

    a.  The '462 Application was published (without listing any BlueRadios

       inventors and listing Kopin as the assignee) and its file history was made

       public by the USPTO on May 7, 2009. Hauptman Decl., Ex. 42 (Pub. No. US

       2009/0117890);

**Response:  Undisupted.**

    b.  The '627 Application was published (listing Jacobsen and not Jones as an

       inventor) and its file history was made public by the USPTO on August 20,

       2009. Hauptman Decl., Ex. 43 (Pub. No. US 2009/0209205); and

**Response: Undisputed.**

    c.  The '646 Application was published (listing Kopin as the assignee) and its file

       history was made public by the USPTO on October 8, 2009. Hauptman Decl.,

       Ex. 44 (Pub. No. US 2009/0251409).

**Response: Undisputed.**

45. █████████████████████████████████████████████████

████████████████████████████████████ Hauptman Decl., Ex. 45

(Expert Report of Robert L. Stoll ("Stoll Report"), at 26 ¶ 83 (Dec. 6, 2023)).

**Response:  Undisputed.**

46. Patent applications are not published in certain circumstances, such as when the

applicant files a non-publication request. Hauptman Decl., Ex. 46 (Hricik Dep. Tr.

179:13-18 (Dec. 15, 2023)).

**Response:  Undisputed.**

47. HBSR did not file any non-publication requests, nor did it do anything else to cause any Golden-i patent application not to be published. Hauptman Decl., Ex. 45 (Stoll Report at 26-27 ¶¶ 84, 86); Hauptman Decl., Ex. 46 (Hricik Dep. Tr. 179:19-180:8 (Dec. 15, 2023)).

**Response:  Undisputed.**

## V.    HBSR also works on Golden-i patent applications with Chris Parkinson, a Kopin contractor.

48. HBSR also worked on Golden-i patent applications with Chris Parkinson, whom Kopin told HBSR was the ███████████████ in charge of software development for Golden-i. Hauptman Decl., Ex. 47 (Dep. Ex. 32, at HBSR_008647); Hauptman Decl., Ex. 48 (Parkinson Dep. Tr. 14:14-15:14 (Aug. 22, 2023)).

**Response:  Undisputed.**

49. On August 17, 2007, Kopin sent HBSR a copy of Integral RFID's contract with Kopin for Parkinson's Golden-i work. Hauptman Decl., Ex. 49 (Dep. Ex. 478). Under the contract, Kopin was entitled to ███████████████████████ ████████████████████ upon satisfaction of certain terms, and Integral RFID agreed to ███████████████████████ ████████████████ in work product produced under the contract that is patentable. *Id.* at HBSR_009348.

**Response:  Undisputed.**

50. With Kopin's prior authorization, Hauptman Decl., Ex. 50 (Dep. Ex. 38, at HBSR_009390), HBSR sent BlueRadios filed copies of certain patent applications, including patent applications naming Parkinson as an inventor, to BlueRadios. For example, on January 16, 2008, HBSR sent BlueRadios copies of the specification and

drawings for U.S. Provisional Patent Application No. 61/010,090 (the "'090

Application," HBSR Docket No. 0717.2083-000). Hauptman Decl., Ex. 51 (Dep. Ex.

360). The application attached to HBSR's email named only Parkinson as an

inventor. *Id.* at BRREV686418.

**Response: Undisputed that Kopin sent BlueRadios filed copies of certain patent**

**applications.  Disputed that it was done with "Kopin's prior authorization;" HBSR**

**did not need Kopin's authorization for any communications with BlueRadios.  PL.**

**Ex. 17; PL. Ex.18 (Jacobsen Dep. 333:23-334:4)**

## VI.    BlueRadios enters into a purported employment and assignment agreement with Parkinson in 2008 but does not disclose that fact to HBSR.

51. On July 9, 2007, Tucker requested, and Parkinson sent Tucker, a copy of the contract

between Parkinson's company Integral RFID and Kopin, Hauptman Decl., Ex. 52

(Dep. Ex. 357); Hauptman Decl., Ex. 24 (Tucker Dep. Tr. 122:13-124:2 (July 21,

2023)), which contained an assignment of intellectual property rights to Kopin.

**Response:  Undisputed that Parkinson sent Tucker a copy of the contract**

**between Integral RFID and Kopin.  Dispute Defendants' legal contention that the**

**contract contains a present assignment of Parikson's intellectual property rights**

**to Kopin, a legal interpretation that has been rejected by the U.S. District Court**

**for the District of Colorado.  PL. Ex. 19 (USDC Colo. Dkt. 356, pp. 7-8).**

52. One year later, on July 28, 2008, BlueRadios and Parkinson executed an

"Employment Agreement." Hauptman Decl., Ex. 53 (Dep. Ex. 48); Hauptman Decl.,

Ex. 48 (Parkinson Dep. Tr. 121:10-23 (Aug. 22, 2023)) (Parkinson identifying the

agreement as ███████████████████████████████████████████

██████████.

**Response:  Undisputed that BlueRadios and Parkinson entered into the**
**employment agreement on July 28, 2008.  Disputed that the employment**
**agreement was a sham.  PL. Ex. 3 (Kramer Dep. 7/21/23 118:2-119:14).**

53. A Proprietary Information and Inventions Agreement appended to the Employment
    Agreement contained a clause stating Parkinson agreed to assign to BlueRadios any
    rights in ███████████████████████████████████
    ████████████████████ Hauptman Decl., Ex. 53 (Dep. Ex. 48, at BRREV000005
    (clauses 3 & 3.1)).

**Response: The Proprietary Information and Inventions Agreement (PIIA) was a**
**separate agreement whereby Parkinson assigned his intellectual property to**
**BlueRadios, as set forth in the PIIA. See Hauptman Decl., Ex. 53. It was not**
**"appended to" the employment agreement.  PL. Ex. 20 (Parkinson Dep. 355:2-24).**

54. According to BlueRadios, Parkinson was its employee until mid-2009. Hauptman
    Decl., Ex. 54 (Kramer Dep. Tr. 104:25-105:5 (July 21, 2023)).

**Response:  Undisputed.**

55. According to Parkinson, the purpose of the contract was to allow him a BlueRadios
    email address so he could access software from a third party. Hauptman Decl., Ex.
    48 (Parkinson Dep. Tr. 121:24-122:6 (Aug. 22, 2023)).

**Response:  Undisputed that this disputed fact states Parkinson's position.**
**BlueRadios' position is that Parkinson needed to become a BlueRadios employee**
**to do his job.  PL. Ex. 3 (Kramer Dep. 7/21/23 118:2-119:14).**

56. Regardless, BlueRadios never told HBSR it had entered into the agreement with
    Parkinson or that Parkinson had any assignment obligation to BlueRadios.
    Hauptman Decl., Ex. 54 (Kramer Dep. Tr. 109:24-110:18, 116:23-117:4 (July 21,
    2023)); Hauptman Decl., Ex. 24 (Tucker Dep. Tr. 149:13-19 (July 21, 2023));

Hauptman Decl., Ex. 17 (BlueRadios Dep. Tr. 158:14-18 (Nov. 28, 2023)); Hauptman

Decl., Ex. 12 (HBSR Dep. Tr. 157:9-17 (Nov. 16, 2023)).

**Response:** Undisputed.

## VII.   BlueRadios learns the facts on which it bases this lawsuit in 2008 and 2009.

57. Starting in January 2008, BlueRadios learned the following facts on which it bases

this lawsuit. With respect to the ***'090 Application***:

**Response:  The statement is argument, unsupported characterization, and inappropriate for a statement of allegedly undisputed material facts.  Responses are directed to statements allegedly supported by the record.**

> a.   BlueRadios alleges its employees conceived the subject matter of a claim in
>
>    the '090 Application, and HBSR "failed to name" BlueRadios personnel as
>
>    inventors. D. 47 ¶¶ 176, 178;

**Response:  Disputed as irrelevant to the issues in Defendants' motion.  The '090 is a provisional patent application that would not be examined by the USPTO and could not result in a patent. SOF, ¶ 42.a; *see also* PSOF ¶ 16.**

> b.   On January 16, 2008, at Tucker's request, HBSR sent BlueRadios filed copies
>
>    of the specification and drawings for the '090 Application. Hauptman Decl.,
>
>    Ex. 51 (Dep. Ex. 360). The application attached to HBSR's email named only
>
>    Parkinson as an inventor. *Id.* at BRREV686418.

**Response:  Undisputed.**

58. With respect to ***the '462 Application***:

> a.   BlueRadios alleges HBSR wrongly "named Kopin as the sole assignee of the
>
>    '462 Application" to help Kopin "obtain ownership of" the application "to the
>
>    exclusion of" BlueRadios. D. 47 ¶¶ 235-36;

24

**Response: Undisputed.**

  b. On July 25, 2008, HBSR lawyer Gerald Kazanjian sent a letter to Choi,

    copied to BlueRadios' Tucker and Sample, asking (among other things) that

    the named inventors of the '462 Application (titled "Mobile Wireless Display

    for Accessing Data from a Host and Method for Controlling") sign an

    enclosed ███████████████████████████████

    ███████████████████ Hauptman Decl., Ex. 55 (Dep. Ex. 370,

    at HBSR_MA_016556-57). The form enclosed with the letter stated that the

    named inventors, including Tucker and Sample, have assigned their rights

    in the application to Kopin. Id. at HBSR_MA_016561-64;

**Response:  Undisputed that the language appears in the letter and unsigned
forms; the forms are unsigned.**

  c. Six days later, Tucker sent Jacobsen an email, copied to HBSR's Kazanjian,

    saying he had received a letter from HBSR and asking for a copy of the

    referenced patent application. Hauptman Decl., Ex. 28 (Dep. Ex. 369, at

    BRREV154025). Kazanjian replied, attaching filed copies of the application

    and its drawings. Id.;

**Response:  Undisputed.**

  d. Five months later, on December 22, 2008, Thibodeau sent Tucker a draft of

    the '627 Application. Hauptman Decl., Ex. 56 (Dep. Ex. 374). The text of the

    draft cited ████████████████████████████ ████

    ████████████ ████████████ Id. at BRREV670245 (emphasis added);

    and

**Response: Undisputed.**

e.  Seven days later, on December 29, 2008, Tucker sent Jacobsen an email quoting that same language and asking for a copy of the referenced application. Hauptman Decl., Ex. 57 (Dep. Ex. 365, at BRREV720483). Thibodeau replied, attaching copies of the '462 Application's text and drawings. Id.

**Response:  Undisputed.**

59. With respect to ***the '646 Application***:

a.  On March 27, 2009, after Tucker asked Jacobsen for filed copies of certain patent applications, Kazanjian sent Tucker, Jacobsen, and Parkinson filed copies of the '627 and '646 Applications. Hauptman Decl., Ex. 29 (Dep. Ex. 375). The Utility Patent Application Transmittal sheet for the '646 Application attached to Kazanjian's email named "Kopin Corporation"—and not BlueRadios—as the assignee of the patent application. *Id.* at BRREV692548.

**Response:  Disputed.  The form lists Kopin Corporation in the box that reads**

██████████████████████████████████

60. With respect to ***the '627 Application:***

a.  BlueRadios alleges HBSR wrongly named Kopin's Jacobsen as an inventor on, and omitted BlueRadios' Jones as an inventor from, the '627 Application, and named Jacobsen "to assist Kopin in attempting to obtain ownership rights in the '627 Application and any resulting patents, to the detriment of BlueRadios." D. 47 ¶¶ 222, 225.

**Response:  Undisputed.**

b.  On March 27, 2009, after Tucker asked Jacobsen for filed copies of certain patent applications, Kazanjian sent Tucker, Jacobsen, and Parkinson filed

copies of the '627 and '646 Applications. Hauptman Decl., Ex. 29 (Dep. Ex. 375). The '627 Application attached to Kazanjian's email identified BlueRadios' Kramer, Sample, and Tucker—***but not Jones***—and Kopin's Jacobsen as inventors. Id. at BRREV692523;

    c.   That same day, Tucker forwarded the '627 Application to Kramer, who admittedly knew upon receiving it that Jacobsen was named as an inventor and Jones was not. Hauptman Decl., Ex. 58 (Dep. Ex. 307); Hauptman Decl., Ex. 54 (Kramer Dep. Tr. 153:18-154:14 (July 21, 2023));

**Response:  Undisputed that the '627 Application lists Jacobsen, and not Jones, as an inventor.  Disputed as to whether BlueRadios knew whether that was appropriate at the time.  PL. Ex. 6 (Tucker Dep. 213:1-214:7); PL. Ex. 3 (Kramer Dep. 159:7-160:12); *see also* PSOF ¶ 37.**

    d.   On April 21, 2009, at Kopin's request, Kramer sent Choi an executed Declaration for Patent Application for the '627 Application. Hauptman Decl., Ex. 59 (Dep. Ex. 377). The declaration, which Kramer, Sample, and Tucker signed under penalty of fine or imprisonment for false statements, identified Kopin's Jacobsen as a joint inventor with the three BlueRadios inventors. Id. at BRREV613302-03; and

**Response:  Undisputed that Kramer sent Choi the executed declaration. Disputed that BlueRadios inventors attested to the accuracy of the inventors HBSR identified.  The form states** ██████████████████████████
████████████████████████████████████████████████████
████████████████████████

    e.  On June 26, 2009, Choi sent an assignment for the '627 Application to Kramer, Tucker, and Sample. Hauptman Decl., Ex. 60 (Dep. Ex. 164). Both

Choi's email and the attached assignment identified Jacobsen as a joint

inventor of the '627 Application. Id. at BRREV720847 (email referring to an

assignment "for a utility application filed on January 5, 2009 naming three

of you as inventors with Jeff Jacobsen"); id. at BRREV720853 (assignment

for the '627 Application identifying Kramer, Sample, and Tucker as co-

inventors with Jacobsen).

**Response:  Undisputed.**

61. On December 31, 2008, Kramer sent Tucker an email saying:



Hauptman Decl., Ex. 61 (Dep. Ex. 311, at BRREV523161 (emphasis added));

Hauptman Decl., Ex. 54 (Kramer Dep. Tr. 168:8-13 (July 21, 2023)) (agreeing that,

on December 31, 2008, he believed the omission of BlueRadios employees as

inventors was "sort of reckless"). He went on to say that the ████████████████

████████████████████████████████████ Hauptman Decl., Ex. 61

(Dep. Ex. 311, at BRREV523161).

**Response:  Undisputed.  *See* PSOF ¶¶ 5, 17-20 for omitted context.**

62. BlueRadios did not send HBSR a formal letter at that time. Hauptman Decl., Ex. 54

(Kramer Dep. Tr. 169:22-170:6 (July 21, 2023)); Hauptman Decl., Ex. 24 (Tucker

Dep. Tr. 170:5-173:14, 232:21-233:1 (July 21, 2023)). Instead, later that day, Tucker

sent Jacobsen (and not anyone at HBSR) an email requesting that he be added as an

28

inventor to a patent application that he identified using the HBSR docket number 0717.2095-000 (U.S. Provisional Application No. 61/072,223, the "'223 Application"), and that Sample be added as an inventor to the '090 Application. Hauptman Decl., Ex. 62 (Dep. Ex. 124).

**Response: Undisputed that Tucker e-mailed the Golden-i project manager, Jacobsen, who copied and pasted Tucker's e-mail and sent it to HBSR on January 2, 2009.  *See* PSOF ¶¶ 5, 17-20 for omitted context.**

63. On March 30, 2009, after Tucker asked Jacobsen for filed copies of certain patent applications, HBSR's Kazanjian sent Tucker a filed copy of the "0717.2095-000 provisional application," *i.e.*, the '223 Application. Hauptman Decl., Ex. 63 (Dep. Ex. 368). The application attached to Kazanjian's email named Jacobsen and Parkinson—***and not Tucker***—as inventors. *Id.* at BRREV692441.

**Response:  Disputed as irrelevant to the issues in Defendants' motion.  The '223 is a provisional patent application that would not be examined by the USPTO and could not result in a patent. DSOF, ¶ 42.a; *see also* PSOF ¶ 16.  It expired on March 28, 2008 without a non-provisional application claiming benefit to it.  PL. Ex. 21 (DEPO. Ex. 2 at Kopin_00209759).  It is not a basis for any of Plaintiff's claims.  *See generally*, Dkt. 47.**

64. BlueRadios did not tell HBSR after it received this copy of the '223 Application that Tucker should be added as an inventor. Hauptman Decl., Ex. 24 (Tucker Dep. Tr. 180:4-181:4 (July 21, 2023)).

**Response: See Response to immediately preceding SOF.**

65. BlueRadios cannot point to a specific instance of HBSR ever denying BlueRadios' requests for information in the 2007 to 2009 timeframe. Hauptman Decl., Ex. 17 (BlueRadios Dep. Tr. 188:15-25 (Nov. 28, 2023)).

**Response:  Undisputed.**

## VIII.   The BlueRadios/Kopin relationship breaks down, and BlueRadios stops communicating with HBSR, in mid-2009.

66. In July 2009, Kopin decided that BlueRadios would no longer be working on Golden-i. Hauptman Decl., Ex. 64 (Choi Dep. Tr.  621:5-9 (May 10, 2023)). In Kopin's view, "the technology that BlueRadios was supposed to develop and deliver did not work as promised," and "BlueRadios became less cooperative in helping Kopin to debug these issues." *Id.* at 592:17-593:1.

**Response:  Disputed (and irrelevant) as to Kopin's reasons for deciding not to work with BlueRadios. The technology BlueRadios delivered, namely Generation 2 PCBs worked. PL. Ex. 22 (DEPO. Ex. 340 at Kopin_00017228) (stating ██████ ████████████████████████████████████████ at over 2,000 demonstrations).  BlueRadios never stopped working on Golden-i.  It delivered the PCBs and stood ready to support Kopin on the project.  PL. Ex. 23 (BlueRadios Dep. 237:11-238:7).**

67. BlueRadios, for its part, sent Jacobsen an email in April 2009 expressing that it is ████████████████████████████████████████████ ████████████████████████████ Hauptman Decl., Ex. 65 (BR2052 23008, at 23008, 23012).

**Response: Undisputed.**

68. In July 2009, Kramer told John Fan (then Kopin's CEO) that  and

that he

Hauptman Decl., Ex. 66 (BRREV093420); *see also* Hauptman

Decl., Ex. 1 (Choi Dep. Tr. 13:21-14:2 (Mar. 30, 2023)).

**Response: Undisputed.**

69. BlueRadios' last direct communication with HBSR (a communication on which Kopin

was copied) occurred a month earlier, in June 2009. *See* Hauptman Decl., Ex. 27

(BRREV392446); *see also* Hauptman Decl., Ex. 78 (Pl.'s Second Am. & Suppl. Resps.

to Defs.' First Set of Interrogs., Ans. to Interrog. No. 7, at 8-36 (Oct. 25, 2023) (not

identifying any communication with HBSR after March 30, 2009 in response to

Defendants' interrogatory asking BlueRadios to state the basis for its allegation that

"BlueRadios believed [HBSR] was its attorneys for purposes of the Patent Work").

**Response: Undisputed.**

70. Almost six years would pass before BlueRadios again attempted to contact HBSR—

which it would eventually do through another patent attorney, James Klobucar. *See*

Hauptman Decl., Ex. 67 (Dep. Ex. 381 (May 13, 2015 letter from Klobucar to

HBSR)).

**Response: Undisputed. *See* PSOF ¶¶ 41-44 for omitted context.**

## IX.    In 2014, BlueRadios' patent counsel investigates Golden-i applications and then sends demand letters to HBSR as Kopin's counsel in 2015.

71. BlueRadios hired Klobucar as a contract patent attorney in 2011. Hauptman Decl.,

Ex. 68 (Klobucar Dep. Tr. 13:18-14:6 (Aug. 24, 2023)). In that capacity, Klobucar

prepared and filed patent applications and conducted patentability assessments for

BlueRadios. *Id*. at 14:11-15, 15:11-18.

**Response: Undisputed.**

72. Klobucar joined Gearhart Law, LLC (the "Gearhart Firm") two years later. *Id*. at

21:19-22:6. He took BlueRadios with him as a client and has represented BlueRadios

continuously ever since. *Id*. at 113:22-25.

**Response: Undisputed.**

73. In August 2014, Kramer contacted Kopin (but not HBSR) to say BlueRadios had

been approached about an acquisition of the company and asked about "the past IP."

Hauptman Decl. Ex. 69 (Dep. Ex. 156, at BRREV093448).

**Response: Undisputed.**

74. BlueRadios also turned to Klobucar (but not HBSR) for assistance:

**Response: Disputed.  BlueRadios turned to HBSR for assistance throughout 2007-
2009 and relied on HBSR to continue to prosecute the patents related to the
Golden-i project in BlueRadios' best interests after that time. PL. Ex. 7 (Plf.'s
Resp. Court-Ordered Interr., pp. 2-38); PL. Ex. 3 (Kramer Dep. 7/19/2023 89:3-10).**

a. On November 5, 2014, Klobucar billed BlueRadios for a discussion about

royalties. Hauptman Decl., Ex. 70 (Dep. Ex. 527, at BRvHBSR 0240);

**Response: Undisputed.**

b. A few days later, he billed to a matter titled "Golden-i" for an "[i]nitial

patent search" and "contract review." Id. at 0241;

**Response:  Undisputed that the billing entry occurred 9 days later, as reflected on
Ex. 70.**

    c.  Throughout the remainder of November, he and another lawyer at the
Gearhart Firm billed to that same matter for reviewing patents and patent
assignments, ███████████████████ reviewing ████████
████████████████ and █████████████████████ Id.;

**Response: Undisputed that Klobucar's billing entries include the quoted
language.**

    d.  The work that Klobcar was doing included research on issues relating to
inventorship and searches of publicly available patent databases for
various Golden-i patent applications that had been filed by HBSR and
published by the USPTO years before.[1] Hauptman Decl., Ex. 68 (Klobucar
Dep. Tr. 97:18-98:14, 184:6-185:5, 187:3-24, 189:25-190:8 (Aug. 24, 2023));
and

**Response:  Disputed.  Klobucar did not do any work, and was not asked to do any
work, prior to December 6, 2014 to evaluate, critique, or attempt to correct
anything Defendants had done, or failed to do.  By December 6, 2014, BlueRadios
had asked Klobucar to search for patents identifying certain individuals involved
in the Golden-i project for the purpose of making a request *to Kopin*.  By
December 6, 2014, Klobucar had merely performed that search, but had made *no***

---

[1] There is likely additional evidence that Klobucar was working to "correct" the allegedly
deficient patent applications in November 2014 and earlier, but BlueRadios has refused to
produce that evidence or answer questions about it, claiming privilege. E.g., Hauptman
Decl., Ex. 54 (Kramer Dep. Tr. 190:9-194:17 (July 21, 2023)). Defendants moved to compel
BlueRadios to produce that information because BlueRadios had put those communications
at issue in this lawsuit. D. 159. Magistrate Judge Levenson held a hearing on that motion
on December 21, 2023, and took the motion under advisement. D. 190. Defendants will file
a supplemental brief or move for leave to file a second motion for summary judgment if the
Court grants that motion and additional evidence comes to light showing that BlueRadios'
claims accrued before December 5, 2014.

**determinations whatsoever as to (i) whether any aspect of Defendants'
prosecution was flawed in any way or (ii) whether BlueRadios had been harmed
by anything Defendants had done or failed to do.  PL. Ex. 24 (Klobucar Dec., ¶¶ 1-
9).**

> f.  In conducting his review, Klobucar observed that the patent applications
>
> ████████████████████████████████████████ Id. at 96:19-
>
> 97:17. And, ████████████████████████████████████████████
>
> ██████████████████████████ *Id.* at 96:19-97:17.

**Response:  Disputed.  Defendants' quoted testimony relates to Klobucar's
statements in a letter he sent to HBSR on *October 28, 2015*, more than eleven
months after December 6, 2014. [2] PL. Ex. 25 (Klobucar Dep. 94:19-97:17 (citing Dep.
Ex. 529)); PL. Ex. 26 (Dep. Ex. 529).  Klobucar did not do any work, and was not
asked to do any work, prior to December 6, 2014 to evaluate, critique, or attempt
to correct anything Defendants had done, or failed to do, and had made *no*
determinations by December 6, 2014 as to (i) whether any aspect of Defendants'
prosecution was flawed in any way or (ii) whether BlueRadios had been harmed
by anything Defendants had done or failed to do.  PL. Ex. 24 (Klobucar Dec., ¶¶ 1-
9).**

75. The Gearhart Firm sent BlueRadios invoices dated December 3, 2014, and charging
    hourly fees for these services. Hauptman Decl., Ex. 70 (Dep. Ex. 527, at BRvHBSR
    0240-41). BlueRadios made payments towards the invoices. *Id.* at 0249 (noting

---

**[2] It is undisputed that BlueRadios and Defendants entered into a Tolling
Agreement dated effective December 5, 2017.  Ex. 33 (Tolling Agree. (Dec. 5, 2017));
Defs.' MSJ, p. 4.**

payment received for matter titled ██████████ ); *id.* at 0258 (noting payment

received for matter titled ████████ ).

**Response:  Undisputed that BlueRadios paid the Gearhart Firm as indicated.**

**Disputed as to Defendants' characterization of "these services," *see* Response to**

**DSOF 73.**

76. This investigatory work performed by Gearhart Law in November 2014 "ultimately

ended up in letters that [Klobucar] sent to Kopin or [HBSR]." Hauptman Decl., Ex.

68 (Klobucar Dep. Tr. 97:18-98:14 (Aug. 24, 2023)).

**Response:  Disputed as to Defendants' characterization of "investigatory work."**

**Klobucar did not do any work, and was not asked to do any work, prior to**

**December 6, 2014 to evaluate, critique, or attempt to correct anything Defendants**

**had done, or failed to do.  PL. Ex. 24 (Klobucar Dec., ¶¶ 1-9).**

77. In January 2015, Klobucar billed for drafting a ████████████████████

Hauptman Decl., Ex. 70 (Dep. Ex. 527, at BRvHBSR 0258), and ultimately sent that

demand letter and one other to HBSR as Kopin's counsel on May 13, 2015 and

October 28, 2015, respectively, Hauptman Decl., Ex. 67 (Dep. Ex. 381); Hauptman

Decl., Ex. 71 (Dep. Ex. 530).

**Response: Undisputed.**

78. Klobucar understood that HBSR represented Kopin and not BlueRadios, and he

referred to HBSR as ████████████ in his contemporaneous billing records.

Hauptman Decl., Ex. 70 (Dep. Ex. 527, at BRvHBSR 0283 (June 10, 2015 billing

entry)); Hauptman Decl., Ex. 68 (Klobucar Dep. Tr. 76:19-23, 81:8-19 (Aug. 24,

2023)).

**Response: Disputed. The quoted testimony does not address Klobucar's**

**understanding of HBSR's status as BlueRadios' counsel for the patent work they**

performed and not him.  Klobucar was not aware of the extent of the relationship between BlueRadios and HBSR with respect to the collaboration between BlueRadios and Kopin.  Ex. 25 (Klobucar Dep. 81:17-82:25).

79. In his letters, Klobucar set forth BlueRadios' accusations about the inventorship and ownership of certain patent applications and patents, including that, ███████ ███████████████████████████████████████████████████ and its belief that it was entitled to royalties for sales of Golden-i units. Hauptman Decl., Ex. 67 (Dep. Ex. 381, at HBSR_139621); Hauptman Decl., Ex. 71 (Dep. Ex. 530). He ended the letters by stating that BlueRadios ███████████████ and ████████ ██████████████ Hauptman Decl., Ex. 67 (Dep. Ex. 381, at HBSR_139622); Hauptman Decl., Ex. 71 (Dep. Ex. 530, at HBSR_000348).

**Response: Undisputed.**

80. BlueRadios made no allegation in Klobucar's demand letters that HBSR ever represented BlueRadios. *See generally* Hauptman Decl., Ex. 67 (Dep. Ex. 381); Hauptman Decl., Ex. 71 (Dep. Ex. 530); Hauptman Decl., Ex. 68 (Klobucar Dep. Tr. 192:4-9, 192:24-194:10, 194:24-195:10 (Aug. 24, 2023)).

**Response: Undisputed.  Klobucar was not aware of the extent of the relationship between BlueRadios and HBSR with respect to the collaboration between BlueRadios and Kopin.  Ex. 25 (Klobucar Dep. 81:17-82:25).**

81. On December 7, 2017, Klobucar filed a patent application naming BlueRadios and Kopin as co-applicants and listing both BlueRadios employees and Kopin's Jacobsen and Pombo as inventors. *See* Hauptman Decl., Ex. 72 (Dep. Ex. 546, at BR-JK-000021 (updated filing receipt mailed February 16, 2008)); Hauptman Decl., Ex. 68 (Klobucar Dep. Tr. 247:19-248:9 (Aug. 24, 2023)).

**Response: Undisputed.**

82. Klobucar did not represent Kopin in filing the application or in connection with anything else. Hauptman Decl., Ex. 68 (Klobucar Dep. Tr. 248:15-21 (Aug. 24, 2023)); *see also id.* at 111:3-22 (filing patent applications naming both a client's and a non-client's employees does not necessarily make Klobucar counsel for the non-client company). Nor did Klobucar represent Jacobsen, Pombo, or any other Kopin employee in filing the application. *Id.* at 246:18-12, 248:22-249:3.

**Response: Undisputed.**

83. BlueRadios sued Kopin in August 2016 in an action pending in the United States District Court for the District of Colorado. Hauptman Decl., Ex. 73 (Complaint in Colorado lawsuit).

**Response: Undisputed.**

84. BlueRadios' claims against Kopin in the Colorado lawsuit included claims premised on the Contract remaining in effect. Hauptman Decl., Ex. 79 (Pl.'s Mot. for Partial Summ. J. Regarding Def.'s Breach of Article IV of the Contract with Respect to $35,000 Monthly Retainer Payments, at court-stamped page 9, *BlueRadios, Inc. v. Kopin Corp.*, No. 16-cv-02052-JLK (April 10, 2019) (D. 182) ███████████████ ██████████████████████████████████████████████ ████████████████████████████████████ ███████ Hauptman Decl., Ex. 80 (Pl.'s Reply in Support of Mot. for Partial Summ. J. Regarding Def.'s Breach of Article IV of the Contract with Respect to $35,000 Monthly Retainer Payments, at court-stamped page 7, *BlueRadios, Inc. v. Kopin Corp.*, No. 16-cv-02052-JLK (June 28, 2019) (D. 215) ████████████████ ██████████████████████████████

**Response: Undisputed.**

85. BlueRadios' claims against Kopin also included a claim for breach of fiduciary duty. Hauptman Decl., Ex. 81 (Order on Def.'s Mot. for Partial Summ. J. & Pl.'s Mots. for Discovery Sanctions, at 1-2 (Aug. 3, 2022) (D. 382)). Having analyzed "twelve briefs and extensive exhibits," the Colorado court granted summary judgment in Kopin's favor on that claim, concluding that "Kopin owes no fiduciary duty to BlueRadios" as a matter of law and, "rather than creating 'a special relationship of trust,' the undisputed evidence portrays BlueRadios' agreement with Kopin to be the result of a standard business transaction." Hauptman Decl., Ex. 81 (Order on Def.'s Mot. for Partial Summ. J. & Pl.'s Mots. for Discovery Sanctions, at 30 (Aug. 3, 2022) (D. 382) (citation omitted)).

**Response:  Undisputed.**

86. BlueRadios moved to disqualify HBSR as Kopin's litigation counsel in the Colorado lawsuit, alleging for the first time that HBSR wasn't just Kopin's lawyers, but BlueRadios' lawyers too. Hauptman Decl., Ex. 82 (Pl.'s Mot. to Disqualify Def. Kopin Corp.'s Counsel and Request for Expedited Briefing, at 1, *BlueRadios, Inc. v. Kopin Corp.*, No. 16-cv-02052-JLK (Nov. 18, 2016) (D. 12)); *see also* ¶ 38, above (BlueRadios has not identified any communication in which it stated HBSR represented BlueRadios).

**Response: Undisputed that BlueRadios did not state explicitly "HBSR represents BlueRadios" or "HBSR is BlueRadios' counsel" or words to that effect until it became aware that HBSR intended to represent Kopin adverse to BlueRadios in a lawsuit regarding the patents which HBSR prosecuted on behalf of both Kopin and BlueRadios.**

87. BlueRadios is unable to identify when the alleged attorney-client relationship with HBSR began. Hauptman Decl., Ex. 14 (Kramer Dep. Tr. 160:11-14 (July 19, 2023)).

**Response: Disputed.  BlueRadios believes the attorney-client relationship formed at least at the time the Golden-i contract was formed in 2007. See PL. Ex. 3 (Kramer 7/19/2023 depo., 156: 7-16).**

88. BlueRadios entered into a tolling agreement with HBSR on December 5, 2017, Hauptman Decl., Ex. 74 (tolling agreement), and brought this lawsuit against HSBR in March 2021, D. 1 (Complaint and Jury Demand filed March 22, 2021).

**Response: Undisputed.**

89. BlueRadios' claims against Defendants are based on allegations that it had an attorney-client relationship with HBSR beginning in 2007 through "at least 2016," D. 47 ¶ 405.2, and that Defendants breached the standard of care and their duties to BlueRadios by not naming BlueRadios personnel as inventors on, or removing them from, various patent applications and failing to disclose to BlueRadios various actions HBSR took when prosecuting certain Golden-i patent applications.

**Response: Undisputed but incomplete.  See Dkt. 47 for full allegations**.

90. BlueRadios alleges that, from 2007 to 2016, it believed the scope of HBSR's representation of BlueRadios was "to represent both the company BlueRadios and the individual inventors" under the Contract. Hauptman Decl., Ex. 17 (BlueRadios Dep. Tr. 70:5-11, 71:15-72:2 (Nov. 28, 2023)).

**Response: Undisputed that BlueRadios believed that HBSR represented BlueRadios and its inventors. PL. Ex. 23 (BlueRadios Depo. 11/28/23, 70:24-71:9).**

X.    **Defendant Lawrence Cogswell has never communicated with any BlueRadios personnel and first obtained an ownership interest in Hamilton, Brook, Smith & Reynolds, P.C., in 2020.**

91. Cogswell first became an owner of Hamilton, Brook, Smith & Reynolds, P.C., on January 1, 2020. Hauptman Decl., Ex. 75 (Cogswell Dep. Tr. 39:16-40:1, 260:14-262:2 (July 26, 2023)).

**Response: Undisputed.**

92. Cogswell has never communicated with anyone at BlueRadios. *Id*. at 262:17-263:2. Moreover, in response to Defendants' interrogatory asking BlueRadios to state the basis for its allegation that "BlueRadios believed [HBSR] was its attorneys for purposes of the Patent Work," BlueRadios does not mention Cogswell, much less identify any communication with him. Hauptman Decl., Ex. 78 (Pl.'s Second Am. & Suppl. Resps. to Defs.' First Set of Interrogs., Ans. to Interrog. No. 7, at 8-36 (Oct. 25, 2023)).

**Response: Undisputed.**

## XI.    Defendant Joshua Matloff has never had an ownership interest in the law firm or communicated with anyone at BlueRadios.

93. In response to Defendants' interrogatory asking BlueRadios to state the basis for its allegation that "BlueRadios believed [HBSR] was its attorneys for purposes of the Patent Work," BlueRadios does not mention Matloff, much less identify any communication with him. Hauptman Decl., Ex. 78 (Pl.'s Second Am. & Suppl. Resps. to Defs.' First Set of Interrogs., Ans. to Interrog. No. 7, at 8-36 (Oct. 25, 2023)).

**Response: Undisputed.**

94. Josh Matloff never was a shareholder or owner of Hamilton, Brook, Smith & Reynolds, P.C. *See* Hauptman Decl., Ex. 83 (Matloff Dep. Tr. 21:8-10, 23:2-9 (June 30, 2023) (Matloff was hired as an associate and was an associate as of his June 30, 2023 deposition in this lawsuit)).

Response:  Undisputed.

## XII.    BlueRadios seeks as damages here the fees and costs incurred suing Kopin.

95. In this lawsuit, BlueRadios claims as damages the attorney's fees and costs it has incurred and will incur prosecuting its Colorado lawsuit against Kopin. Hauptman Decl., Ex. 78 (Pl.'s Second Am. & Suppl. Resps. to Defs.' First Set of Interrogs., Ans. to Interrog. No. 2, at 3 (Oct. 25, 2023)).

Response: Undisputed.

## XIII.    BlueRadios' experts' opinions relating to BlueRadios' alleged damages.

96. One of BlueRadios' standard-of-care experts, Bernard Chao, opines that HBSR should have filed patent applications directed to additional subject matter on BlueRadios' behalf. Hauptman Decl., Ex. 76 (Expert Report of Bernard Chao 26-30 ¶¶ 101-07). In particular, he lists ██████████████████ he attributes to BlueRadios that, in his view, HBSR should have sought to protect with patent applications. *Id.* at 27-29 ¶¶ 102-05.

**Response: Undisputed that Professor Chao opines that if HBSR had acted reasonably, it should have advised BlueRadios to consider filing additional patent applications, it should have considered filing additional patent applications, and it should have investigated whether other technologies should also be patented, as described in his ██████████████ Professor Chao opines that had HBSR acted reasonably, HBSR would have sought to protect BlueRadios' technology. Professor Chao opines that if HBSR had acted reasonably, it should have filed the applications with or shortly after the**

**BlueTooth Protocol Provision (the '177 Provisional Application) in January 2008. Haputman Decl., Ex. 76, para. 102-107.**

97. BlueRadios' damages expert, Gregory Campanella, ascribes a ██████████████ of $58.7 million to one of these technology tiers based on his conclusion that, had HBSR sought and obtained patent protection covering it, BlueRadios could require smartphone or auto manufacturers to license BlueRadios' IP and generate royalty revenue. Decl., Ex. 77 (Expert Report of Gregory Campanella ("Campanella Report") 82-85 § 12.3).

**Response: Undisputed except that the opinion is not dependent upon HBSR, as opposed to another patent lawyer, seeking and obtaining the patent protection.**

98. Campanella was told by BlueRadios' counsel to assume for purposes of preparing his analysis that BlueRadios terminated the Contract. Hauptman Decl., Ex. 19 (Campanella Dep. Tr. 70:24-71:15 (Dec. 19, 2023)).

**Response: Disputed as to ambiguity.  Campanella assumed the contract *would have been* terminated.  See PL. Ex. 27 (Campanella Depo., 70:24-72:13).**

99. Campanella admits that, if one were to remove from his opinions the "foundational assumptions" that BlueRadios terminated the Contract and renegotiated a better one, his "analysis would differ, and it would be limited." *Id.* at 83:18-22; *see also id.* at 131:23-132:14 (if the Contract were still in place, "we wouldn't be sitting here having this discussion" because of the $7.8 million cap). Moreover, "if the contract is in place, then the terms of the contract would – control." *Id.* 81:23-24.

**Response: The parenthetical following citation to 131:23-132:14 is inaccurate.  Mr. Campanella testified that *if* BlueRadios had the patent portfolio it should have**

**but for HBSR's conduct, then "we wouldn't be sitting here having this discussion."**

100. Campanella's damages model includes hypothetical licensing revenue from Golden-i that included micro-display technology. Hauptman Decl., Ex. 77 (Campanella Report 66-79).

**Response:  Undisputed that licensing revenue relating to micro-display technology is a portion of Mr. Campanella's analysis.**

101. But because he assumed the Contract was terminated and renegotiated, Campanella made no attempt to quantify the portions of the claimed damages relating to micro-display versus non-micro-display applications. Hauptman Decl., Ex. 19 (Campanella Dep. Tr. 87:10-24 (Dec. 19, 2023)).

**Response: Disputed.  Mr. Campanella's report distinguishes between four distinct tiers, which are additive, only some of which analyze microdisplay applications. Ex. 28 (Campanella Decl., Ex. Campanella A, pp. 5-6, 25-88).**

**II)     PLAINTIFF'S STATEMENT OF SEPARATE DISPUTED MATERIAL FACTS**

1.   Before entering into the June 2007 contract with Kopin, BlueRadios had not attempted to patent anything and did not know much about patents at the time.  PL. Ex. 3 (Kramer Depo., Vol. 2, at 210:12-15); PL. Ex. 6 (Tucker Depo. 45:22-46:1; 125:13-24).

2.   Kramer is an engineer with a degree in electrical engineering, an executive MBA, and a doctorate in production operations management. PL. Ex. 3 (Kramer Depo., Vol. 1, at 13:19-14:17).  Kramer has no legal education beyond one course called "Law for Engineers" in connection with his undergraduate studies.  PL. Ex. 3 (Kramer Depo., Vol. 1at 15:5-10).  In 2006 and 2007, Kramer knew very little about

the patent prosecution process. PL. Ex. 3 (Kramer Depo., Vol. 2, at 211:19-25).
Before speaking with Jacobsen and HBSR, Kramer did not have any understanding
of how long the patent prosecution took.  After speaking with Jacobsen and
Thibodeau and Cass, Kramer obtained a better idea of the process, namely that it
was a long and tedious one that involved several iterations of changes to patent
applications that would take several years.  PL. Ex. 3 (Kramer Depo., Vol. 2, at
294:23-295:10).

3.   Tucker is an engineer with a degree in electrical and electronic engineering and
     training in circuit design and programming.  PL. Ex. 6 (Tucker Depo., at 22:22-24:8).
     Tucker has no legal education or training beyond one course on torts, which "he still
     do[esn't] understand," as part of his undergraduate studies.  PL. Ex. 6 (Tucker
     Depo., at 25:5-17.  Tucker had only a vague understanding of patents until 2018.
     PL. Ex. 6 (Tucker Depo., at 25:18-25).

4.   Before BlueRadios began working with Kopin, Tucker had been involved in one
     patent application that he had only reviewed from a technical perspective, and
     Tucker did not obtain any understanding of the patent prosecution process through
     his technical review.  PL. Ex. 6 (Tucker Depo., at 29:21-31:19).  While working with
     Kopin and HBSR in relation to the Golden-i project, Tucker did not understand the
     difference between a provisional patent application and a filed patent application "or
     anything," and did not have "a good basis of the process." PL. Ex. 6 (Tucker Depo., at
     101:14-21; *see also* 241:4-17).

5.   Jacobsen served as the project manager for the Golden-i project.  PL. Ex. 1 (Jacobson
     Depo., Volumes 1 through 3, 14:3-23); PL. Ex. 6 (Tucker Depo., at 14:21-15:1).  In
     that role, Jacobsen wanted to be involved in coordinating all activity, acted as a
     conduit for information from the development team to HBSR, and acted as the point

person for coordination between the technical teams at BlueRadios and Kopin and HBSR.  PL. Ex. 11 (Jacobsen Depo., Vol.3, at 331:20-334:11); PL. Ex. 6 (Tucker Depo., at 144:5-145:10); PL. Ex. 3 (Kramer Depo., Vol. 2, at 149:19-150:2; 277:3-19; 286:4-13).

6.    BlueRadios relied on HBSR to prepare the patent applications relating to the Golden-i project.  PL. Ex. 3 (Kramer Depo., Vol. 2 at 289:15-290:5)

7.    "Claim" is a technical term of art within patent law.  PL. Ex. 15 (Prof. Hricik Decl., Ex. A, at ¶ 41).  Kramer and Tucker did not understand what that term of art meant at the time HBSR filed the patent applications subject to this dispute.  PL. Ex. 3 (Kramer Depo., Vol. 2, at 291:20-292:1); PL. Ex. 6 (Tucker Depo., at 242:14-243:1); PL. Ex. 34 (Kramer Decl., at  ¶ 4); PL. Ex. 35 (Tucker Decl., at ¶ 3).

8.    HBSR decided which claims to include in any particular patent application relating to the Golden-i project.  PL. Ex. 3 (Kramer Depo., Vol. 2, 292:2-6).

9.    Inventorship is a legal concept within patent law. PL. Ex. 16 (Prof. Tu Decl., Ex. Tu A, ¶ 4.iv (citing 37 C.F.R. § 1.9(d)(1))); *see also* PL. Ex. 15 (Prof. Hricik Decl., Ex. A, at  ¶¶ 45-56). BlueRadios did not decide which inventors to name on any patent application HBSR filed and did not know whether the individuals named on any patent applications HBSR filed were inventors.  PL. Ex. 3 (Kramer Depo., Vol. 2, at 159:7-160:2; 292:7-23).

10.   Kramer did not, and does not, understand what type of a contribution a person has to make under patent law to be named as an inventor on a patent.  PL. Ex. 29 (Kramer Depo. 9/6/2018, 330:11-331:21); PL. Ex. 34 (Kramer Decl., at ¶ 4)

11.   Tucker "had no idea" about the determination of inventorship in the 2006 to 2009, timeframe and, even when he did ask HBSR what inventorship meant, he still did not understand.  PL. Ex. 6 (Tucker Depo. 241:4-242:7).  Tucker also had no

understanding of the process for correcting inventorship.  PL. Ex. 6 (Tucker Depo. 242:14-243:1); PL. Ex. 35 (Tucker Decl., at ¶ 3).

12.  BlueRadios and Kopin relied on HBSR to determine who the proper inventors should be on a patent application.  PL. Ex. 3 (Kramer Depo., Vol. 2, at 159:7-160:2; 292:7-23); PL. Ex. 6 (Tucker Depo., at 236:11-239:3; 242:14-244:2); PL. Ex. 11 (Jacobsen Depo., Vol. 3, 12/1/23 at 331:3-18); PL. Ex. 34 (Kramer Decl., at ¶ 4); PL. Ex. 35 (Tucker Decl., at ¶ 3).

13.  Tucker did not, and does not, understand what it means to assign a patent application to a proper entity and did not know what it meant when an application identified an entity as the assignee.  PL. Ex. 6 (Tucker Depo., at 102:17-103:14; 187:8-10; 201:16-21); PL. Ex. 35 (Tucker Decl., at ¶ 3).

### The '090 Provisional Application

14.  Thibodeau filed U.S. Provisional Application 61/010,090, bearing HBSR docket number 0717.2083-000 (the "'090 Provisional"), on January 4, 2008, and named Parkinson as the only inventor.  PL. Ex. 36 (Depo. Ex. 45) at p. 1).

15.  One of the claims in the '090 Provisional stated: "The device of claim 1 wherein the wireless interface is a Bluetooth$^{TM}$ physical layer with a Bluetooth$^{TM}$ proxy to implements a packet switching gateway."

16.  Provisional applications are not examined and do not issue as patents.  PL. Ex. 37 (Wakimura Depo. at 47:3-13).  Rather, they serve as place holders for non-provisional applications because provisional applications allow a later non-provisional application to claim priority from the provisional application. PL. Ex. 38 (Prof. Chao Decl., Ex. A, at ¶ 9).  To claim the benefit of a provisional application, the non-provisional patent application must be filed within twelve months of the

filing of the provisional application.  PL. Ex. 15 (Prof. Hricik Decl., Ex. A, at ¶¶ 73-74).  Thus, a provisional application expires at the end of a year, automatically, regardless of whether a non-provisional application is filed that claims priority to the provisional application.  PL. Ex. 39 (Thibodeau Depo., at 95:13-96:22).

### Tucker Provides Information to HBSR re: BlueRadios Role in Developing the "Bluetooth Proxy"

17.  On December 31, 2008, Tucker e-mailed Jacobsen about, *inter alia*, the '090 Provisional, stating that he believed Sample should be added as an inventor to the '090 Provisional.  Mr. Tucker stated, among other things, that ███████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████  PL. Ex. 40 (Depo. Ex. 124 at BRREV166456).  Tucker and Kramer discussed, and e-mailed about, the information Tucker sent to Jacobsen.  PL. Ex. 6 (Tucker Depo., at 257:9-259:9); *see also* Defs.' SOF ¶ 60.

18.  On January 2, 2009, Jacobsen copied and pasted the text from Tucker's December 31, 2008, e-mail and sent it to Kazanjian at HBSR, blind copying Tucker.  PL. Ex. 41 (Depo. Ex. 126 at BRREV166657).  At that point, Tucker believed that HBSR would use the information appropriately and did not believe there was any more he could do to address the issues he raised in his December 31, 2008, e-mail.  PL. Ex. 6 (Tucker Depo., at 257:9-259:9)

19.  The '090 Provisional was ██████████████████ from the date of Jacobsen's January 2, 2009, e-mail to Kazanjian. PL. Ex. 42 (HBSR (Thibodeau) 30(b)(6) Depo., 11/16/2023, at 185:2-186:4).

20.  Kazanjian forwarded Jacobsen's January 2, 2009, e-mail to Thibodeau, stating, ████ ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████     PL. Ex. 43 (Depo. Ex. 56, at

HBSR_008713).  No one at HBSR followed up with Tucker or Sample regarding any

aspect of the text of Jacobsen's January 2, 2009, e-mail.  PL. Ex. 6 (Tucker Depo., at

169:6-170:18).

### The '462 Application

21.  As filed on May 14, 2008, non-provisional U.S. Patent Application 12/152,462

bearing HBSR docket number 0717.2074-001 ("the '462 Application") named

Jacobsen, Pombo, Parkinson, Tucker, and Sample as inventors.  The '462

Application claims the benefit of, inter alia, US Provisional Application No.

61/010,177, filed January 4, 2008, U.S. Provisional Application No. 61/010,090, filed

January 4, 2008.  PL. Ex. 44 ('462 Application, at BRvHBSR 3779).

22.  Claim 4 of the '462 Application, as filed, states: "The device of Claim 1 wherein the

wireless interface is a Bluetooth physical layer with a Bluetooth proxy to implement

a packet switching gateway."  PL. Ex. 44 ('462 Application, at BRvHBSR 3812).  This

language represents BlueRadios' inventions. PL. Ex.34 (Kramer Decl., at ¶ 17).

23.  On November 21, 2008, Kazanjian sent Tucker a letter stating that Tucker and

Sample were named as inventors on the '462 Application and requested that Tucker

and Sample execute a declaration as such. PL. Ex. 45 (Depo. Ex. 49 at

HBSR_027705).  Tucker signed the declaration and sent it to HBSR, which received

it on December 24, 2008.  PL. Ex. 46 (Depo. Ex. 47, at HBSR_028151).  On January

8, 2009, Kazanjian filed declarations signed by Pombo, Jacobsen, and Parkinson.

PL. Ex 44 (Repl. to Notice to File Missing Parts of Application at BRvHBSR_3754 to

3760).  However, Kazanjian did not file the declaration signed by Tucker.  *See id*.  No

one at HBSR told Tucker that HBSR did not file the declaration he signed.  PL. Ex. 35 (Tucker Decl., at ¶ 4).

24.  On March 6, 2009, Kazanjian filed an amendment to the '462 Application cancelling the '462 Application's claim of benefit to the '177 Provisional Application, and stated to the USPTO that, in view of that amendment, the '462 Application should only name Jacobsen, Parkinson, and Pombo as inventors.  PL. Ex. 44 (Prelim. Amend. at BRvHBSR_3739 to 3741).  No one told BlueRadios that Tucker and Sample had been removed as inventors from the '462 Application.  34 (Kramer Decl., at ¶ 6); PL. Ex.35 (Tucker Decl., at ¶ 5).

25.  The '462 Application did not issue as U.S. Patent 9,116,340 until August 25, 2015. PL. Ex. 47 ('340 Patent at BRvHBSR 3093).

26.  Claim 4 of the '340 Patent states: "The device of Claim 1 wherein the wireless interface is a Bluetooth physical layer with a Bluetooth proxy to implement a packet switching gateway."  PL. Ex. 47 ('340 Patent at BRvHBSR 6545).

### *The '646 Application*

27.  "A non-provisional application is, in lay terms, more of what one thinks of when one says, 'I have a patent application' . . . it will eventually be examined" and "through that examination process, the ability to eventually be issued or granted as a patent." PL. Ex. 37 (Wakimura Depo. 47:3-13).

28.  As filed on January 5, 2009, non-provisional U.S. Patent Application 12/348,646 bearing HBSR docket number 0717.2083-002 (the "'646 Application") named Parkinson, Tucker, Sample, and Jacobsen as inventors.  PL. Ex. 48 ('646 Application at BRvHBSR 0803). The '646 Application claimed the benefit of _only_ the '090 Provisional Application._PL. Ex. 48 ('646 Application at BRvHBSR 0803).

29.  Claim 4 of the '646 Application, as filed, states: "The device of Claim 1 wherein the wireless communications interface is a Bluetooth physical layer with a Bluetooth proxy to implement a packet switching gateway."  PL. Ex. 48 ('646 Application at BRvHBSR 0823).

30.  On March 27, 2009, Kazanjian e-mailed Tucker the as-filed version of the '646 Application, which named Tucker as an inventor.  PL. Ex. 49 (E-mail at BRREV 692519).

31.  On June 9, 2009, Kazanjian filed declarations signed by Parkinson, Tucker, Sample, and Jacobsen.  PL. Ex. 48 (Repl. to Notice to File Missing Parts of Application at BRvHBSR_0769 to 787).

32.  On September 6, 2012, Matloff filed a Request for Correction/Amendment of Inventorship Under 37 CFR § 1.48(b), requesting that the USPTO amend the application "to delete . . . Tucker and . . . Sample as inventors."  PL. Ex. 48 (Req. for Correct./Amend. of Inventorship at BRvHBSR0688 to 689).  No one told BlueRadios HBSR was deleting Tucker as inventor from the '646 Application. PL. Ex. 34 (Kramer Decl., at ¶ 7); PL. Ex.35 (Tucker Decl., at ¶ 5).

33.  The '646 Application did not issue as U.S. Patent 8,909,296 until December 9, 2014.  PL. Ex. 50 ('296 Patent at BRvHBSR 0419).

34.  Claim 4 of the '296 Patent states: "The device of claim 1 wherein the wireless communications interface is WiFi, WiMax, Cellular, Satellite or other wireless network physical layer with an appropriate proxy to implement a packet switching gateway."  PL. Ex. 50 ('296 Patent at BRvHBSR 6518).

### The '627 Application

35.  On January 5, 2009, Thibodeau filed non-provisional U.S. Patent Application

12/348,627 bearing HBSR docket number 0717.2082-001 (the "'627 Application), naming Kramer, Sample, Tucker, and Jacobsen as inventors.  PL. Ex.  ('627 Application at BRvHBSR27198, 27221).

36.  The '627 Application claimed the benefit of the '177 provisional, which named Kramer, Sample, Tucker, and Jones as inventors, but was also a continuation-in-part of the '462 Application.  PL. Ex. 51 ('627 Application at BRvHBSR27198).

37.  Tucker did not know whether there was a good reason for taking Jones off of the '627 Application.  PL. Ex. 6 (Tucker Depo., 213:1-214:7).  Kramer did not know whether it was proper to name Jacobsen as an inventor on the '627 Application.  PL. Ex. 3 (Kramer Depo., Vol. 2, at 159:7-160:12).

38.  The '627 Application issued as U.S. Patent 8,355,671 on January 15, 2013.  ('671 Patent at BRvHBSR27054).

39.  During the Colorado Lawsuit, HBSR produced handwritten notes that stated Jacobsen ████████████████████ to the '627 Application and that Jacobsen ████████████████████ PL. Ex. 52 (Depo. Ex. 39 at HBSR_022679).  At no point prior to HBSR's production of those notes did anyone at HBSR inform BlueRadios that Jacobsen had added himself as inventor to, or that he may not be an inventor of, the '627 Application.  PL. Ex. 34 (Kramer Decl., at ¶ 5); PL. Ex. 35 (Tucker Decl., at ¶ 6).

40.  From 2007 through 2015, BlueRadios did not work with any law firm other than HBSR to protect BlueRadios' intellectual property relating to the Golden-i project.  PL. Ex. 3 (Kramer Depo., Vol. 2, at 322:5-11).

41.  In mid-2014, Google approached BlueRadios about a possible acquisition.  PL. Ex. 3 (Kramer Depo., Vol. 2, at 295:19-296:24).  As a result, Kramer communicated with Jacobsen to get an update on the progress of the Golden-i project and to get a better

understanding of the intellectual property protection surrounding it.  PL. Ex. 53
(Depo. Ex. 156 at BRREV093448).  Jacobsen directed Kramer to Hong Choi, Kopin's
Chief Technology Officer, who never responded to Kramer's inquires.  PL. Ex. 3
(Kramer Depo., Vol. 2, at 297:9-11).

42.    Kramer then approached Klobucar for the purpose of attempting to obtain more
information from Kopin about the status of the Golden-i project.  PL. Ex. 34 (Kramer
Decl., at ¶ 9).  Kramer did <u>not</u> engage Klobucar for the purposes of assessing HBSR's
work at any time prior to December 5, 2014.  PL. Ex. 34 (Kramer Decl., at ¶ 10).

43.    Indeed, Kramer communicated with Gearhart Law in late 2014 regarding concerns
relating to BlueRadios' contract with Kopin, but did not have concerns with
inventorship at that time.  PL. Ex. 3 (Kramer Depo., Vol. 2, at 174:21-175:13); *see
also* PL. Ex. 24 (Klobucar Dec., at  ¶¶ 3-5, 8-9).  On November 14, 2014, Kramer e-
mailed Klobucar about some of the background behind, and the contract related to,
the Golden-i project, but mentioned nothing about HBSR.  PL. Ex. 24 (Klobucar
Decl., at ¶ 3).  Kramer asked Klobucar to review the information for the purposes of
making a request of Kopin and, as part of that review, asked Klobucar to "search for
patents fil[]ed under either: John Sample, Wilfred Tucker, Mark Kramer,
Christopher Parkinson, or Jeffrey Jacobsen at Kopin."  PL. Ex. 24 (Klobucar Decl.,
at ¶ 3); PL. Ex. 34 (Kramer Decl., at ¶ 9).

44.    At no time before December 6, 2014 had Kramer asked Klobucar to evaluate,
critique, or attempt to correct anything HBSR had done, or failed to do.  Klobucar
had taken no steps by December 6, 2014 aimed at evaluating, critiquing, or
attempting to correct anything HBSR had done, or failed to do.  And, by December 6,
2014, Klobucar had not made any determinations as to whether BlueRadios had

sustained any sort of injury as a result of anything HBSR did, or did not, do.  PL. Ex. 24 (Klobucar Decl., at ¶¶ 4, 8, 9); PL. Ex. 34 (Kramer Decl., at ¶¶ 9, 10).

45.  Before December 6, 2014, BlueRadios did not know that it may have been harmed by anything HBSR had done or failed to do.  At that time, BlueRadios was only concerned about obtaining additional information from Kopin with respect to the Golden-i project and Kramer directed Klobucar accordingly.  PL. Ex. 34 (Kramer Decl., at ¶ 10).

46.  Klobucar sent HBSR a letter dated May 13, 2015, regarding questions he had identified about the inventorship stated in the '646 Application (Pub. No. 2009,/0251409), the '462 Application (Pub. No. 2009,/0117890), and non-provisional U.S. Patent Application 14/466,333 (Pub. No. 2014/0368412) (Depo. Ex. 379 the "'333 Application") and asked HBSR to conduct a thorough investigation to ascertain the correct inventorship of those patents and patent applications.  PL. Ex. 54 (Depo. Ex.81 at HBSR_139619, 139621).  BlueRadios did not learn about the questions Klobucar had identified until January 2015.  PL. Ex. 34 (Kramer Decl., at ¶ 11).

47.  Defendant Lawrence Cogswell, III conducted the investigation Klobucar requested in his May 13, 2015, letter.  PL. Ex. 55 (Cogswell Depo. 183:3-184:1, 253:3-258:16). On July 20, 2015, John Hamann of HBSR responded to Klobucar, stating: ███████

████████████████████████████████████████████████████████████

████████████████████████████ but asked Klobucar to provide further information about the applications and patents at issue.  PL. Ex. 26 (Depo. Ex. 529, at HBSR_000340); PL. Ex. 34 Kramer Decl., ¶ 11).

48.  On October 28, 2015, Klobucar provided additional information to HBSR regarding BlueRadios' contributions to the '646 Application, the '462 Application, and the '333

Application, as well as the assignment of the '671 Patent.  PL. Ex. 56 (DEPO. EX. 530)

49.  On January 21, 2016, Cogswell responded to Klobucar's letter of October 28, 2015, stating that ████████████████████████████████████ ████████████████████████████████████████████ Cogswell also stated that HBSR ████████████ the '671 Patent ██████████████████ ████████████ PL. Ex. 57 (Cogswell Ltr. BR-JK-002109 to 002110); PL. Ex. 34 (Kramer Decl., at ¶ 11).

50.  BlueRadios did not learn that HBSR was a cause of its injuries resulting from HBSR's prosecution of patent applications related to the Golden-i project until BlueRadios obtained discovery about Kopin's communications with HBSR, and certain portions of HBSR's file, in discovery in the Colorado Litigation, which began in the spring of 2017.  PL. Ex. 34 (Kramer Decl., at ¶ 12).

51.  BlueRadios believed that HBSR continued to represent its interests in an attorney-client relationship in connection with the prosecution of patent applications relating to the Golden-i project at least until HBSR entered its appearance on behalf of Kopin when BlueRadios sued Kopin in August 2016.  PL. Ex. 3 (Kramer Depo., Vol. 1, at 189:3-10).

52.  On December 12, 2016, Cogswell filed Kopin's Opposition to BlueRadios' Motion to Disqualify Counsel in the Colorado Litigation.  PL. Ex. 58 (Depo. Ex. 93 at pp. 1, 20).

53.  On January 24, 2017, the Hon. John L. Kane granted BlueRadios' motion to disqualify HBSR from representing Kopin in the Colorado Litigation, finding, *inter alia*, "HBSR was completely aware that it was acting as an attorney for both" BlueRadios and Kopin "in so far as the preparation, filing and perfecting of rights in the patent applications was concerned."  PL. Ex. 59 (Depo. Ex. 232 at p. 4).

54. By appearing on behalf of Kopin in the Colorado Litigation and forcing BlueRadios to seek HBSR's disqualification, Cogswell violated the standard of care. PL. Ex 15 (Prof. Hricik Decl., Ex. A, at ¶¶ 599-603).

55. On December 13, 2018, HBSR filed with the USPTO a Request for Certificate of Correction regarding the '340 Patent (issued from the '462 Application) to add Tucker and Sample as inventors pursuant to a November 28, 2018, Order issued by the United States District Court for the District of Colorado. PL. Ex. 122 ((Judge Kane's Order and Requests for Correction filed with the USPTO).

56. There are seven figures that are repeatedly found in Golden-i patent applications or issued patents that will be discussed below. Those figures, found at Exhibit 60, are as follow:

    a. The "Bubble Figure"

    b. The "Remote Control Figure"

    c. The "Internal Components Schematic"

    d. The "Critical Hardware Figure"

    e. The "Flow Chart Figure"

    f. The "Voice and Head Tracking Command Figure," and

    g. The "Solar Heating Figures" (figures A and B).

Each figure (except the Solar Heating Figures) represents BlueRadios' technology. PL. Ex. 34, (Kramer Decl., at ¶ 21). The Solar Heating Figures represent technology that Mark Kramer created when designing a home and have nothing to do with the Golden-i Project other than Defendants included the figures in several Golden-i patent applications. *Id.*, at ¶ 22.

***Defendants knew BlueRadios had invented wireless video streaming technology***

*foundational to the Golden-i Project before Kopin and BlueRadios signed the joint development agreement and that Kopin was entering into the joint development agreement because of BlueRadios' pre-existing technology.*

57.   In the fall of 2006 or early 2007 – this date is disputed – Kopin Corporation employee Jeffrey Jacobsen ("Jacobsen"), the project manager for what was to become the "Golden-i Project," approached BlueRadios' CEO and co-founder, Mark Kramer ("Kramer") to learn about BlueRadios' capabilities with wireless video streaming technology that Kopin needed to develop a proposed head-mounted computer with a monocular display that would come to be called the "Golden-i". *See* PL. Ex. 6 (Tucker Dep., at p. 82:13 -83:23) (believing it had been in late 2006); PL. Ex. 3 (Kramer Depo., Vol. 1, at p. 72:1-14; *Id.*, Vol. 2 at 199:9-202:1).

58. Jacobsen contacted Kramer because he was interested in BlueRadios' technology. Jacobsen because he wanted the new head-mounted computer to be able to wirelessly stream   video to the monocular display from other devices, like a laptop computer. Jacobsen explained to Kramer that Kopin had little to no expertise in wireless technology.  *Id.*

59. In fall of 2006, Jacobsen also contacted Defendant HBSR about patenting the new technology that would eventually come to be known as "Golden-i." PL. Ex. 61 (Depo. Ex. 115).

60. Defendant Scott Pierce ("Pierce"), an HBSR shareholder, member of the executive committee, and the "responsible attorney" in charge of Kopin's patent portfolio, asked fellow shareholder, Defendant David Thibodeau ("Thibodeau") and associate lawyer Jean-Paul "JP" Cass ("Cass") to handle patent prosecution for the new technology. PL. Ex.61 (Depo. Ex. 115); PL. Ex. 62 (Cass Depo., 7/31/2023, 298:7-21).

61. In late December 2006, Mr. Cass met with Jacobsen and drew figures based on conversations with Mr. Jacobsen and later drafted an application. *E.g.,* PL. Ex. 62 (Cass Depo., 179:22 – 190:18; PL. Ex. 63 (Depo. Ex. 88).

62. Cass began preparing a provisional patent application. PL. Ex. 62 (Cass Depo., at 323:12-324:8; 330:14-332). This became the '270 Provisional Application, discussed below.

63. On January 10, 2007, Jacobsen wrote to Cass and stated that he did not want to slow down the filing of that application but after it was filed, ███████████████████ ██████████████████ ██████████████████ ███████ PL. Ex. 62 (Cass Depo., 325:12-326:8) (emphasis added).  Jacobsen told Cass he was preparing a Power Point slide deck demonstrating the wireless remote control features.  Ex. 62) (Cass Depo, 328:5-329:8).

64. On January 11, 2007, Jacobsen created a Power Point slide deck that, contains, among other things, a BlueRadios ████████████ (aka "BOM"):



PL. Ex.64 (Depo. Ex. 10); (Kramer Decl., at ¶ 23).

65. Jacobsen's January 11. 2007 PowerPoint deck also contains what is known as the "Bubble Figure." *Id.*



66. The Bubble Figure contains the notation ▮▮▮▮▮▮▮▮ indicating the wireless connection between the wireless monocular device and the hosts systems that is at the heart of the Golden-i technology. PL. Ex. 64 (Depo. Ex. 10), at HBSR_022633 (emphasis added).

67. Jacobsen's January 11, 2007, PowerPoint slide deck also states at page HBSAR_022642 that Bluetooth 2.0 – 3.0 is ▮▮▮▮▮▮▮▮



PL. Ex.64 (Depo. Ex. 10, at HBSR_022632) (emphasis added).

68. Defendants received a copy of Jacobsen's PowerPoint slide deck. *See, generally,* bates labeling on PL. Ex. 65 (Depo Ex. 11, pages HBSR_022622 to HBSR_022656), showing that Defendants produced the document.

69. The day after Jacobsen created his PowerPoint slide deck, on January 12, 2007, Cass filed what became U.S. Provisional Application No. 60/880,270 titled "Monocular Display Device." ("the '270 Provisional Application"). PL. Ex. 66 (Depo. Ex. 7); PL. Ex. 67 (Depo. Ex. 76; PL. Ex. 62 (Cass Depo., at 332-336). The '270 Provisional Application identified Jacobsen and Kopin employee Steven Pombo ("Pombo") as inventors. While the '270 Provisional Application contains many figures it does not contain a figure similar to the Bubble Figure and no claim mentions Bluetooth, though the

specification does mention using Bluetooth to control other devices. PL. Ex. 66 (Depo. Ex. 7, pp. 41-78).

70. On February 14, 2007, BlueRadios and Kopin enter into a Non-Disclosure Agreement and BlueRadios' began sharing information about its technology with Kopin.  PL. Ex. 68.

71. On February 22 and 23, 2007, Cass conferred with Pierce about a draft application and worked on drafting it.  PL. Ex. 62 (Cass Depo., at 78:20 – 80:22;  88:10 – 89:8); PL. Ex. 79 (HBSR Invoices at HBSR_MA_108652). This is the first mention of "Bluetooth" in the HBSR invoices. *Id.*

72. BlueRadios  and Kopin met in Colorado on February 27, 2007, discuss BlueRadios' technology and explore working together. PL. Ex. 65 (Depo. Ex. 11); PL. Ex. 69 (Depo. Ex. 50). BlueRadios demonstrated its ability to wirelessly streaming video. *Id.*

73. In the winter and spring of 2007, Kopin and BlueRadios began negotiating an agreement to jointly develop the new Golden-i technology. PL. Ex. 4 (Jacobsen Depo., Vol. 1, 35:23-38:19; 44:8-46:18; 53:23-58:19; 62:5-10; 78:9-21; *Id.*, Vol. III, 334:12-339:17):  PL. Ex. 3 (Kramer Depo., Vol.1, 99:5-24; 100:7-17; *Id.*, Vol. 2, 264:5-15).

74. On March 14, 2007, Kopin's founder and CEO, John Fan ("Dr. Fan"), met with lawyers at HBSR and informed them that Jacobsen's Golden-i ███████████████████ ████████████████████████████████████████████████ PL. Ex. 2 (Depo. Ex. 12); PL. Ex.70 (Depo. Ex. 144).

75. In Dr. Fan's March 14, 2007, email (addressed to Jacobsen, he discussed the meeting with HBSR, and he also wrote the █████████████████████████████ ████████████████ because they █████████████ and doing so █████████ █████████████ and explained that ████████████████████████████ ████████████████ *Id.* Dr. Fan also stated that this would be the ████████

 and while Kopin's ████████████████████████ he wanted ███

████████ *Id.* Dr. Fan also said to Jacobsen, █████████████████████████

████████████████████████████████████████████████████████ *Id.*

76. On April 10, 2007, BlueRadios and Kopin personnel met at Kopin's offices in Taunton,
    Massachusetts, for a ██████████████████████ Kopin's internal
    memorandum summarizing the meeting reflects that BlueRadios demonstrated the
    feasibility of ██████████████████ ████████████ PL. Ex.71 (Depo.
    Ex. 15 at BREREV093417-18) (emphasis added); PL. Ex 39 (Thibodeau Depo., 223:16 -
    224:16).

77. The next day, on April 11, 2007, Thibodeau and Cass met with Jacobsen at Kopin's
    headquarters in Westborough, Massachusetts. PL. Ex. 72 (Depo. Ex. 14); PL. Ex.79
    (HBSR Invoices at HBSR_MA108747-48).

78. Cass's billing entry for April 11, 2007, states that Cass conferred with Thibodeau
    ██████████████████████████████ to the Golden-i Monocular Display
    Device. *Id.* at HBSRMA108750. This is the first mention of "streaming video" in
    HBSR's invoices. *Id.*

79. On April 12, 2007, Cass again conferred with Thibodeau about the call with
    BlueRadios and conferred with Pierce and Thibodeau regarding ████████████
    ████████████████████ and next steps. *Id.* at HBSR_MA_0108748. This is the first
    mention of BlueRadios in HBSR's invoices. *Id.*



80. On April 13, 2007, Dr. Hong Choi ("Dr. Choi"), Kopin's Chief Technology Officer, wrote

to Pierce and explained that ███████████████████████████ and asked

Pierce to have Cass and Thibodeau ██████████████████████

████████████████ PL. Ex. 73 (Depo. Ex. 79); PL. Ex.74 (Pierce Depo., at

190:12-201:24).

81. Dr. Choi also asked Pierce to ██████████████████████

████████████████████████████████

██████████ and stated, ████████████████████████

PL. Ex.73 (Depo. Ex. 79); PL. Ex. 74 (Pierce Depo., 190:4-201:24).

82. On April 13, 2007, Cass met with Pierce and Thibodeau to discuss next steps in the

patent application process.  Cass, Pierce and Thibodeau discuss an agreement with

BlueRadios. PL. Ex.79 (HBSR Invoices at HBSR_MA_0108748).



83. The same day, April 13, 2007, Pierce prepared a length email Dr. Choi, to report on
    HBSR's meeting with Jacobsen and patenting BlueRadios' technology. PL. Ex. 72. *See
    also,* PL. Ex.15 (Prof. Hricik Decl., Ex. A, pp. 73-74, ¶ 211).

84. In his email to Choi, Pierce discussed Jacobsen's plan to work with BlueRadios ███████
    ████████████████████████ into the Golden-i technology, explaining that
    BlueRadios had developed several algorithms that enabled streaming video over a
    Bluetooth connection which was ██████████████████████████████
    ██████████████████ PL. Ex. 72 (Depo. Ex. 14)).

    █████████████████████████████████████████████████████████████
    █████████████████████████████████████████████████████████████
    █████████████████████████████████████████████████████████████
    █████████████████████████████████████████████████████████████

85. In his April 13, 2007, email to Choi, Pierce discussed that, as reported by Jacobsen,
    BlueRadios did not see value in or have budget to patent its technology and Jacobsen
    had suggested to BlueRadios that ██████  █████████████████████████████
    █████████████████████████████████████████████████████████████
    ███████████████████████  ██████████████ PL. Ex. 72 (Depo. Ex. 14))
    (highlighting added); *see also,* PL. Ex. 38 (Prof. Chao Decl., Ex. A, ¶ 131).

86. In his April 13, 2007, email to Choi, Pierce also identified one possible deal structure
    between Kopin and BlueRadios and explained that ██████████████████████████
    ███████████████████ and suggested HBSR could assist by ██████████████████
    █████████████████████████ and ████████████████████████████
    ██████████████████████ (*Id.; see also* PL. Ex. 39 (Thibodeau
    Depo., 211:7 - 215:10); PL. Ex. 74 (Pierce Depo., 190:4-194:11); PL. Ex. 72 (Depo. Ex.
    14). *See also* PL. Ex. 15 (Prof. Hricik Decl., Ex. A, ¶¶ 211-213).

87. Jean-Paul Cass read Pierce's April 13, 2007, email to Dr. Choi. PL. Ex. 72 (Depo. Ex. 14).  Cass instructed a legal assistant, Marianne Lentini, to print Pierce's email to Dr. Choi and place it in the file. PL. Ex. 39 (Thibodeau Depo., 211:7-215:10); PL. Ex. 72 (Depo. Ex. 14); *see also,* PL. Ex. 38 (Chao Report, at ¶131).

88. On April 17, 2007, Jacobsen prepared a Confidential Business Plan for the Golden-i project. PL. Ex. 75 (Depo. Ex.332). The purpose of the business plan was to pitch the new Golden-i technology to Motorola. PL. Ex. 4, (Jacobsen Depo., Vol. 2, 11/27/2023, 103:4-104:9).

89. The Business Plan explained that Kopin has ███████████████████ with BlueRadios which had ███████████████████████ ████████████████ PL. Ex. 76 (Depo. Ex. 331, pg. 31 (BRREV069330)).

90. The Business Plan also stated:



PL. Ex.75 (Depo. Ex. 332, p. 32) (all emphases in original). *See also,* PL. Ex. 15 (Prof. Hricik Decl., Ex. A, ¶214); PL. Ex. 38 (Prof. Chao Decl., Ex. A, ¶ 23).

91. On April 17, 2007, Cass and Pierce conferred regarding the ███████████████ PL. Ex. 62(Cass Depo., at 96:14-16); PL. Ex 79 (HBSR Invoices, at HBSR_MA108749); *see also* PL. Ex. 15 (Prof. Hricik Decl., Ex. A, ¶215).

92. On April 18, 2007, Cass and Pierce again conferred regarding the BlueRadios

agreement. PL. Ex.79 (HBSR Invoices at HBSR_MA_108749); *see also*, PL. Ex. 15

(Prof. Hricik Decl., Ex. A, ¶¶ 216, 226).

93. On April 19, 2007, Cass conferred with Thibodeau ██████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████ PL. Ex.79 (HBSR

Invoices at HBSR_MA_108749); *see also* PL. Ex. 15 (Prof. Hricik Decl., Ex. A, ¶217).

94. On May 2, 2007, Jacobsen emailed Kopin's CEO, John Fan, stating that BlueRadios

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████     ██████████     ████████████████████

████████████████████████████████ PL. Ex. 77 (Depo. Ex. 70)

(emphasis added); PL. Ex. 4 (Jacobsen Depo., Vol. 1, 36:1-38:3).

95. On May 14, 2007, Cass filed a provisional patent application with the United States

Patent and Trademark Office ("USPTO") that became U.S. Provisional Application No.

60/930,232 ("the '232 Provisional Application") titled "Method for Controlling a

Monocular Display Device *and Wirelessly Displaying Multi-media* from a Host

Computing Device" identifying Jacobsen and Kopin employee Steven Pombo as

inventors. PL. Ex. 78 (Depo. Ex. 120) (emphasis added); PL. Ex. 39 (Thibodeau Depo.,

230:23-231:15) (discussing Depo. Ex. 17 – another version of same exhibit); PL. Ex. 62

Cass Depo., at 356:3 - 358:14).

96. On May 18, 2007, four days after Cass filed the '232 Provisional Application, Jacobsen

wrote to Kramer that "without BlueRadios pre-existing Bluetooth knowledge, know-

how and technology recently developed, Golden-i would be impossible to manufacture

at this time, PL. Ex.1 (Ex. 5 of PI. SOF iso MSJ re a/c/relationship (Depo. Ex. 18

(highlighting added)):



97. In his May 18, 2007, email, Jacobsen also wrote that ████████████ ██████████

██████ ████████████ █████ ██████████████████████████████

████████████████████████████████████████████████████

████████████████ " [3] PL. Ex.1 (Depo. Ex. 18) (emphasis added). *See also* PL. Ex. 38

(Prof. Chao Decl., Ex. A, ¶ 67); PL. Ex. 15 (Prof. Hricik Decl., Ex. A, ¶ 226).

98.   In his May 18, 2007, email, Jacobsen also wrote that it was ████████████

████████████████████████████████████████████████████

██████████████████████████ PL. Ex.1  (Depo. Ex. 18).

99. On May 31, 2007, Cass conferred with Mr. Thibodeau ████████████████

████████████████████████████████████████████ PL.

Ex.79 (Depo. Ex.194A) at HBSR_MA_108810); *see also* PL. Ex. 15 (Prof. Hricik Decl.,

Ex. A, at ¶ 228).

100.  On May 31, 2007, Kopin signed a contract with BlueRadios. PL. Ex. 80 (Depo. Ex.

179).

---

[3] "CES" refers to the Consumer Electronics Show, the world's largest electronic technology show, held each January in Las Vegas, Nevada.

101. On June 5, 2007, Kramer signed the contract with Kopin on behalf of BlueRadios. PL. Ex. 80 (Depo. Ex. 179).

102. BlueRadios believed they were entering into a joint venture at the time of entering the Contract with Kopin. PL. Ex. 3 (Kramer Dep.. Vol. 1, at 108:8-10 (July 19, 2023)); PL. Ex. 3 (Kramer Depo., Vol. 2, at 265:8-17 (July 21, 2023)); Ex. 29 (Kramer Depo., 559:6-9; 560:3-18 (Sep. 13, 2018)).

103. Kopin believed they were entering into a joint venture as Jacobsen represented the agreement could be a joint venture, PL. Ex. 30 (BRREV499516 -BRREV499517). Additionally, Thibodeau spoke to Tucker about documenting BlueRadios' inventions ████████████████████ ███████ ██████████████████ PL. Ex. 1(Prof. Tu Decl., Ex. A, p. 17), *citing* PL. Ex. 81 (Depo. Ex. 22).

104. BlueRadios and Kopin contemplated sharing profit as Tucker testified the money he received from Kramer might be a form of joint profit sharing, PL. Ex. 121 (Tucker Depo., 31:8-11 (Sep. 7, 2018)), and BlueRadios believed they contemplated revenue sharing through receiving unit royalties. PL. Ex. 3 (Kramer Dep., Vol. 2, Tr. 266:22-24 (July 21, 2023); PL. Ex. 31 (Depo. Ex. 179 at BRREV151097 – BRREV151098).

105. BlueRadios contributed to the joint development of *Golden-i* by delivering hardware, codes, working prototypes, tested PCB board product assemblies, schematics, build of materials, gerbers, block diagrams, theory of operations, interface API and call phone interface prototypes. PL. Ex.80 (Depo. Ex. 179 at BRREV151098); and Kopin, PL. Ex. 3 (Kramer Depo., Vol. 1, at 101:23- 102:1). BlueRadios ultimately made the prototype marketable. PL. Ex. 16, (Prof. Tu Decl., Exhibit A, at (citing Dep. Ex. 18)).

106. BlueRadios and Kopin were responsible for their losses during the joint development of Golden-i. PL. Ex. 3 (Kramer Depo, Vol. 2, at 266:5-18 (July 21, 2023)).

107.  Kopin stated they would be seeking to terminate the contract, but BlueRadios

offered to deliver the ten circuit boards again incurring their own costs. PL. Ex. 32

(Kopin Depo. 48:7-14 (Aug. 4, 2023)).

***Shortly after signing the joint development agreement, BlueRadios begins
disclosing confidential information about its intellectual property to the
HBSR Defendants (either directly to Thibodeau and Cass or through
Jacobsen and Kopin)***.

108.  On the front page of the BlueRadios-Kopin contract is a conspicuous confidentiality

statement that says, among other things, its subject matter was ███████████████

███████████████████████████████████████████████ and should

not be disclosed ███████████████████████████████ PL.

Ex.80 (Depo. Ex. 179 at BRREV151094); *see also id.*, at BRREV151099 (lengthy

confidentiality statement).

109.  The goal of the contract was to jointly develop "Golden-i" by integrating BlueRadios'

Bluetooth technology with Kopin's video display technology. PL. Ex. 80 (Depo. Ex. 179

at BRREV151095).  The contract states that BlueRadios' existing ████████

████████████████████████████████████ would be used

███████████████████████ *Id.*, at BRREV151097.

110.  The contract gave Kopin ███████████████████████████████

█████████████████████████████████  ████████████

███████████████████████████████  ████████████████

███████████████████████ PL. Ex. 80 (Depo. Ex. 179 at

BRREV151098) (emphasis added); *see also* PL. Ex. 3 (Kramer Depo., Vol. 1, 135:8-

137:17; Vol. 2, at 273:6-275:11).

111.  On June 19, 2007, Jacobson sent an email to Kramer and Tucker, copying Thibodeau

and Cass, with the subject of ███████████████████████  ████████████

█████████ and explained to Kramer and Tucker that Cass and Thibodeau ████

████████████████████████████████████████████████████████████

████████████████████  ████████████████████  ██████████ and to

work with them to get started.  PL. Ex. 82 (Depo. Ex. 20) (emphasis added); PL. Ex. 39

(Thibodeau Depo., 238:11-240:15); PL. Ex. 6 (Tucker Depo., 127:2-14); PL. Ex. 7

(Kramer Depo., Vol. 1, at 153:12-158:10); PL. Ex. 17(Cass Depo., 204:16-205:16); *see*

*also* Prof. Hricik Decl., Ex. A, ¶ 247).

112.  Kramer understood from Jacobsen that HBSR would serve as Kopin's chosen

counsel for prosecuting patents for the Golden-i project, and that such was bargained

for into the contract.  PL. Ex. 3 (Kramer Depo., Vol. 1, 139:24-141:6).

113.  There is no written engagement letter between HBSR for either Kopin or

BlueRadios regarding the Golden-i project. *See, generally,* discussion PL. Ex. 15 (Prof.

Hricik Decl., Ex. A, pg. 88, ¶ 250).

114.  Mr. Thibodeau testified that he agreed that "with respect to the patent application

process that BlueRadios' interests differed from Kopin Corporation's interests."  PL.

Ex. 39 (Thibodeau Depo., 255:14-20); *see id*. at 263:11-23 (testifying as to which rights

Kopin had and which BlueRadios had under the contract). PL. Ex.15 (Prof. Hricik

Decl., Ex. A, ¶ 245).

115.  Initially, the HBSR lawyers only "briefly reviewed" the BlueRadios-Kopin contract.

*E.g.,* PL. Ex. 83 (Matloff Depo., 190:13-15) (testifying he had not read the contract by

the time of the 2012 email regarding strategy for BlueRadios related claims); PL. Ex.

74 (Pierce Depo., 186:8-187:1) (stating he had briefly reviewed the contract); PL. Ex.

37 (Wakimura Depo., 271:14-272:2); (she had not read the contract until the

*BlueRadios v. Kopin* suit). Cass testified that he had "read" but had not "studied" the

contract.  PL. Ex. 62 (Cass Depo., 201:16 – 202:6).  *See also*, discussion, PL. Ex.15
(Prof. Hricik Decl., Ex. A, ¶ 250).

116.  However, in the weeks and months that followed, HBSR's invoices show that the
HBSR lawyers spent substantial time analyzing the BlueRadios-Kopin contract. *See,*
*generally,* PL. Ex.79 (HBSR Invoices).

117.  On June 20, 2007, Thibodeau emailed Kramer and Tucker and asked for 10 to 15
minutes for a first call to begin the work required by the BlueRadios-Kopin contract.
PL. Ex. 82 (Depo. Ex. 20); PL. Ex. 39 (Thibodeau Depo., 240:16-241:18).

118.  On June 26, 2007, Thibodeau and Cass conferred with Tucker ███████████
█████████████████  PL. Ex.79 (HBSR Invoices, at HBSR_MA_108866).

119.  Tucker would not have given Thibodeau and Cass "information like that unless I
thought they were representing us," as that would be "stupid."  PL. Ex. 6 (Tucker
Depo. 112:15 – 113:7; *see id.* 116:2 – 118:11; 126:10-15).

120.  Tucker testified that during the June 26, 2007, telephone call with Thibodeau and
Cass, he disclosed BlueRadios' technology, about "how we were directly transporting
video via Bluetooth."  PL. Ex. 84 (Tucker Depo., 129:24 - 131:9)).  Tucker understood
HBSR was involved because Mr. Jacobsen told him "we need to get this patent before
we expose all this IP," which was why "we needed a patent lawyer." PL. Ex. 6 (Tucker
Depo., at 125:13-24); *see also, discussion*, PL. Ex. 15 (Prof. Hricik Decl., Ex. A, at ¶
259).

121.  On June 27, 2007, Thibodeau emailed Jacobsen (copying Pierce) and explained to
Jacobsen that he had the day before spoken with Tucker:

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

[REDACTED]

PL. Ex. 81 (Depo. Ex. 22 at KPN22_00012717) (underlining and highlighting added); *see* PL. Ex. 85 (Cass Depo., 191:4 – 192:20); *see also* PL. Ex. 74 (Pierce Depo., 184:6 - 186:3); *see also,* PL. Ex. 38 (Prof. Chao Decl., Ex. A, pg. 6, ¶ 24).

122. The same day, June 27, 2007, Jacobsen emailed Thibodeau and Pierce an executed copy of the BlueRadios-Kopin contract.  PL. Ex.81 (Depo. Ex. 22).

123. HBSR opened a file for the Golden-i Project identified as 0717-2082-000 for a provisional patent application it referred to internally as the [REDACTED] [REDACTED] *See, e.g.*, PL. Ex 86 (Depo. Ex.1).

124. HBSR opened a separate matter for [REDACTED] Docket No. 0717.0269-000. PL. Ex 85 (Ex. 17 (Cass Depo., 119:12 - 120:17); *see, e.g.*, HBSR Invoices at HBSR_MA_108900; PL. Ex. 15 (Prof. Hricik Decl., Ex. A, ¶ 267).

125. BlueRadios began disclosing its technology to the HBSR Defendants.  *See* Dkt. 211.

126. HBSR attorneys were also aware of the consequences of failing to name the correct inventors on a patent. As both Thibodeau and Matloff testified, the patent would be invalid.  *See e.g.* PL. Ex. 39 (Thibodeau Depo., 187:6-20); PL. Ex. 83 (Matloff Depo. p. 97:3-98:15); PL. Ex. 87, (Kazanjian Depo., 114:9-115:4); *see also*, PL. Ex. 38 (Prof. Chao Decl., Ex. A, ¶ 133).

127. On July 5, 2007, Jacobsen emailed Tucker and Kramer. Ex. 3 (Kramer Depo., Vol. 2, 161:17-162:21); PL. Ex. 88 (Depo. Ex. 310). Jacobsen wrote that [REDACTED] [REDACTED] of U.S. and foreign patent claims [REDACTED] *Id.*

128. In the months that followed, most of the communications between BlueRadios and HBSR about patents and technology went through Jacobsen, the project manager and key interface with HBSR. PL. Ex.18 (Jacobsen Depo., Vol. 3, 332:6–333:10); PL. Ex. 7 (Kramer Depo., Vol. 1, 164:1-15); PL. Ex. 19 (Tucker Depo., 144:5-145:3).

129. As project manager for the Golden-i project, one of Jacobsen's responsibilities was to be the point person for dealing with HBSR for purposes of patent applications, as such was a common practice in the industry. PL. Ex. 2 (Jacobsen Depo., Vol. 3, 332:6–333:10).

130. In his role as project manager, Jacobsen directed BlueRadios' employees to go through him to communicate with HBSR about patent applications. PL. Ex. 2 (Jacobsen Depo., Vol. 3, 331:20-334:11; PL. Ex. 3 at HBSR_MA_004779).

131. BlueRadios' practice of providing information to HBSR through the project manager was good engineering practice and a reasonable way for BlueRadios to provide information to HBSR.  PL. Ex. 2 (Jacobsen Depo., Vol. 3, 333:12-22).  If HBSR lawyers required specific conversations with Tucker, Parkinson or Kramer, the lawyers were free to do so.  *Id.*, 333:23 – 334:4.

132. BlueRadios contributed a variety of technologies to the Golden-I Project.  BlueRadios contributed a variety of technologies to the Golden-i Project. Plaintiffs' wireless engineering/technology expert witness, Edwin Hernandez-Mondragon, Ph.D., categorizes these technologies in the following groups:

   a. Head-mounted display drivers,
   b. Bluetooth video and low-power transmission,
   c. BSP for a first wearable computer with head mounted display, voice commands operating in noise environments,
   d. Intuitive menu design that integrated voice and /or head tracking for handsfree operation,
   e. Miniaturized form factor, and

f.   Internet computer capable of full web browsing.

133.  PL. Ex. 89, (Hernandez Decl., Ex. A, ¶ 235); *see also,* PL. Ex. 38 (Prof. Chao Decl.,

Ex. A, ¶ 20).

134.  The second item in Dr. Hernandez's list, Bluetooth video and low-power

transmission was a breakthrough. According, to Mark Kramer, no one else in the

world was then wirelessly streaming high quality, artifact-free at 30 frames per

second. PL. Ex. 90 (Kramer Depo., Vol. 2, 205:6 - 207:21). In his deposition,

Thibodeau, acknowledged that "[s]o what made Golden-i special was [the] particular

way of using the Bluetooth interface." PL. Ex. 39 (Thibodeau Depo., 24:18-25:10); PL.

Ex. 38 (Prof. Chao Decl., Ex. A, ¶ 21).

135.  Bluetooth video was not Kopin's contribution, but BlueRadios'. Before BlueRadios

and Kopin began working together, ███████████████████████ PL. Ex. 84

(Tucker Depo.,119:22-120:5). This is not just BlueRadios view but Kopin's view as

well. *See* PL. Ex. 2 (Depo. Ex. 12), PL. Ex. 9 (Depo. Ex. 14); *see also* PL. Ex. 38 (Prof.

Chao Decl., Ex. A, ¶ 264).

***The Defendants decide to favor Kopin over BlueRadios.  They Use Three Basic
Tactics to Do So.***

136.  At some point, HSBR attempted to separate the BlueRadios inventions from the

Kopin inventions in the patent applications. PL. Ex. 91 (Depo. Ex. 53). As defendant

Gerald Kazanjian explained:



PL. Ex. 87 (Kazanjian Depo., 137:5-12) (emphasis added).

137.  As Prof. Chao discusses in his expert report, the Defendants used three tactics to

harm BlueRadios and help Kopin:



PL. Ex. 38 (Prof. Chao Decl., Ex. A, ¶ 39). Professor Chao also explains the significance

for ownership of Defendants' tactics.  *Id.*, at ¶¶ 28-38.

***Defendants repeatedly name the wrong inventors on patent applications so that
Kopin's employees are identified as the inventors instead of BlueRadios'
employees.***

138.  Defendants' first tactic to limit BlueRadios' ownership rights and expand Kopin's

ownership rights was to name the wrong inventors so that Kopin employes were listed

as the inventors on the patent applications instead of the BlueRadios' employees. *See,*

*generally* PL. Ex. 38 (Prof. Chao Decl., Ex. A, ¶¶ 40-64).

***Defendants included key language about a "packet switching gateway" in
multiple patent applications without crediting BlueRadios' inventors.***

139.  The following language represents one BlueRadios' inventions incorporated into the

Golden-i technology:

The device of Claim [1] wherein the wireless interface is a BlueTooth$^{\text{TM}}$ physical layer

74

with a Bluetooth™ proxy to implement a packet switching gateway"

140. In 2003 to 2007, BlueRadios developed a technique of wirelessly streaming massive amounts of data (including high-resolution video) across a Bluetooth radio with two projects that it internally called "Game Boy" and "BlueVideo." PL. Ex.34 (Kramer Decl., ¶ 14); *see also,* Tucker Deposition, at 246:23 – 250:24; PL. Ex.89, (Dr. Hernandez Decl., Ex. A, ¶¶ 80-82; 87-89) (explaining the BlueRadios development of wireless video streaming technology through the Game Boy Advanced and BlueVideo projects); PL. Ex. 23 (BlueRadios Rule 30(b)(6) Depo., 108:11 -109:1)

141. Part of what BlueRadios learned to do was use a piece of software called a "Bluetooth proxy" to wirelessly stream data over Bluetooth radios. PL. Ex.34 (Kramer Decl., ¶ 16); PL. Ex. 89, (Dr. Hernandez Decl., Ex. A, at ¶ 82). A Bluetooth proxy is a device or software that acts as an intermediary for communication between Bluetooth devices. PL. Ex.34 (Kramer Decl., at ¶ 16); PL. Ex.89 (Dr. Hernandez Decl., Ex. A, at ¶ 52).

142. BlueRadios then refined the "packet switching gateway" process with Christopher Parkinson when developing software and firmware for the Golden-i technology. PL. Ex. 34 (Kramer Decl., ¶17). As such, the language in represents an invention conceived, at least in part, by BlueRadios' employees before the BlueRadios-Kopin contract. PL. Ex. 34 ( Kramer Decl., ¶ 17).

143. According to Christopher Parkinson, the Bluetooth proxy is the enabling and differentiating software technology found on the Golden-i. PL. Ex. 20 (Parkinson Depo., 271:15 - 273:21), discussing PL. Ex. 92 (Depo. Ex. 33, p. 8).

144. Kopin and BlueRadios filed a joint motion in the Colorado Lawsuit to amend two issued patents to add Tucker and Sample as inventors to US Patent No. 9,116,340 patent and US Patent No. 9,886,231 patent cited the "Bluetooth proxy to implement a

packet switching gateway" language as a basis for concluding that Tucker and Sample should be listed as inventors on the '340 patent and the '231 patent. PL. Ex. 93 (Depo. Ex. 502 at pp. 2-3). The U.S. District Court in Colorado ordered the Amendment. PL. Ex. 122. (Judge Kane's Order and Requests for Correction filed with the USPTO).

145.  Defendants included the "Bluetooth proxy to implement a packet switching gateway" or similar language in claims and specifications of a number of patent applications that resulted in issued patents, including US Patent N. 9,116,340, US Patent No. 9,310,613, US Patent No. 9,235,262, US Patent No. 10,474,418, and US Patent No. 10,579,324. PL. Ex. 38 (Claim Chart, Appendix C to Prof. Chao Decl., Ex. A, at pp. 4, 5, 6, 24, 80, 96, 122, 124, 127, 290, and 303).

146.  Defendants did not list Tucker and Sample as inventors in patent applications containing the "Bluetooth proxy to implement a packet switching gateway" language and, so, BlueRadios does not own the patents containing such language. *See,* PL. Ex.15 (Hricik Decl., Exh. A, ¶¶ 56; 496-509).

147.  Attached as Exhibit 118 is a chart that identifies patents including the "packet switching gateway" language.

### *Defendants include BlueRadios' wireless video streaming technology in numerous patent applications, both in the claims and in the specifications without identifying BlueRadios' employees as inventors.*

148.  Professor Chao examined numerous patents to determine whether BlueRadios' technology was included either in the claims or the specifications. PL. Ex.38 (Prof. Chao Decl., Ex. A, ¶¶ 40-59). Professor Chao prepared an Inventorship Claim Chart ("Claim Chart") that examined wireless technology and then divided the pertinent Golden-i patents into four (4) categories. *Id.*, see also PL. Ex. 38 (Claim Chart).  In the Claim Chart, Professor Chao examines the various Golden-i patents to determine

which patents contain BlueRadios' technology either in the claims or in the specifications.

149.  In Category 1 are those patents that Professor Chao identified as containing at least one claim with a limitation with the term Bluetooth in combination with directed at the transmission of video signals. PL. Ex.38 (Prof. Chao Decl., Ex. A, ¶ 52). According to Professor Chao, the patents in Category 1 show the strongest evidence of BlueRadios' inventorship. *Id.*

150.  In Category 2 are those patents that Professor Chao identified as containing at least one limitation directed at some form of wireless limitation in combination with a limitation directed at the transmission of video signals.  *Id.*, ¶ 53. According to Professor Chao, the patents in Category 2 show the next strongest evidence of BlueRadios' inventorship. *Id.*

151.  In Category 3 patents that Professor Chao identified as containing limitations using terms like "receiving' or "receiver" in connection with a limitation directed at the transmission of video signals. *Id.*, ¶ 54. The Category 3 patents show evidence of BlueRadios' inventorship. *Id.*

152.  According to Professor Chao, there are twenty-three (23) patents in Categories 1, 2 and 3 that have evidence of BlueRadios' wireless technology and are evidence of BlueRadios' ownership. *Id.*, ¶ 55.

153.  In Category 4 patents are twenty-four (4) Golden-i patents that Professor Chao identified that do not appear to have *claim* limitations covering video over wireless technology, but the specifications show BlueRadios' technology. *Id.*, ¶ 57.

154.  Below is Table 1 from Professor Chao's report that summarizes the summaries the patents in the four categories:



PL. Ex.38 (Prof. Chao Decl., Ex. A,  15).

***Defendants include figures in patent applications that reflect BlueRadios'
inventive contributions but do not identify BlueRadios' employees as inventors
on the patent applications despite using figures in the applications that
reflect BlueRadios' inventions.***

155.  The seven on the eight figures identified by Mr. Kramer  represent BlueRadios

inventions <u>before</u> the joint development agreement with Kopin. PL. Ex.34 (Kramer

Decl., ¶ 20). The two remaining figures, the Solar Heating Figures, are technology

that Mark Kramer developed when building a home and have nothing to do with

Golden-i.  *Id.,* ¶ 21.

156.  Defendants included the figures in a number of the Golden-i patent applications.

157. Attached as Exhibit 118 is a chart that identifies patents that include the figures, and thus include BlueRadios' technology, but do not identify BlueRadios' employees as inventors. *Id.*

**Defendants use the "preferred embodiment" of BlueRadios' invention in the original '177 Provisional Application and the '627 Non-Provisional Application into other applications without identifying BlueRadios' inventors.**

158. The term "preferred embodiment" in patent law generally refers to the inventor's preferred way of practicing the claimed invention. It is important in the context of the "best mode" requirement of patent law, which mandates that the inventor disclose the best mode of practicing the invention in order to obtain a patent. *See, e.g.,* PL. Ex.94 (Stoll Depo., 58:24-59:13; 66:23-67:16) ("Preferred embodiment" is another term for "best mode" requirement of patent law.).

159. The '177 Provisional Application – filed naming <u>only</u> BlueRadios inventors Will Tucker, Mark Kramer, John Sample and Randy Jones – describes the preferred embodiment of BlueRadios' invention. PL. Ex. 95 (Depo. Ex. 911, pp. 6-8). PL. Ex. 96 (Preferred Embodiment language from the '177 Provisional Application). PL. Ex.34, (Kramer Decl., ¶ 25).

160. Defendants slightly modified the preferred embodiment language of the '177 Provisional Application when they prepared the non-provisional Application No. 12/348,627 claiming the benefit of the '177 Provisional Application. PL. Ex. 98 (Depo. Ex. 912); PL. Ex.34, (Kramer Decl., ¶ 25).

161. The modified preferred embodiment language appears in U.S. Patent No. 8,355,671 ("the '671 Patent") issued on January 15, 2013. PL. Ex.98 (Depo. Ex. 912).

162. Defendants' patent law expert witness, Robert Stoll (the former U.S. Commissioner of Patents) acknowledges that the claims of '177 Provisional Application cover the

preferred embodiment described in the '177 Provisional Application.  PL. Ex. 94 (Stoll Depo., 196:12-25); *see also, id.*, at 192:10-196:11 (discussing the preferred embodiment described in the '177 Provisional Application).  Mr. Stoll agrees that, generally, preferred embodiments are encompassed within the language of the claim. *Id.*, at 197:6-18.

163.  Attached as PL. Exhibit 118 is a Chart that identifies patents in which Defendants appear to have lifted the preferred embodiment language from '177 Provisional Application, the '627 Application, or the resulting '671 Patent, tweaked the language slightly, and then included the language in another application also as a preferred embodiment, but without identifying BlueRadios' employees as inventors. *See also,* PL. Ex.34 (Kramer Decl., ¶ 26).

164.  Also attached as PL. Exhibit C to Mr. Kramer's Affidavit is a tabbed redlined comparison of the preferred embodiment language with the preferred embodiment language of the '671 Patent. PL. Ex.34 (Kramer  Decl., ¶ 26); *see also* PL. Ex. 38 (Prof. Chao Decl., Ex. A, ¶¶ 86-89) (discussing Defendants' misconduct with respect to the ''627 Application and the ''617 Patent).

***Cass files the '232 Provisional Application <u>before</u> BlueRadios and Kopin sign a contract.  The '232 Provisional includes BlueRadios' inventions but doesn't identify BlueRadios inventors.***

165.  The '232 Provisional Application, filed on May 14, 2007, contains some of the BlueRadios' proprietary information that it shared with Kopin during the early stages of their collaboration.  Specifically, the application describes a method of wirelessly streaming video to a head-mounted display.  PL. Ex. 78 (Depo. Ex. 120, p. 6).  At least some of the information shared by BlueRadios with Kopin was encompassed by a Non-

Disclosure Agreement between Kopin and BlueRadios. PL. Ex. 68 (Depo. Ex. 72); PL. Ex. 34 (Kramer Decl., ¶ 19).

166. The claims in the '232 Provisional Application include, *inter alia*, "a wireless interface connected to [a] monocular display and configured to wirelessly communicate with a host computing device." PL. Ex.78 (Depo. Ex. 120, p. 3, l. 16-17).

167. The '232 Provisional Application, PL. Exhibit 60, contained Figure 3 (the "Bubble Figure"), Figure 4, a hand drawn block chart prepared by Cass (an early version of the "Internal Components Schematic") and Figure 5, and a hand drawn flow chart also prepared by Mr. Cass (an early version of the "Flow Chart Figure"), all reflecting BlueRadios' technology:





*Cf.* Fig. 4, above, with PL. Ex. 60, Internal Components Schematic, and Fig. 5, above,

with PL. Ex.60, Flow Chart Figure; *see also* PL. Ex.34 (Kramer Decl., ¶ 19).

168. While no claim in the '232 Provisional Application mentions Bluetooth or wireless

streaming video, the specifications mention Bluetooth. PL. Ex. 78 (Depo. Ex. 120, at

pp. 13-14). The specifications do not specifically mention wireless transmission of

video but mention Bluetooth 3.0 with a data transfer rate of about 480 Mbps, *i.e.* an

indirect reference to video PL. Ex.78 (Depo. Ex. 120, p. 10, l. 15-27).

169. The '232 Provisional Application also contains BlueRadios' Bubble Figure as Figure

3, a hand drawn and early version of the Critical Hardware Figure, Figure 4, and a

hand drawn version of Flow Chart Figure, Figure 5, all of which reflect BlueRadios'

technology and method for wirelessly transmitting video over Bluetooth. PL. Ex. 78

(Depo. Ex. 120, pp. 24-26). Figures 4 and 5 also refer to Bluetooth. *Id.*

170. Cass did not identify BlueRadios' employees as inventors on the '232 Provisional
Application, PL. Ex.99 (Depo. Ex. 17, p. 1), despite Pierce's April 13, 2007, email to
Kopin's Chief Technology Officer, Dr. Choi, PL. Ex. 72 (Depo. Ex. 14), reflecting that
Brook, Pierce, Thibodeau and Cass all knew from Jacobsen that it had been
BlueRadios – not Kopin – which had developed the new Bluetooth video streaming
technology. *See, generally,* PL. Ex.15 (Prof. Hricik Decl., Ex. A, ¶¶ 223-225)
(discussing how Defendants filed the '232 Provisional Application before BlueRadios
and Kopin signed a contract and despite knowing that BlueRadios had created the
new streaming technology); PL. Ex.16 (Prof. Tu Decl., Ex. A, 14-15; 32-34) (same).

***Defendants make patent prosecution choices that limit BlueRadios' ownership
interest and expand Kopin's ownership interests in the Golden-i patent
portfolio.***

171. On January 5, 2009, Thibodeau filed a non-provisional application claiming priority
to the '177 Provisional Application which became U.S. Application No. 12/348,627 (the
"'627 Application"). PL. Ex.100 (Depo. Ex. 184).

172. The '627 Application claimed priority to the '177 Provisional Application which had
named only BlueRadios employees as inventors and stated it was a continuation-in-
part of the '462 Application. *Id.;* PL. Ex. 51 ('627 Application at BRvHBSR27198)

173. Thibodeau removed BlueRadios' Randy Jones – even though Jones is named on the
'177 Provisional Application – and included – from among three Kopin employees
who had been named on the '462 Application – only Mr. Jacobsen. *Id.* An internal
HBSR memorandum with handwriting on a ███████████████████
(handwriting unknown) states that Jacobsen ████████████ as an inventor to the
application and ████████████████ PL. Ex.52 (Depo. Ex. 39).



PL. Ex. 52 (Depo. Ex. 39 at HBSR_022679) (handwritten notes in original; highlighting added).

174. As filed in the '177 Provisiaonl has six claims.  Claim 1 stated:

> 1.    A method comprising:
>           receiving a compressed digitally-encoded audiovisual signal of at least Video Graphic Array (VGA) quality from an external host computing device over a Serial Port Profile (SPP) Bluetooth wireless connection;
>           decompressing the compressed digitally-encoded audiovisual signal; and
>           generating a video signal that is suitable for handling by a display driver in a display device.

175. Neither Claim 1 nor any of other five dependent claims contain any Kopin technology.  The claims all related to the details of sending video over Bluetooth. PL. Ex. 38 (Prof. Chao Decl., Ex. A, ¶ 69) (discussing the claims).

176. This application covers technology that BlueRadios developed prior to its work with Kopin. PL. Ex. 4 (Jacobsen Depo., Vol. 1, at 44:8- 46:18) (testifying that BlueRadios successfully demonstrated video streaming at a February 27, 2007, meeting); PL. Ex. 101 (Depo. Ex. 78)(discussing April 10, 2007, Golden-i startup meeting: "Blue Radio demonstrated the feasibility of video transport over Bluetooth 2.0 EDR standard. The source was a Nokia Cell phone and acts as a master."). *See also,* PL. Ex. 38(Prof. Chao Decl., Ex. A, p. 20, ¶ 70).

177. Defendants changed: 1) the claims, and 2) the named inventors from the '177 Provisional Application to the '627 Application. These changes expanded Kopin's rights at the expense of BlueRadios. PL. Ex. 16 (Prof. Tu Decl., Ex. A, at pp. 35-38) (discussing the nuances of how Defendants exploited the differences in drafting the '177 Provisional Application and the '627 Application to expand Kopin's rights at the expense of BlueRadios rights); *see also* PL. Ex. 38(Prof. Chao Decl., Ex. A,  ¶¶ 86-89) (discussing how Defendants' misconduct with respect to the '177 Provisional Application and the '627 Application  harmed BlueRadios and helped Kopin).

***Thibodeau and Kazanjian file nearly identical patent applications in the U.S. and Europe, the '462 Application and the '147 PCT, identify BlueRadios inventors on both, and then remove the BlueRadios inventors from the U.S. application, but do not remove the BlueRadios inventors from the European patent application.***

178. On May 14, 2008, Kazanjian filed what became U.S Application No. 12/152,462 titled "Mobile Wireless Display for Accessing Data from a Host and Method for Controlling" (the '462 Application") with the USPTO. Answer, ¶ 231; PL. Ex.102 (Depo. Ex. 183).

179. The same day as Kazanjian filed the '462 Application, Thibodeau filed what became International Application No. PCT/US08/06147 also titled "Mobile Wireless Display for Accessing Data from a Host and Method for Controlling" ("the '147 PCT") with the World Intellectual Property Organization ("WIPO") in Geneva, Switzerland. PL. Ex. 97 (Depo. Ex. 583, p. 95).

180. In addition to sharing the same title and being filed on the same day, the '462 Application and '147 Application each have forty-four (44) claims. *Cf.* Utility Patent Application No. 12/152,462, PL. Ex. 102 (Depo. Ex. 183) and PL. Ex. 103 (BRvHBSR 6617-6672).

181. The forty-four claims of the '462 Application and '147 PCT Application are nearly

identical. *Id.*

182. The '462 Application identifies Tucker, Sample, Parkinson, Jacobsen, and Pombo as inventors. Utility Patent Application No. 12/152,462, PL. Ex. 102 (Depo. Ex. 183).

183. The '147 PCT Application identifies Jacobsen, Parkinson, Pombo, Tucker, and Sample as "applicant[s]" and "inventor[s]."  PL. Ex.119 (HBSR_003578-84); PL. Ex.103 (BRvHBSR 6617-6672).

184. On September 12, 2008, Kazanjian conferred with Choi, Thibodeau and Pierce regarding "inventorship and strategy for separating Kopin and BlueRadios inventions in light of joint development agreement." PL. Ex.79 (HBSR Invoices, at HBSR_MA_10959).

185. On January 12, 2009, Kazanjian filed declarations prepared for Jacobsen, Parkinson, and Pombo which declared they were the inventors of the '462 Application even though it claimed the benefit of, among other applications, the '177 Provisional Application (which named only BlueRadios inventors), and contained the Bubble Figure, the Critical Hardware Figure, and Claim 4, which states:

4.    The device of Claim 1 wherein the wireless interface is a Bluetooth™ physical layer with a Bluetooth™ proxy to implement a packet switching gateway.

PL. Ex. 104 (Depo. Ex. 62); PL. Ex.87 (Kazanjian Depo., 178:23-179:10).

186. On March 9, 2009, Kazanjian filed a preliminary amendment in the '462 Application in which he cancelled its claim of benefit to the '177 Provisional Application (the application with only BlueRadios inventors) and represented to the USPTO that, as amended, Jacobsen, Parkinson, and Pombo were the correct inventors. PL. Ex.105 (Depo. Ex. 63); PL. Ex. 79 (HBSR Invoices, at  HBSR_MA_109788).

187. While he filed the amendment, Kazanjian did <u>not</u> remove the Critical Hardware Figure, its description (incorporating the '177 Provisional Application by reference), the Bubble Figure, and he did not cancel or amend Claim 4 which included a BlueRadios invention. *Id.*; Kazanjian Depo. 180:9-15; *see* PL. Ex.79 (HBSR Invoices at HBSR_MA_10978-89).

188. Despite the presence of Claim 4, Mr. Kazanjian represented to the USPTO that BlueRadios employees were not inventors and wrote:

> The Applicants of U.S. Provisional Application No. 61/010,177 filed a separate nonprovisional application directed to the invention disclosed and claimed therein as U.S. Patent Application No. 12/348,627. Therefore, the above amendment to the specification removes the priority claim to U.S. Provisional Application No. 61/010,177. Inventorship was corrected by filing of a Declaration for Patent Application by inventors Jacobsen, Pombo and Parkinson with the Reply to Notice to File Missing Parts of Application filed on January 8, 2009.

PL. Ex.105 (Depo. Ex. 63, at 3).

189. On March 19, 2009, Thibodeau wrote to the WIPO regarding the '147 PCT, representing that he was the attorney for the inventors and applicants. PL. Ex.106 (Depo. Ex. 64). He wrote that "Wilfred I. Tucker" had been incorrectly identified as "William Tucker" in '147 PCT and two applicants/inventors – Mr. Kramer and Mr. Jones had been "inadvertently omitted" from it. *Id.* On their behalf, he requested correction of those errors. *Id.*

190. Defendants never told BlueRadios that they had amended the '462 Application to remove Tucker and Sample as inventors.

191. The '462 Application issued as U.S. Patent No. 9,116,340 on August 25, 2015. PL. Ex. 47 ('340 Patent BRvHBSR 1169-1196).

192. While the '462 Application and the '147 PCT Application were almost identical patent applications, Defendants did <u>not</u> move to amend the '147 PCT Application (other than correct Tucker's name).

193. Defendants' actions with respect to the '462 and '147 PCT Application harmed BlueRadios. *See* PL. Ex. 16 (Prof. Tu Decl., Ex. A, pp. 46-48) (discussing Defendants' breach of the standard of care); PL. Ex. 38 (Prof. Chao Decl., Ex. A, ¶¶ 73-77) (discussing harm caused to BlueRadios).

***Defendants allowed the '147 PCT Application to go abandoned but did not notify BlueRadios.***

194. In 2011, HBSR and Kopin let the '147 PCT go abandoned by not taking required action. The meeting minutes state that they need to tell BlueRadios:



PL. Ex. 120 (Depo. Ex. 252, p. 4; Answer to First Amended Complaint, ¶¶ 273-274. *See also*, PL. Ex.38 (Prof. Chao Decl., Ex. A, ¶ 85) (discussing that Defendants should have informed BlueRadios of their intent to abandon the application).

***Defendants amend the '646 Application to remove BlueRadios' inventors and expand Kopin's ownership in the resulting '296 Patent without notice to BlueRadios.***

195. On January 5, 2009, Kazanjian filed what became U.S Application No. 12/348,646 (the '646 Application"), titled "Mobile Wireless Display Software Platform for Controlling Other Systems and Devices," as a Continuation-in-Part ("CIP") of the '462 Application and which claimed the benefit of the '090 Provisional Application"

Answer, ¶¶ 237, 240, 243.

196. As filed, the '646 Application named Tucker, Sample, Parkinson, and Jacobsen as inventors and included a power of attorney.  PL. Ex. 47 (HBSR_011879-904).

197. On June 29, 2012, Matloff and Thibodeau advised Dr. Choi (with copies to others) of an office action in the '646 Application.  PL. Ex.107 (Depo. Ex. 40); PL. Ex.83 (Matloff Depo., 157:3 – 163:1) They discussed how to over overcome a rejection. They also brought up the BlueRadios inventors, Tucker and Sample:



PL. Ex.107 (Depo. Ex. 40); *see* Ex.39 (Thibodeau Depo., 298:6 -306:8); Ex.83 (Matloff Depo., 161:18 – 163:1).

198. On July 6, 2012, Matloff followed up on his email to Dr. Choi and requested Choi's input on the reply to the office action, stating he understood ███████████ ████████████████████████████  PL. Ex. 108 (Depo. Ex. 41); PL. Ex. 83 (Matloff Depo., 210:3 – 211:24).  Matloff periodically followed up with Dr. Choi about

the BlueRadios related claims. PL. Ex. 109 (Depo. Ex. 42); PL. Ex.39 (Thibodeau

Depo., at 312:22-314:11); PL. Ex. 83 (Matloff Depo., at 212:2-216:23).

199.   Thibodeau left Defendant HBSR effective July 31, 2012.  PL. Ex. 39 (Thibodeau

Depo., 165:5-8); Mary Lou Wakimura took over the Golden-i patent prosecution

portfolio from Thibodeau. *Id.*

200.   Pierce was the ████████ for the Golden-i patent prosecution. PL. Ex. 110 (Depo.

Ex. 195 at HBSR_MA_115039).

201.   On August 6, 2012, Dr. Choi responded to Matloff's emails and wrote that Kopin

████████████████████████████████████████████████████

████████████████ PL. Ex.111 (HBSR_010097).

202.   During August 2012, Matloff worked with Dr. Choi to amend the claims to the '646

Application. *See* PL. Ex. 112 (Depo. Ex. 147); PL. Ex. 83 (Matloff Depo., 246:20-

248:11).  On August 27, 2012, Mr. Matloff advised Dr. Choi that HBSR had

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

PL. Ex.113 (Depo Ex. 149); PL. Ex. 83 (Matloff Depo., 249:1-250:5); PL. Ex. 74

(Pierce Depo., 272:4-273:4).

203.   On December 9, 2014, the '646 Application issued as U.S. Patent No. 8,909,296 ("the

'296 Patent").

204.   Matloff, Pierce and Thibodeau's actions with respect to the "646 Application and

resulting '296 Patent caused harm to BlueRadios. PL. Ex. 38 (Prof. Chao Decl., Ex.

A, ¶¶ 90-97) (discussing how Defendants' misconduct with respect to the '646

Application and the '296 Patent caused harm to BlueRadios); PL. Ex. 38 (Prof. Tu

Decl., Ex. A, pp. 39-46) (discussing the nuances of how Defendants used procedural

maneuvers in the patent prosecution process to remove BlueRadios' ownership to the '296 Patent and expand Kopin's ownership interest, Brook, Pierce, Thibodeau and Matloff's misconduct and  conflicts of interest).

### Cogswell's files the '333 Patent Application.

205. On August 22, 2014, Defendant Lawrence Cogswell, III, filed and prosecuted non-provisional application 14/466,333 titled "Wireless Hands-Free Computing Headset With Detachable Accessories Controllable by Motion, Body Gesture And/Or Vocal Commands" ("the '333 application"). PL. Ex. 114 (Depo. Ex. 379, '333 Application)

206. Cogswell listed Jacobsen, Pombo and Parkinson as the co-inventors, but the '333 application claim priority from a number of applications including the '462 application. *Id.*

207. Independent claims 1, 9 and 18 of the '333 Application all contain limitations that cover wireless video. Various portions of the specification confirm that the claims are intended to cover wireless video. *See e.g. Id.*, at ¶¶ 37, 40, 76, 78, 87, 109-111 and 124. *Id.*

208. In the '333 Application, Cogswell also submitted several figures reflecting BlueRadios' technology, including the Remote Control Figure (Fig. 1A), the Internal Components Schematic (Fig. 10), Critical Hardware Figure (Fig. 11), and the Flow Chart Figures (Fig. 12).  *Id.* Cogswell also included the Solar Heating Figures (Figs. 6A and 6B).

209. Defendants eventually abandoned the '333 Application by failing to respond to the Final  Office Action dated September 3, 2019.  Defendants did not notify BlueRadios that they had filed the '333 Application that they had chosen to abandon it.

210. Because Defendants abandoned the "333 Application and BlueRadios did not take steps to preserve it, BlueRadios is now barred from patenting the subject matter of the "33 Application and has lost any value of that the patent may have provided. PL. Ex. 16 (Prof. Tu Decl., Ex. A, pp. 51-52) (discussing why Cogswell should have identified BlueRadios inventors and the harm caused by the decision to abandon); *see also* PL. Ex. 38, (Prof. Chao Decl., Ex. A, ¶¶ 98-100).

211. Defendants failed to disclose their conflicts of interest. See discussion about Defendants' failure to disclose their conflicts of interest. PL. Ex. 16 (Prof. Tu Decl., Ex. A, pp. 53-57) (analyzing Defendants' conflicting interests)

212. Professor Tu has opined that Defendants' engaged inequitable conduct. PL. Ex. 16 (Prof. Tu Decl., Ex. A, pp. 58-60); *see also* PL. Ex. 38 (Prof. Chao Decl., Ex. A, at ¶¶ 129-149) (discussing the consequences of Defendants' Conduct).

213. The cc list on the "Minutes for January 2008, Kopin Intellectual Property Committee Meeting" show that HBSR lawyers Scott Pierce, David Brook, David Thibodeau and JP Cass all were involved in HSBR's work on patent applications for the Golden-i project at this time. PL. Ex. 115 (Depo. Ex. 235), Ex. 74 (Pierce Depo., 112:12-114:12).

214. In the months that followed, most of the communications between BlueRadios and HBSR about patents and technology went through Jacobsen, the project manager and key interface with HBSR. PL. Ex. 18 (Ex. 2 (Jacobsen Depo.) Vol. 3, 332:6–333:10); PL. Ex. 90 (Kramer Depo. Vol. 1 at p. 164:1-15); PL. Ex. 84 (Tucker Depo., 144:5-145:3).

215. As project manager for the Golden-i project, one of Jacobsen's responsibilities was to be the point person for dealing with HBSR for purposes of patent applications, as

such was a common practice in the industry. PL. Ex. 18 (Jacobsen Depo., Vol. 3, 332:6–333:10).

216. In his role as project manager, Jacobsen directed BlueRadios' employees to go through him to communicate with HBSR about patent applications. PL. Ex. 1 (Jacobsen Depo., Vol. 3, 331:20-334:11; PL. Ex. 79 at HBSR_MA_004779).

217. BlueRadios' practice of providing information to HBSR through the project manager was good engineering practice and a reasonable way for BlueRadios to provide information to HBSR.  PL. Ex. 18 (Jacobsen Depo., Vol. 3, 333:12-22).  If HBSR lawyers required specific conversations with Tucker, Parkinson or Kramer, the lawyers were free to do so.  *Id.*, 333:23-334:4.

218. BlueRadios' communications with HBSR were for the purpose of obtaining legal advice on patentability and legal services in preparing patent applications. PL. Ex. 90 (Plf.'s Resp. To Court-Ordered Interr. pp. 3-38).

219. Kopin did not tell BlueRadios it only represented Kopin; Kopin did not tell BlueRadios it had a conflict with representing both BlueRadios and Kopin, did not ask BlueRadios if it had separate counsel, and did not tell BlueRadios to seek separate counsel. PL. Ex. 35 (Tucker declaration, para. 1); PL. Ex. 34(Kramer declaration), para 3; PL. Ex. 116 (Kramer Declaration, 1/17/2024, ¶¶ 7-9.

220. The patent work HBSR undertook included HBSR's assessment and prosecution of all of BlueRadios' unique technologies, technical solutions, and processes. PL. Ex. 82 (Depo. Ex. 20) (HBSR was to work with BlueRadios to ███████████████ ████████████████████████████████████████████ PL. Ex. 117 (Depo. Ex. 23) (HBSR was told ████████████████████████████████ ████████████████████████████████████████████

221. Had BlueRadios known that HBSR would not protect its interest, it would have immediately terminated the joint development agreement. PL. Ex. 34 (Kramer Dec., ¶ 13).

222. By the time BlueRadios learned of Kopin's and HBSR's malfeasance, it did not make sense for BlueRadios to terminate the agreement because BlueRadios believed Kopin had already licensed intellectual property relating to the Golden-i project to third parties. PL. Ex. 34 (Kramer declaration, ¶ 13).

223. A reasonable lawyer should have known that BlueRadios likely believed HBSR was its counsel.  PL. Ex. 16 (Prof. Tu Decl., Ex. A, p. 20).

224. Had HBSR acted as reasonable, unconflicted counsel, they would have protected BlueRadios' technology and should have obtained a significant patent portfolio for BlueRadios.  BlueRadios would then have avoided the extraordinary expense it has incurred in its lawsuit against Kopin to unwind some of the harm caused by HBSR's wrong-doing and the loss of a valuable patent portfolio. PL. Ex. 38 (Prof. Chao Decl., Ex. A, ¶¶ 101-107); See also, PL. Ex. 15 (Prof. Hricik Decl., ¶¶508, 607).

225. The damages calculation is not depended upon the termination of the contract, assuming the patent portfolio BlueRadios should have obtained were obtained. PL. Ex. 27 (Campanella Depo., 82:9-84:2).

226. BlueRadios technology applied to many different applications other than microdisplay, including Apple CarPlay and Android Auto Technologies included in Professor Chao's Tier 1 technology.  PL. Ex. 89 (Dr. Hernandez Decl., Ex. A, ¶¶ 99, 315-341, Appx. A, p.12).

227. HBSR should have considered patenting various BlueRadios' inventions as standalone patents, including the Bluetooth proxy and a number of others. PL. Ex. 38 (Prof. Chao Decl., Ex. A., ¶¶ 101-107).

228. HBSR should have known that the conflict created unwaivable conflicts, PL. Ex. 15 (Prof. Hricik Decl., Ex. A, ¶¶ 495-511); PL. Ex. 16 (Prof. Tu Decl., Ex. A, pp. 53-58), and it was required to disclose the conflict and refrain from giving BlueRadios legal advice other than to secure different counsel. *Id*. At pp. 24-26. If the parties insisted upon using HBSR, HBSR should have required the parties to renegotiate the contract, with unconflicted counsel. PL. Ex. 38 ( Prof. Chao Decl., Ex. A, ¶¶ 150-151).

Respectfully submitted this 19th day of February, 2024.

*/s/ Michael T. Mihm*
Michael T. Mihm, Pro Hac Vice
Elizabeth J. Hyatt, Pro Hac Vice
James E. Fogg, Pro Hac Vice
OGBORN MIHM, LLP
1700 Lincoln Street, Suite 2700
Denver, Colorado  80203
Telephone: (303) 592-5900
Facsimile: (303) 592-5910
Michael.Mihm@OMTrial.com
Elizabeth.Hyatt@OMTrial.com
James.Fogg@OMTrial.com

David B. Seserman, Pro Hac Vice
SESERMAN LAW LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (303) 900-2406
Facsimile: (303) 670-0990
dseserman@seserman.law

Douglas W. Salvesen (BBO# 550322)
Sanford F. Remz (BBO# 549198)
YURKO PARTNERS, P.C.
One Tech Drive, Suite 205
Andover, Massachusetts 01810
Telephone: (617) 381-4404
DSalvesen@yurkopartners.com
SRemz@yurkopartners.com

*Counsel for Plaintiff, BlueRadios Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 19, 2024, I electronically served the foregoing on all counsel of record.

*/s/ Michael T. Mihm*