**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ )<br><br>**BLUERADIOS, INC.,**<br><br>        **Plaintiff,**<br><br>        **v.**<br><br>**HAMILTON, BROOK, SMITH &**<br>**REYNOLDS, P.C., et al.,**<br><br>        **Defendants.**<br><br>_____ ) | **Case No. 21-cv-10488-DJC** |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                      **September 18, 2024**

**I.     Introduction**

Plaintiff BlueRadios, Inc., ("BlueRadios") has filed this lawsuit against Defendants Hamilton, Brook, Smith & Reynolds, P.C. (the "Law Firm"), David J. Thibodeau, Jr. ("Thibodeau"), Lawrence P. Cogswell III ("Cogswell"), Gerald Kazanjian ("Kazanjian"), David E. Brook ("Brook"), Joshua Matloff ("Matloff") and Nelson Scott Pierce ("Pierce") (collectively, "Defendants") alleging legal malpractice (Count I), breach of fiduciary duty (Count II), aiding and abetting breach of fiduciary duty (Count III), fraudulent nondisclosure or fraudulent concealment (Count IV), aiding and abetting fraudulent concealment (Count V) and a violation of Mass Gen. L. c. 93A ("Chapter 93A") (Count VII) in relation to patent prosecution of a headset called Golden-

1

i. D. 47.[1]  Defendants have moved for summary judgment as to all claims.  D. 209.  BlueRadios has moved for partial summary judgment on the issue of whether an attorney-client relationship existed between Defendants and BlueRadios, D. 208, and on the issue of whether BlueRadios could terminate a contract relating to development of the Golden-i headset with Kopin Corporation ("Kopin"), D. 204.  For the reasons stated below, the Court ALLOWS Defendants' motion for summary judgment, D. 209, and DENIES BlueRadios's motions for partial summary judgment, D. 204, 208.

## II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (citation omitted).  The movant "bears the burden of demonstrating the absence of a genuine issue of material fact."  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  See Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).  "When deciding cross-motions for summary judgment, the court must consider

---

[1] The Court previously dismissed Counts I and II against Matloff and dismissed Count VI, the civil conspiracy claim, against all Defendants.  D. 69.

each motion separately, drawing inferences against each movant in turn."  Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

## III.    Factual Background

The Court draws the following facts from the parties' statements of undisputed facts, responses to the same and accompanying exhibits.

### A.    BlueRadios Contracts with Kopin to Develop Golden-i

BlueRadios is a Colorado corporation that develops wireless technology.  D. 247-1 ¶ 11.[2] Mark Kramer ("Kramer") is the President and Chief Executive Officer of BlueRadios.  D. 227-1 ¶ 2; D. 247-1 ¶ 12.  Wilfred Tucker ("Tucker") is the co-founder of BlueRadios and Chief Technology Officer.  D. 227-1 ¶ 2; D. 247-1 ¶ 27.  Randy Jones ("Jones") was a co-founder and software architect at BlueRadios and John Sample ("Sample") was one of BlueRadios's engineers. D. 227-1 ¶ 2.  On July 28, 2008, BlueRadios hired Christoper Parkinson ("Parkinson") who worked on software development for Golden-i and who was an employee until mid-2009. D. 252 ¶¶ 38, 41, 43; D. 247-1 ¶ 53.  Parkinson assigned his intellectual property rights to BlueRadios.  D. 247-1 ¶ 52.  BlueRadios did not tell the Law Firm that it had entered into an agreement with Parkinson or that Parkinson had any assignment rights to BlueRadios.  Id. ¶ 55.

Kopin is a Massachusetts corporation that designs and manufactures micro-display technology.  D. 227-1 ¶ 4; D. 247-1 ¶ 1.  John C.C. Fan ("Fan") was Kopin's founder, Chairman, Chief Executive Officer and President.  D. 227-1 ¶ 4.  Hong Choi ("Choi") was Kopin's Chief

---

[2] The Court notes that a number of the responses to statements of facts, see, e.g., D. 247-1, contain some duplicitous paragraph numbering because they are responding to multiple statement of facts and/or assert a statement of additional facts. The Court, however, has kept the citations to the paragraph numbers as they appear in each document to conform with the citations in the parties' briefing and because which paragraph the Court is referencing is clear from the context of the Court's analysis.

Technology Officer.  Id.  Jeffrey J. Jacobsen ("Jacobsen") was a Kopin employee and the manager for the development of Golden-i.  Id.; D. 247-1 ¶ 9; D. 252 ¶ 9.

In the fall of 2006, Kopin hired Jacobsen to develop the product called "Golden-i." D. 227-1 ¶ 14.  BlueRadios and Kopin discussed a potential business relationship to design, develop, and manufacture a headset, called "Golden-i," that would wirelessly play audio and video.[3]  D. 247-1 ¶ 9; D. 227-1 ¶ 15.  On June 5, 2007, Kopin and BlueRadios entered a written contract titled "Golden-i Wireless Video Design Solution" (the "Contract").  D. 230 ¶ 1; D. 247-1 ¶ 14.  The Contract outlined each parties respective rights and obligations concerning Golden-i development efforts.  Id.  The Contract contained the following relevant provisions:

> BlueRadios will own all rights, title and interest including intellectual property rights in any and all technology and products developed by it before the start of this contract or developed outside the scope of this contract.
>
> Any intellectual property rights developed by BlueRadios in the course of this development contract ("Joint Developments"), will be owned jointly with no obligation of financial accounting to the other party; provided, however, that BlueRadios agrees not to use, sell or license Joint Developments for any micro-display applications.
>
> Kopin will have the sole right and responsibility to decide whether or not to seek patent protection with respect to any intellectual property rights that are developed as part of or incorporated into the project deliverables and to file for, procure and maintain such patents at Kopin's expense.
>
> BlueRadios hereby grants Kopin an exclusive royalty-bearing (under Article V above) license to any solely owned BlueRadios intellectual property rights incorporated into the project deliverables to use, sublicense, make and have made, and sell products for all micro-display applications. . . .

D. 213-15 at 6-7; D. 230-1 ¶¶ 8, 10, 11; D. 247-1 ¶ 15; D. 252 ¶ 13.  Under the Contract, Kopin agreed to pay BlueRadios $35,000 per month as a fixed retainer and pay BlueRadios a per-unit

---

[3] The parties dispute when they initially discussed forming a relationship in late 2006 or early 2007, see D. 227-1 ¶ 15, but the date is immaterial to the Court's analysis.

royalty that was capped at $7.8 million.[4]  D. 252 ¶ 13.  Kopin also retained the right to cancel the

Contract at any time with a 90-day written notice.  D. 230-1 See D. 227-1 ¶ 4.

Kopin and BlueRadios executed an addendum to the Contract on October 22, 2008.

D. 252 ¶ 16.  The addendum waived the $35,000 monthly payment to BlueRadios and BlueRadios

agreed to deliver ten "fully functional, stable, consistently operating" Golden-i hardware to Kopin.

D. 247-1 ¶ 21; D. 213-18 at 2.  The royalty cap remained at $7.8 million.[5]  D. 247-1 ¶ 21; D. 213-

18 at 2.  The addendum provided that the Contract continued to remain in full force and effect

except as expressly modified.  D. 247-1 ¶ 22.  To date, no party has terminated the Contract.  D.

247-1 ¶ 23.

**B.**     **Kopin Chose to Use the Law Firm to Prosecute Patents Relating to Golden-i**

Kopin has previously used the Law Firm to file patents on their behalf since the 1990s.

D. 247-1 ¶ 2.  Thibodeau, Pierce and Brook were shareholders of the Law Firm and registered

patent attorneys with the United States Patent and Trademark Office ("USPTO").  D. 227-1 ¶¶ 7-

9.  Thibodeau left the Law Firm in July 2012 and Mary Lou Wakimura ("Wakimura") took over

the Golden-i patent portfolio.  D. 247-1 ¶ 199.  Cogswell became a shareholder of the Law Firm

in January 2020 and is a patent attorney registered with the USPTO.  D. 227-1 ¶ 11; D. 247-1 ¶

90.  Cogswell never communicated directly with BlueRadios during the time period.  D. 247-1 ¶

91. Kazanjian, Jean-Paul Cass ("Cass") and Matloff are former associates of the Law Firm and

---

[4] Although BlueRadios disputes that Kopin was responsible for all costs and the characterization of this statement of fact, the Contract provided that there was a "monthly fixed NRE retainer of $35,000 per month" and there was a "$7.8M Royalty Income Cap."  D. 213-15 at 5-6.

[5] BlueRadios disputes Defendants' characterization of the addendum, D. 247-1 ¶ 21, but the Court notes that the addendum states that the royalty cap is $7.8 million and BlueRadios waived the "existing" $35,000 monthly engineering services retainer under the Contract.  See D. 213-18 at 2.

are patent attorneys registered with the USPTO.  D. 227-1 at 4-5.  Matloff never had any ownership interest in the law firm or communicated directly with BlueRadios.  D. 247-1 ¶¶ 92-93.  Kopin did not have a written engagement letter with the Law Firm regarding prosecuting patents for the Golden-i project.   Id. ¶ 113; D. 252 ¶ 36.

In April 2007, Jacobsen told the Law Firm about Kopin's plan to work with BlueRadios to develop Golden-i.  D. 247-1 ¶ 24.  On May 2, 2007, Jacobsen wrote an email to Kramer that Cass is the lead counsel on Golden-i and Kramer forwarded that email to Tucker and told him to call the attorney to "see how we can help him."  D. 227-1 ¶ 26.  On June 19, 2007, two weeks after signing the Contract, BlueRadios was formally introduced to the Law Firm.   D. 247-1 ¶ 27.  Jacobson wrote an email to Kramer and Tucker stating that "JP Cass and David Thibodeau from Kopin's IP Law firm" would be contacting them to "organize the preparation of patent disclosures covering BlueRadios['] wireless technology."  Id.  On June 27, 2007, Thibodeau emailed Jacobsen stating he had spoken with Tucker and BlueRadios was ready to "help document possible new inventions" concerning the "Kopin/BlueRadios jointly funded efforts on Golden-i" and asked Jacobsen to send a copy of the Contract.  D. 227-1 ¶ 42; D. 247-1 ¶¶ 121-22; see D. 211-16 at 2.  Although the parties dispute how much time Defendants spent initially reviewing the Contract, D. 247-1 ¶ 115, it is undisputed that the Law Firm reviewed and conferred concerning the Contract between Kopin and BlueRadios.  D. 227-1 ¶43; D. 247-1 ¶ 115.

### C.    BlueRadios's Relationship with the Law Firm Concerning Patent Prosecutions for Golden-i

In June and July 2007, BlueRadios and the Law Firm discussed areas for "possible new patent disclosures."  D. 227-1 ¶ 41.  In August 2007, Jacobsen asked Tucker to work with the Law Firm to get on file the first patents concerning Bluetooth and wireless technology disclosures.  Id. ¶ 45.  Specifically, Jacobsen requested that BlueRadios create a "Master List" of

their unique technologies that could be patentable and then have BlueRadios and the Law Firm

work together to create the explanations and specifications to support each patent.  Id. ¶ 46.

Most of the communications between BlueRadios and the Law Firm about patents and

technology went through Jacobsen at Kopin, who was the project manager.  Id. ¶ 64; D. 247-1 ¶

128.  Jacobsen confirmed that the "team" does not have any secrets and that there should be open

communication between Kopin, BlueRadios and the Law Firm.  D. 227-1 ¶ 80.  BlueRadios did

not make individual requests for the Law Firm to perform discrete tasks.  D. 247-1 ¶ 30.

BlueRadios often referenced the Defendants as "Kopin lawyers."  Id. ¶ 37.  The Law Firm did not

inform BlueRadios or provide them with any written notice that the Law Firm was not acting as

BlueRadios's attorneys.  D. 227-1 ¶ 33.  The Law Firm did not advise BlueRadios that they should

seek independent counsel or inquire whether BlueRadios had other patent counsel.  Id. ¶ 34.

### D.      **The Law Firm Filed Patent Applications**

Between January 2008 and January 2009, the Law Firm filed several Golden-i patent

applications that named BlueRadios employees among the inventors.  D. 252 ¶ 26.  Upon

publication, the entire file history for the patent application, including filings made after the

publication date, can be viewed by anyone.  D 234-124 ¶ 43.  Defendants did not file any non-

publication requests and the patent applications and their file histories were publicly visible.  Id. ¶

45.

### 1.      *Provisional Patent Applications*

#### a)      '177 Provisional Patent Application

On December 4, 2007, Jacobsen emailed Thibodeau asking about the "initial patent

disclosures" related to BlueRadios's and Parkinson's efforts.  D. 227-1 ¶ 69.  On December 6,

2007, Thibodeau emailed a first draft of the BlueRadios hardware patent application to Jacobsen

and Cass and copied Kramer, Tucker, Parkinson and Kopin employee, Steve Pombo ("Pombo").

Id. ¶ 70.  Thibodeau followed up on January 3, 2008 asking if they had reviewed the draft patent

application.  Id. ¶ 71.  Thibodeau inquired as to who should be listed as inventors on the patent

and Tucker and Kramer confirmed that Tucker, Kramer, Sample and Jones should be listed as

investors.  Id. ¶¶ 72-73.  On January 4, 2008, the Law Firm filed U.S. Provisional Patent

61/010,177 (the "'177 Provisional Patent") that named BlueRadios's Tucker, Kramer, Sample and

Jones as inventors.  D. 247-1 ¶ 42a.  The '177 Provisional Patent only names BlueRadios

employees as inventors.  D. 227-1 ¶ 76.

In April 2008, Tucker emailed Thibodeau concerning modifications to patent applications

for the '177 Provisional Patent and told him that he had updated two patents and documents and

he was wondering what the status was and requested the Law Firm send him the submitted

versions.  Id. ¶ 85.  Tucker sent revisions of the '177 Provisional Patent back to Thibodeau noting

that Jacobsen had asked him to forward to the Law Firm his updates and requested that Thibodeau

review them and "send me back any changes."[6]  Id. ¶ 87.

b)      '090 Provisional Patent Application

On January 4, 2008, Thibodeau filed U.S. Provisional Patent 61/010,090 (the "'090

Provisional Patent") that named Parkinson as the only inventor.  D. 247-1 ¶ 14.  On January 16,

2008, the Law Firm sent BlueRadios filed copies of the '090 Application.  Id. ¶ 56(b).  On

December 31, 2008, Kramer emailed Tucker that he had read over the patent and that "it has

specific claims that BlueRadios contributed or were original author for" and noted that "[n]ot

listing someone from our Company is sort of reckless."  D. 252 ¶ 46.  Kramer further stated that

_____

[6] Defendants dispute that Tucker sent revisions to the '177 Provisional Application as the revisions sent were made to the October 12, 2007 draft of the '177 Provisional Application that had been previously filed in January 2008.  D. 227-1 ¶ 87.

the "Patent Attorneys need to be aware of this" and questioned whether he should send the Law Firm a formal letter.  Id.  BlueRadios did not send a formal letter.  Id. ¶ 47.  Later that day, Tucker emailed Jacobsen stating that he believed that Sample should be added as an inventor to the '090 Provisional Patent.  D. 247-1 ¶ 17; D. 252 ¶ 47.  Tucker claimed that the Bluetooth proxy included in the '090 Provisional Patent was a concept that Parkinson and Sample had developed together. D. 247-1 ¶ 17.  Jacobsen copied Tucker's message and sent it to Kazanjian on January 2, 2009. Id. ¶ 18.  Kazanjian forwarded Jacobsen's email to Thibodeau and noted that the Law Firm needed to discuss "inventorship/reliance on the development agreement" and that "previous discussions to try to split things out may have been fruitless."  Id. ¶ 20.

### 2.   Non-Provisional Patent Applications

#### a)   '462 Application

On May 14, 2008, the Law Firm filed the U.S. Non-Provisional Patent 12/152, 462 (the "'462 Application"), which named Jacobsen, Pombo, Parkinson, Tucker and Sample as inventors. D. 247-1 ¶ 21.  The '462 Application claimed the benefit of the '177 Provisional Patent and '90 Provisional Patent.  Id.

On November 21, 2008, Kazanjian sent Tucker a letter stating that he and Sample were listed as inventors on the '462 Application and noted that if the application was acceptable that they should sign the declaration.  Id. ¶ 23.  Tucker returned the signed declaration on December 24, 2008.  Id.  On January 8, 2009, Kazanjian only filed declarations signed by Pombo, Jacobsen and Parkinson, but did not file Tucker's declaration and the Law Firm did not tell Tucker that his declaration was not filed.  Id.  On May 7, 2009, the '462 Application was published, without listing any BlueRadios inventors and listing Kopin as the assignee, and its file history was made public by the USPTO.  D. 234-124 ¶ 43a.  The '462 Application issued as U.S. Patent 9, 116, 340 on

August 25, 2015.  D. 247-1 ¶ 25.

           a)        '627 Application

On January 5, 2009, Thibodeau filed the U.S. Non-Provisional Patent 12/348,627 (the "'627 Application") listing Kramer, Sample, Tucker and Jacobsen as inventors.  D. 247-1 ¶ 35. The '627 Application claimed the benefit of the '177 Provisional Application, which named Kramer, Sample, Tucker and Jones as inventors, and was also a continuation in part of the '462 Application.  Id. ¶ 36.  Kazanjian filed a power of attorney with the '627 Application.  D. 227-1 ¶ 124.

Prior to the filing, on December 22, 2008, Thibodeau emailed Tucker concerning the '627 Application, asked him to review the application and noted that the draft should include the updates Tucker sent via email in April and that the two of them should "plan to discuss the right way to handle invention(s) in the other applications."  Id. ¶ 106.  The draft of the '627 Application cited "U.S. Patent Application No. 12/152, 462 by Jacobsen, et al. and assigned to Kopin Corporation." D. 247-1 ¶ 57d.  On December 25, 2008, Tucker emailed Jacobsen, copying Thibodeau and Kazanjian, and noted that after reviewing the applications that he is "right" and that "there are important claims missing" and "anyone that contributed should be on them." D. 227-1 ¶ 107.  Four days later, Tucker sent Jacobsen an email asking for a copy of '462 Application referenced in the '627 Application to which Thibodeau replied, attaching copies of the '462 Application.  D. 247-1 ¶ 57e.

On January 4, 2009, BlueRadios made a request to the Law Firm to broaden the patent language to ensure the patent covered a WiFi embodiment, which the Law Firm did not do.[7]

---

[7] BlueRadios disputes that this is the only request it made to the Law Firm, D. 252 ¶ 28, but the Court notes that in its response, BlueRadios does not point to another specific request made to the Law Firm "to do something BlueRadios now claims [the Law Firm] should have done."  Id.

D. 227-1 ¶ 114 ; D. 247-1 ¶ 31; see D. 252 ¶ 28; D. 228-28 at 2.  On March 27, 2009, Tucker asked

Jacobsen for filed copies of certain patent applications, and Kazanjian sent Tucker, Jacobsen and

Parkinson filed copies of the '627 Application, which named Jacobsen, but not Jones as an

inventor.  D. 247-1 ¶ 59b.  That same day, Tucker forwarded the '627 Application to Kramer,

which lists Jacobsen as an inventor.  Id. ¶ 59c.  On April 21, 2009, Kramer sent Choi an executed

Declaration for the '627 Application which identified Jacobsen as an inventor.  Id. ¶ 59d.  On June

26, 2009, Choi sent an assignment for the '627 Application to Kramer, Tucker and Sample which

listed Jacobsen as an inventor.  Id. ¶ 59e.  On August 20, 2009, the '627 Application was published,

listing Jacobsen, but not Jones, as an inventor, and its file history was made public by the USPTO.

D. 234-124 ¶ 43b.  The '627 Application issued as a patent on January 15, 2013.  Id. ¶ 38.

b)   '646 Application

On January 5, 2009, Thibodeau filed the U.S. Non-Provisional Patent 12/348,646 (the

"'646 Application") listing Parkinson, Tucker, Sample and Jacobsen as inventors.  D. 247-1 ¶ 28.

The '646 Application was a continuation of the '462 Application and claimed the benefit of the

'090 Application.[8]  Id.; D. 252 ¶ 26f.  On March 27, 2009, Kazanjian emailed Tucker the as-filed

version of the '646 Application, which listed Kopin Corporation as the "assignee."[9]

D. 247-1 ¶¶ 58a, 30.  On June 19, 2009, Kazanjian subsequently filed declarations for the '646

Application from Parkinson, Tucker, Sample and Jacobsen.  Id. ¶ 31.  On October 8, 2009, the

'646 Application was published, listing Kopin as the assignee, and its file history was made public

---

[8]  Defendants dispute that '646 Application claimed the benefit of only the '090 Application,  D. 247-1 ¶ 28, because the '646 Application was a continuation of the '462 Application which claimed the benefit of the '177 and '090 Applications.  See D. 247-1 ¶ 21.  The Court notes, however, that it is undisputed that the '462 Application was amended in March 2009 to remove priority to the '177 Provisional Application.  See D. 247-1 ¶ 24.

[9]  BlueRadios disputes that the form listed Kopin as the assignee, but the patent application does designate Kopin as the assignee for "publication purposes."  See D. 213-29 at 5.

by the USPTO.  D. 234-124 ¶ 43c.  The '646 Application issued as a U.S. Patent on December 9, 2014.  D. 247-1 ¶ 34.

c)      '147 PCT Application

On May 14, 2008, the Law Firm filed International Application No. PCT/US08/06147 (the "147 PCT") with the World Intellectual Property Organization ("WIPO") in Geneva, Switzerland. D. 247-1 ¶ 179.  As originally filed, the forty-four claims in the '147 PCT Application are identical to the claims in the '462 Application filed on the same day.  D. 234-124 ¶ 42c; D. 247-1 ¶ 180. The '147 PCT lists Jacobsen, Pombo, Tucker and Sample as applicants and inventors.  D. 247-1 ¶ 182.  On March 19, 2009, the Law Firm wrote to WIPO and noted that Tucker had been incorrectly identified by the wrong name in the '147 PCT and Kramer and Jones were omitted and requested a correction of those errors.  Id. ¶ 189.  The Law Firm eventually abandoned the '147 PCT Application in 2011.  Id. ¶ 194.

**E.      BlueRadios is Removed From Certain Patent Applications**

On March 6, 2009, Kazanjian subsequently filed an amendment to the '462 Application, which removed the '462 Application's claim of benefit to the '177 Provisional Application. D. 247-1 ¶ 24.  The amendment corrected inventorship to reflect that only Jacobsen, Parkinson and Pombo were listed as investors.  Id.  The Law Firm did not tell Tucker and Sample that they had been removed as inventors on the '462 Application.  Id.

In June 2012, the Law Firm emailed Choi about the '646 Application and "strategies for handling BlueRadios related claims" relating to overcoming a rejection concerning that patent application.  D. 247-1 ¶ 197.  The Law Firm discussed that one way to make changes to the list of inventors would be to file a continuation which would cancel claims having the BlueRadios subject matter and list only Kopin inventors.  Id.  Choi responded that he preferred to file a new

12

continuation application with the revised claims that involved Kopin inventors only.  Id. ¶ 201.  In

August 2012, Matloff worked with Choi to amend the '646 Application.  D. 247-1 ¶ 202.  On

September 16, 2012, Matloff filed a Request for Correction/Amendment of Inventorship

requesting that the USPTO amend the application and remove Tucker and Sample as inventors

based on an amendment to the claims.  Id. ¶ 32.  The Law Firm did not inform BlueRadios of this

change to the '646 Application.  Id.

### F.    BlueRadios Hires a Patent Attorney to Understand BlueRadios's Patent Portfolio

BlueRadios last directly communicated with the Law Firm in June 2009.  D. 252 ¶ 52.

BlueRadios's relationship with Kopin also broke down around July 2009.  Id. ¶¶ 48-49, 51.

In 2011, BlueRadios hired James Klobucar ("Klobucar") as a contract patent attorney.

Id. ¶ 54.  Klobuchar prepared and filed patent applications and conducted patent assessments for

BlueRadios.  Id.  On August 14, 2014, Kramer contacted Kopin concerning BlueRadios being

approached about an acquisition from Google and asked about the "past IP" to have a better

understanding of the intellectual property protection surrounding the Golden-i project.  D. 247-1

¶ 41; D. 252 ¶ 56.  Jacobsen directed Kramer to contact Choi about the Golden-i patent portfolio,

but Choi never responded.  D. 247-1 ¶ 41.  After this exchange with Kopin, BlueRadios conducted

their own inquiry into the patent portfolio and noted that "we couldn't find our names on patents

that we were claimed to be put on from Kopin and our patent attorney HBSR."[10]  D. 248-8 at 3;

see D. 247-1 ¶¶ 42-44.

---

[10] Although BlueRadios disputes that they had inventorship concerns at the time they
engaged Klobucar in November 2014 as described further below, BlueRadios does not dispute,
that Kramer conducted this patent inquiry prior to engaging him for his patent search and review.
See D. 247-1 ¶¶ 43-44; D. 244; D. 261.

On November 14, 2014, BlueRadios emailed Klobucar to obtain more information about the status of the Golden-i project.  D. 247-1 ¶ 43; D. 252 ¶ 57a.  In the email, BlueRadios asked Klobucar to "search for patents" filed under Sample, Tucker, Kramer, Parkinson or Jacobsen.  D. 252 ¶ 57d.  That same day, Klobucar billed to a matter titled "Golden-i" for an initial patent search and contract review.  Id. ¶ 57f.  On November 26, 2014, Klobucar compiled a list of "patents and patent applications" that he identified based on his search of the patent history and noted the status of the patent application, certain aspects of the prosecution history, and who was currently listed and who had been previously listed as an inventor.  D. 234-24 ¶¶ 6-7; see D. 247-1 ¶ 73c.

In January 2015, Klobucar billed for drafting a "letter regarding inventorship" and eventually sent that demand letter and another letter to the Law Firm on May 13, 2015 and October 28, 2015.  D. 252 ¶ 59.  In these letters to the Law Firm, Klobucar noted, among other things, that there were inconsistencies and inaccuracies in the patent applications and it was "troubling" that the patent application publications listed Kopin as the assignee.  Id. ¶ 61.  Klobucar did not state in the letters that the Law Firm had ever represented BlueRadios.  Id. ¶ 62.

### G.    BlueRadios Sues Kopin in Colorado for Breach of the Golden-i Contract

In August 2016, BlueRadios sued Kopin in the United States District Court for the District of Colorado for, among other things, allegations of breach of contract relating to the Contract.  D. 250 ¶ 22-23; D. 252 ¶ 65.  BlueRadios moved to disqualify the Law Firm as Kopin's litigation counsel in the Colorado suit, alleging that the Law Firm had been BlueRadios's attorneys.  D. 252 ¶ 66.  BlueRadios alleged that the Law Firm served as its counsel from 2007 to 2016 under the Contract.  Id. ¶ 68.  BlueRadios and the Law Firm entered a tolling agreement on December 5, 2017.  D. 247-1 ¶ 87.

**IV.    Procedural History**

BlueRadios instituted this action on March 22, 2021, D. 1, and then amended its complaint, D. 47.  Defendants moved to dismiss certain of the claims, D. 54.  The Court allowed the motion to dismiss as to Counts I and II against Matloff, and the civil conspiracy claim (Count VI) against all Defendants, but otherwise denied the motion.  D. 69.  BlueRadios has now moved for partial summary judgment on the issue of whether an attorney-client relationship existed between Defendant Law Firm and BlueRadios, D. 208, and on the issue of whether BlueRadios could have terminated the Contract with Kopin, D. 204.  Defendants have moved for summary judgment as to all claims.  D. 209.  The Court heard the parties on the pending motions, and took these matters under advisement.[11]  D. 257.

**V.    Discussion**

**A.    BlueRadios's Claims Are Barred by the Statute of Limitations**

Defendants assert that BlueRadios's claims are time-barred because BlueRadios should have discovered any misconduct as early as 2008 but no later than November 2014.  D. 214-1 at 7-12.  BlueRadios counters that its claims did not accrue on or before December 5, 2014 and it did not learn that it had suffered appreciable harm by the Law Firm until spring 2017, and the statute of limitations are subject to tolling under the continuous representation and fraudulent concealment doctrines.  D. 244 at 4-11.

---

[11] Following the hearing, BlueRadios filed a motion for leave to file a sur-reply in support of its response to Defendants' motion for summary judgment, D. 261, which Defendants opposed, D. 262.  The Court notes that the information provided in the excerpts of the deposition transcript, D. 261-1 at 3-7, is substantively similar to the information in the Klobucar affidavit that was already in the record.  Compare D. 261-1 with D. 234-24.  The Court, therefore, grants the motion for leave *nunc pro tunc* and has considered both the sur-reply and Defendants' opposition to same, D. 261; D. 262, in resolving the pending motions.

There is a three-year statute of limitations for legal malpractice, fraudulent concealment, breach of fiduciary duty and aiding and abetting such claims, Mass. Gen. L. c. 260 § 4  and a four-year statute of limitations applies for Chapter 93A claims.  Mass. Gen. L. c. 260 § 5A; see Int'l Strategies Grp., Ltd. v. Greenberg Traurig, LLP, 482 F.3d 1, 14 (1st Cir. 2007) (recognizing, under Massachusetts law, aiding and abetting tort claims have a three-year statute of limitations).  Here, it is undisputed that the parties entered into a tolling agreement in December 5, 2017.  See D. 247-1 ¶ 87.  For BlueRadios claims to be timely, BlueRadios must show that they did not discover the harm until after December 5, 2013 for their Chapter 93A claim and after December 5, 2014 for their other claims.[12]  D. 214-1 at 8; D. 244 at 4.

---

[12] The parties dispute whether a three or four-year statute of limitations applies to BlueRadios's Chapter 93A claim.  See D. 214-1 at 8; D. 244 at 4.  Defendants contend that the Chapter 93A claim is subject to a three-year statute of limitations because it is predicated on the same facts underlying BlueRadios's other tort claims.  See D. 214-1 at 8.  This position has been adopted where the Chapter 93A claim, as here, is merely a recasting of their malpractice or breach of fiduciary duty claims.  See, e.g., Alves v. Cohan, No. 22-P-720, 2023 WL 2903418, at *4 (Mass. App. Ct. Apr. 12, 2023) (unpublished opinion) (applying three-year statute of limitations to Chapter 93A claim that merely recast the legal malpractice claim), review denied, 492 Mass. 1102 (2023); Tocci v. Holland & Knight, LLP, 21-P-1023, 2022 WL 3129971, at *2 (Mass. App. Ct. Aug. 5, 2022) (unpublished opinion) (applying a three-year statute of limitations to plaintiff's Chapter 93A claim predicated on its breach of fiduciary duty claim).  Although it does not appear that the Supreme Judicial Court has squarely addressed this issue, its case law also lends support to same.  See Hendrickson v. Sears, 365 Mass. 83, 85 (1974) (acknowledging that "limitation statutes should apply equally to similar facts regardless of the form of proceeding"); Passatempo v. McMenimen, 461 Mass. 279, 292 (2012) (declining to apply a different statute of limitations to the 93A claim because "plaintiffs have not merely repackaged claims" and have made a permissible election between overlapping but distinct remedies and harms); cf. Solfisburg v. Glenco, Inc., No. 18-cv-10266-IT, 2022 WL 20086812, at *9 (D. Mass. Feb. 2, 2022) (declining to dismiss the chapter 93A claim because the other underlying claims failed based on a three-year statute of limitations and also noting the Chapter 93A claim also survives summary judgment applying the four-year statute of limitations).  Although concluding that BlueRadios has pled their 93A claim as a recasting of their other tort claims, D. 47 ¶ 462 and a three-year statute of limitations applies, the Court analyzes this claim under the longer, four-year statute of limitations since BlueRadios's claim is untimely even under this longer limitations period.  See Tocci, 2022 WL 3129971, at *2 n.7 (noting that even if we "consider the G.L. c. 93A claim under a four-year statute of limitations, the plaintiff's claims would be barred").

Under the discovery rule, the statute of limitations starts when the plaintiff discovers, or reasonably should have discovered, "that [he] has been harmed or may have been harmed by the defendant's conduct." Koe v. Mercer, 450 Mass. 97, 101 (2007) (quoting Bowen v. Eli Lilly & Co., 408 Mass. 204, 205-06 (1990)).  Once a client or former client knows or reasonably should know that he has sustained appreciable harm as a result of the lawyer's conduct, the statute of limitations starts to run. Williams v. Ely, 423 Mass. 467, 473 (1996). "Appreciable harm includes 'injury, loss or detriment' that is 'capable of being measured or perceived.'" Frankston v. Denniston, 74 Mass. App. Ct. 366, 374 (2009) (internal citations omitted).  For legal malpractice claims, one measure of appreciable harm is when a plaintiff expends additional legal fees to ameliorate the harm caused by the attorney's malpractice.  See Rosen Const. Ventures, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 364 F.3d 399, 405 (1st Cir. 2004).  If a defendant pleads the statute of limitations and shows that the action started more than three years after plaintiff's injury, "the plaintiff has the burden of proving that the facts take the case outside of the statute of limitations." Williams, 423 Mass. at 474; Koe, 450 Mass. at 101 (recognizing that a plaintiff invoking the discovery rule in response to a summary judgment motion, "must demonstrate a reasonable expectation of proving that the claim was timely filed").

1.      *BlueRadios was on Constructive Notice of Their Claims as of 2008 and 2009*

BlueRadios contends that the Law Firm engaged in misconduct by depriving BlueRadios of inventorship, ownership and assignment rights in several patents, including, the '090 Application, the '627 Application, ' 462 Application, '646 Application and '147 PCT.  See D. 47 ¶¶ 170-81, 215-78, 292-312.  The Court agrees with Defendants that BlueRadios had knowledge

of the issues of which BlueRadios has complained of concerning inventorship and assignment rights as early as 2008 and 2009.  See D. 214-1 at 8-9.

a)    The '090 Application

The undisputed facts indicate that BlueRadios first had notice of potential issues with inventorship in 2008.  On January 16, 2008, the Law Firm forwarded BlueRadios filed copies of the '090 Application in which the application only named Parkinson as an inventor, which BlueRadios has alleged was incorrect.  See D. 247-1 ¶¶ 49, 56b; D. 47 ¶ 174 (alleging that "[n]either Parkinson nor any Kopin employee contributed to the conceptions of the inventions reflected" in the '090 Application).  Moreover, on December 31, 2008, Kramer emailed Tucker that he had read over patent applications and that "it has specific claims that BlueRadios contributed or were original author for" and noted it was "sort of reckless" for the Law Firm to leave off Tucker as an inventor on the '090 Application.  D. 247-1 ¶ 60; D. 252 ¶ 46.  Kramer acknowledged that the "Patent Attorneys need to be aware of this" and questioned whether he should send the Law Firm a formal letter.  D. 252 ¶ 46.  Following this exchange, BlueRadios did not send a formal letter to the Law Firm, but Tucker requested that Sample be added as an inventor to the '090 Application.   D. 247-1 ¶ 61.  "In malpractice cases alleging the negligent provision of professional advice, expressions of misgiving are compelling proof that the plaintiff was on notice."  RTR Techs., Inc. v. Helming, 815 F. Supp. 2d 411, 421 (D. Mass. 2011); Lyons v. Nutt, 436 Mass. 244, 249 (2002) (reasoning that plaintiff was on notice of his claims when he first expressed misgivings that his attorneys did not know what they were doing and a plaintiff need only know that he has sustained appreciable damage as a result of lawyer's conduct and "need not know that his lawyer was negligent for the cause of action to accrue").  Although BlueRadios contends that it "had no idea" about the determination of inventorship and the connection between

18

any harm and the Law Firm, D. 244 at 5-8, this argument is unpersuasive, as here, Kramer undisputedly stated in the email that the Law Firm was "reckless" for not ensuring the right inventorship and contemplated sending formal notice of his reservations which indicates that BlueRadios was on notice of the Law Firm's role in the alleged harm.  The Court, therefore, concludes that BlueRadios had notice of any inventorship issues as of December 2008 concerning the '090 Application.[13]

> b)    '462 Application

As to the '462 Application, the undisputed facts indicate that BlueRadios had notice that the '462 Application incorrectly named Kopin as the sole assignee in December 2008.  See D. 247-1 ¶ 57d; D. 47 ¶ 235 (alleging that "the Law firm incorrectly named Kopin as the sole assignee of the '462 Application, despite knowledge that BlueRadios'[s] employees had assigned their inventive rights to BlueRadios and knowing the terms of the Golden-i Contract").  On December 22, 2008, Thibodeau sent Tucker a draft of the '627 Application and the text of the draft included

---

[13] Although BlueRadios claims that the '090 Application cannot serve as a basis for accrual because it was a provisional patent and therefore incapable of producing harm, D. 244 at 6-7, this argument is unavailing as BlueRadios has brought claims against the Law Firm based on inconsistencies in the '090 Application that "assist Kopin in attempting to obtain sole ownership of the technology disclosed in the '090 Provisional Application and any related patent applications, to the detriment of BlueRadios."  See D. 47 ¶ 180; see id. ¶¶ 166-81.  Further, BlueRadios's reliance upon Gilead Scis., Inc. v. United States, 151 Fed. Cl. 742, 748 (2020) (internal citations omitted), is inapplicable because the harm Gilead alleged included the "risk of patent infringement damages" which would not have incurred until the government gained the right to enforce the patent against Gilead.  Id.  Here, the harm that BlueRadios alleged was incorrect inventorship, which formed the basis, for example, of its breach of fiduciary duty claim, and therefore the statute of limitations began when BlueRadios was alerted to the factual basis of its claims.  See D. 47 ¶ 411;  Geo. Knight & Co. v. Watson Wyatt & Co., 170 F.3d 210, 214 (1st Cir. 1999) (affirming that plaintiff's claims for breach of fiduciary duty and Chapter 93A were time-barred because the forms filed annually on behalf of plaintiff expressly stated the issue that plaintiff complained of and "there can be no question that [plaintiff] had sufficient information—indeed, all of the information—it needed to know of the alleged 'underfunded' condition of the Plan" that formed the basis for its claims) (emphasis in original).

the language that the '462 Application was assigned to Kopin.  See D. 247-1 ¶ 57d.  On December 29, 2008, Tucker sent Jacobsen and Thibodeau an email acknowledging the language in the '627 Application that stated the '462 Application was assigned to Kopin and requested a copy of the file.  Id. ¶ 57e.  Thibodeau replied, stating that the '462 Application "was filed in May" and provided another copy of the text and drawings.  Id.; D. 213-57 at 2.  On this record, BlueRadios cannot dispute that it was on notice of the factual basis for its claim that the Law Firm had incorrectly assigned the '462 Application to Kopin as of December 22, 2008.  See Tocci, 2022 WL 3129971, at *2 (reasoning that plaintiff's claims were time-barred because the statute of limitations began when the plaintiff had notice of "the particular wrongdoing that formed the basis of his claims" even if the plaintiff "was not at the time aware of all details of the potential claims arising from that conduct").

### c)   The '627 Application

The undisputed facts indicate that BlueRadios had notice in March 2009 for the factual basis of its complaint that the '627 Application incorrectly named Jacobsen as an inventor and omitted Jones as an inventor.  D. 247-1 ¶ 59; D. 47 ¶¶ 222-23.  On March 27, 2009, Tucker received the filed version of the '627 Application in which the application identified Jacobsen, Kramer, Sample and Tucker, but not Jones, as inventors.  D. 247-1 ¶ 59b.  That same day, Tucker forwarded the '627 Application to Kramer.  Id. ¶ 59c. Although BlueRadios maintains that they only discovered in the Colorado litigation in 2017 that Jacobsen may have been erroneously added, D. 244 at 7-8, BlueRadios claims are predicated on allegations that "Jacobsen did not contribute to the conception of the subject matter described in any of the claims in, and should not have been named as an inventor on, the '627 Application,"  D. 47 ¶ 222, and that Jones should have been named an inventor on the '627 Application.  Id. ¶ 223.  BlueRadios has acknowledged that the

Law Firm was responsible for deciding who was listed as an inventor on the patent applications. See D. 234-3 at 39-40. As the undisputed facts show that BlueRadios received a filed copy of the '627 Application in March 2009 which excluded Jones and may have incorrectly added Jacobsen, and BlueRadios understood that the Law Firm listed the inventors on the patents, BlueRadios was on sufficient notice of the inventorship concerns that it now complains of in the '627 Application. If BlueRadios had reservations about inventorship, it had a duty to inquire further at this time. See Koe, 450 Mass. at 102-03 (recognizing that "the discovery rule does not grant plaintiffs the option of ignoring connections once they have been made aware of them" and once plaintiffs have sufficient knowledge or notice they have "a duty to act or at least inquire further").

d)      '646 Application

BlueRadios was also on notice of its complaint in March 2009 that the Law Firm incorrectly named Kopin as the sole assignee of the '646 Application despite knowledge that BlueRadios's employees had inventor rights. See D. 47 ¶¶ 244-45. It is undisputed that on March 27, 2009, the Law Firm emailed Tucker the as-filed version of the '646 Application which listed Kopin as the "assignee" of the patent. D. 247-1 at ¶¶ 58a, 30; see D. 213-29 at 5. BlueRadios disputes that Kopin was listed as the assignee of the patent application and argues that Kopin was only listed as the assignee for publication purposes. D. 247-1 at ¶ 58a. Even if Kopin was only listed as the assignee for publication purposes, as BlueRadios has alleged that sole assignment to Kopin was incorrect, D. 47 ¶¶ 244-45, BlueRadios was on notice that there was a potential issue with assignment and had a duty to inquire further at that time. See Koe, 450 Mass. at 102-03; Geo. Knight & Co. 170 F.3d at 215 (reasoning that plaintiff's failure to make further inquiry to resolve an apparent inconsistency precluded a finding that the plaintiff exercised diligence in discovering the basis for its claims).

e)      The Patent Applications Were Publicly Available

Moreover, although BlueRadios argues that it had "no reason to know" that the Law Firm had failed to add Sample as an inventor to the '090 Application or had removed BlueRadios from certain patent applications, D. 244 at 7-8,"[u]nder Massachusetts law, a fact is not inherently unknowable[14] when it is a matter discoverable by examination of public records."  Wise v. Hubbard, 769 F.2d 1, 2–3 (1st Cir. 1985).  Here, BlueRadios does not dispute that the above patent applications were filed publicly and could be viewed by anyone, and therefore, the basis for BlueRadios's claims were discoverable in 2009.  See D. 234-124 ¶¶ 44-46.  For example, it is undisputed that the '462 Application published without listing any BlueRadios inventors and listing Kopin as the assignee on May 7, 2009, the '627 Application was published on August 20, 2009 and listed Jacobsen, and not Jones, as an inventor and the '646 Application was published on October 8, 2009 and listed Kopin as the assignee.  Id. ¶43. Based on the numerous representations made to BlueRadios of the facts underlying the basis of the claims and well as the ability for them to independently discover any alleged issues with the patents as they were publicly visible, BlueRadios was on notice of their claims as of 2009 at the latest as no reasonable jury could find that BlueRadios acted with the requisite level of diligence in discovering the purported inconsistencies in ownership and inventorship underlying the basis for their claims.  See Geo. Knight & Co., 170 F.3d at 215; Wise, 769 F.2d at 3 (concluding that plaintiff's conversion claim for listing an incorrect inventor on a patent was time-barred because plaintiff could have discovered the basis for his claims earlier based upon the publication of the patent).

---

[14] The "inherently unknowable" standard is the equivalent of the "knew or should have known" standard.  Davalos v. Bay Watch, Inc., No. SJC-13534, 2024 WL 4031129, at *4 (Mass. Sept. 4, 2024).

2.    *BlueRadios had Notice of its Claims in November 2014 at the Latest*

Defendants further argue that BlueRadios, at the latest, had notice of their claims in November 2014 when BlueRadios engaged Klobucar to evaluate its patent portfolio.  D. 214-1 at 11-12.  Specifically, the parties contest whether BlueRadios had knowledge as of November 26, 2014 that it had suffered harm based on a chart that Klobucar compiled of the patent history.  See D. 214-1 at 11-12; D. 244 at 8-9; D. 261-1 at 3-7; D. 262 at 4-6.  The undisputed evidence indicates that Klobucar compiled a list of "patents and patent applications" that he identified based on his search of the patent history and noted the status of the patent application, certain aspects of the prosecution history, and who was currently listed and who had been previously listed as an inventor.  D. 234-24 ¶¶ 6-7; id. at 17; see D. 247-1 ¶ 73c.  Klobucar's chart identified (1) that Tucker and Sample had been deleted as inventors from the '646 Application, (2) that there were inconsistencies in the named inventors of the '462 Application which listed Tucker and Sample on the filed document but the patent only currently listed Jacobsen, Parkinson and Pombo as inventors, (3) the '627 Application had issued as a patent that had named Kramer, Sample, Tucker and Jacobsen as inventors and (4) that the '147 PCT patent had been abandoned.  See D. 234-24 at 17; D. 248-48 at 23-37, 39-44.  Klobucar also searched for assignments and noted that patents were assigned to Kopin, but not BlueRadios.  See D. 248-48 at 10-13.  Defendants contend that Klobucar's list directly relates to BlueRadios's claims in this case, and therefore, was sufficient to put BlueRadios on notice that they had suffered appreciable harm because any knowledge that Klobucar gained was imputed to BlueRadios.  D. 246-1 at 5; D. 262 at 4-5; see D. 234-24 at 17.  BlueRadios counters that BlueRadios did not have notice of harm because at the time it asked Klobucar to evaluate the patents it was concerned about royalty payments from Kopin and not inventorship.  D. 244 at 8.  BlueRadios further argues, and Klobucar testified, that he did not

evaluate the patents for their correctness in November 2014. See D. 261-1 at 3-7; D. 234-24 ¶ 8. Klobucar testified that he shared the information he complied with BlueRadios around mid-December 2014. See 248-48 at 5.

The Court is not persuaded that BlueRadios has adduced sufficient evidence to show a factual dispute that BlueRadios was not on notice of harm by November 2014 at the latest. Kramer testified in the Colorado litigation that in August 2014 BlueRadios undertook to understand the complete list of patents and the value of them because of a potential acquisition and initiated contact with Jacobsen to "get an estimate of what [Kopin] thought the patents were worth." D. 247-1 ¶ 72, 41; D. 248-16 at 3-5. The record indicates that on August 13, 2014, Kramer emailed Jacobsen at Kopin indicating that a company approached BlueRadios about being acquired and as part of that due diligence process, Kramer wanted to "discuss and gain a better understanding of some of the past IP for proper financial evaluation." D. 247-1 ¶ 72; D. 213-69 at 3; D. 234-53 at 3. On August 14, 2014, Jacobsen replied that Kramer would need to discuss "Kopin's patent filings, issued patents and product rights under Kopin's agreements" as well as any questions on royalties with Choi. D. 247-1 ¶¶ 41-42; D. 213-69 at 2; D. 234-53 at 2. Kramer further testified that "[w]e were searching and we couldn't find our names on patents that we were claimed to be put on from Kopin and our patent attorney HBSR." D. 248-8 at 3; see D. 247-1 ¶ 42. Kramer stated that he then asked a patent attorney to "find the history of what happened to these patents" after he tried conducting his own search of the USPTO. D. 248-8 at 4; see D. 247-1 ¶ 43. Kramer further testified that he went back to the client and told him that there was a problem because "our names don't show on the patents" and realized that it would be "hard to sell a company based on [intellectual property] when you're taken off dozens of patents." D. 248-8 at 4; D. 248-16 at 5. The fact that BlueRadios conducted their own inquiry and then hired an attorney to look into the

patent history because they were not finding their names on patents was sufficient to provide notice

of harm and accrual of the statute of limitations.[15] See HDH Corp. v. LaFlamme, No. 03-P-1355,

2004 WL 2331715, at *2 (Mass. App. Ct. Oct. 15, 2004) (unpublished opinion) (recognizing that

"[t]he incurring of legal fees constitutes a sufficiently appreciable harm for purposes of the accrual

of a cause of action"); see also Fessenden Sch. v. Hub Int'l Ltd., 20-P-1171, 2021 WL 2742803, at

*3 (Mass. App. Ct. July 1, 2021) (unpublished opinion) (concluding that plaintiff suffered

appreciable harm when it incurred the cost of an investigation and firm was retained because "the

insurer's policies could not be located . . . and further investigation was required" despite the fact

that plaintiff claimed that the work was related to negotiations with a different entity).

    BlueRadios also had knowledge of the facts that Klobucar discovered during the course of

his patent search, including that Kopin was the sole assignee for certain patents, BlueRadios was

deleted as inventors on certain patents and the Law Firm were the attorneys prosecuting the patents.

See D. 234-24 at 17; DeVaux v. Am. Home Assur. Co., 387 Mass. 814, 818 (1983) (recognizing

that "[w]hen an agent acquires knowledge in the scope of her employment, the principal, . . ., is

held to have constructive knowledge of that information").  Although BlueRadios contends that

---

[15] The cases that BlueRadios cite for the premise that BlueRadios hiring Klobucar to review
BlueRadios's patent portfolio did not constitute appreciable harm, D. 244 at 8-9, do not warrant a
different outcome here.  See Rosen Constr. Ventures, Inc., 364 F.3d at 406-07 (reasoning that
plaintiff had not suffered appreciable harm when it hired another attorney because law firm
continued to provide repeated assurances that plaintiff would prevail and therefore plaintiff
engaged another attorney for reasons unrelated to dissatisfaction with representation); St. Paul
Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP., 379 F. Supp. 2d 183, 197 (D.
Mass. 2005) (reasoning that plaintiff was not on notice of appreciable harm when attorney
repeatedly provided assurances that he was acting aggressively in filing a meritless case and there
was no evidence that plaintiff had questioned or was otherwise dissatisfied with the attorney's
representation).  Here, there is no evidence that Defendants provided any such assurances to
BlueRadios.  Moreover, BlueRadios did incur appreciable harm by engaging Klobucar review the
patent history because Kramer recognized that he could not find BlueRadios's names on the
patents that were claimed to be put on from Kopin and the Law Firm.  D. 248-8 at 3; D. 247-1 ¶
42; Fessenden Sch., 2021 WL 274803, at *3.

Klobucar was not tasked with understanding whether the patents were correct, D. 244 at 8-9, Klobucar did recognize at least some of the harm that BlueRadios complains of now as he testified that when he was conducting patent searches, he believed that assignment should have reflected both BlueRadios and Kopin as assignees based on the Contract, and "reviewed to determine if that was, indeed, the case," but identified that at least some of the patent applications were just assigned to Kopin.[16]  See D. 248-48 at 11-13; Levin v. Berley, 728 F.2d 551, 553 (1st Cir. 1984) (reasoning that the attorney's knowledge was imputed to the client for purposes of accrual).  On this record, at the time Klobucar compiled the list, a factfinder could not reasonably conclude that BlueRadios did not have notice of the harm as BlueRadios contends that the harm in this case was the loss of "valuable intellectual property rights," D. 244 at 30, recognized that it would be "hard to sell a company based on [intellectual property] when you're taken off dozens of patents," D. 248-8 at 4, and Klobucar's list outlines the factual basis of BlueRadios claims in this case, D. 246-1 at 5; see D. 234-24 at 17; Frankston, 74 Mass. App. Ct. at 373-74 (reasoning that the plaintiff need not know the extent of the alleged malpractice for the statute of limitations to commence and concluding that plaintiff was on notice when he was made aware of "the very issues that underlie the alleged legal malpractice" claim).  For all these reasons, the Court holds that BlueRadios's

---

[16] BlueRadios's argument that any knowledge of harm could not be imputed to Klobucar because he did not understand BlueRadios's relationship with the Law Firm, D. 261-1 at 3-7, 6 n.8 (citing cases), does not amount to a disputed issue of material fact because it is undisputed that Klobucar understood the material relationship (i.e. the Kopin-BlueRadios relationship as governed by the Contract in which they agreed to joint assignment of intellectual property, see D. 248-48 at 11-13) and understood that the Law Firm submitted the patent applications.  See id. at 19, 24-25, 29-33, 36, 45-46.

claims accrued before December 5, 2013 for its Chapter 93A claim and December 5, 2014 for all other claims, and are, therefore, barred by the statute of limitations.

### 3.    *Tolling is Not Applicable*

BlueRadios's claims are not saved under either the continuous representation or fraudulent concealment tolling doctrines.  <u>See</u> D. 214-1 at 12-13; D. 244 at 9-11.

### a)    <u>The Continuous Representation Doctrine</u>

A statute of limitations may be tolled under the continuous representation doctrine which "recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered."  <u>Cantu v. St. Paul Co.</u>, 401 Mass. 53, 58 (1987) (citation omitted).  "The doctrine has no application, however, where the client actually knows that he suffered appreciable harm as a result of his attorney's conduct."  <u>Lyons</u>, 436 Mass. at 250.  BlueRadios contends that the doctrine is applicable here because the Law Firm continued to update patents through at least August 25, 2015 and that neither BlueRadios nor the Law Firm ever formally terminated their relationship.  <u>See</u> D. 244 at 10.

First, and as discussed further below, BlueRadios cannot rely upon the continuous representation doctrine because there was no attorney-client relationship.  <u>See</u> <u>Int'l Strategies Grp., Ltd.</u>, 482 F.3d at 14 (recognizing that the continuous representation doctrine was inapplicable to toll the statute of limitations because there was no attorney-client relationship).  Even assuming *arguendo* that BlueRadios had an attorney-client relationship with the Law Firm, BlueRadios had expressed misgivings of the Law Firm's behavior as early as 2008 by noting that Defendants' conduct was "sort of reckless," D. 252 ¶ 46, and, therefore, the doctrine is inapplicable.  <u>See</u> <u>Cantu</u>, 401 Mass. at 58 (reasoning that "the innocence reliance which the continued representation

27

doctrine seeks to protect" was not implicated because plaintiff "had questioned and had assessed [the attorney's] representation of his interest and found it to be wanting").

Second, it is undisputed that the last communication BlueRadios had with the Law Firm was in June 2009, D. 252 ¶ 52, and aside from BlueRadios's assertion that the Law Firm continued to represent its interests, D. 244 at 10, BlueRadios has adduced no evidence that the Law Firm had any further communication with it, much less provided any legal guidance after 2009. See Int'l Strategies Grp., Ltd. v. Greenberg Traurig, LLP, No. 04-cv-12000-RWZ, 2006 WL 229034, at *4 (D. Mass. Jan. 30, 2006) (concluding that the continuous representation doctrine did not apply because the record was "devoid" of any evidence that plaintiff relied upon attorneys for continued legal advice and there was "no evidence of any assurances or communication at all" between plaintiff and the attorneys). Although BlueRadios contends that the Law Firm continued to represent its interests by prosecuting a single patent naming BlueRadios in August 2015, D. 244 at 10, the "ministerial acts" of updating the patents is insufficient to toll the statute of limitations because where the Law Firm did not provide any legal advice to BlueRadios by these updates. Spatorico v. Egan, Flanagan & Cohen, P.C., No. 19-cv-30090-KAR, 2022 WL 4586465, at *10 (D. Mass. Sept. 29, 2022) (reasoning that an attorney's ministerial acts did not toll the statute of limitations because the attorney did not provide any legal advice), aff'd sub nom. Spatorico v. Egan Flanagan & Cohen, PC, No. 22-1812, 2023 WL 11198259, at *1 (1st Cir. Nov. 9, 2023). Accordingly, there is no basis for the continuous representation doctrine to toll the statute of limitations.

b)      The Fraudulent Concealment Doctrine

BlueRadios's alternative argument that the statute of limitation is tolled by the fraudulent concealment doctrine is equally inapplicable. See D. 244 at 10-11. An action may be tolled "[i]f

a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."  Mass. Gen. L. c. 260 § 12.  "When the defendant owes the plaintiff a fiduciary duty, the failure to mention material circumstances related to that duty can constitute fraudulent concealment."  Moretti v. Deveau, No. 85-3930-Z, 1987 WL 9763, at *2 (D. Mass. Apr. 1, 1987). Even where there is a fiduciary relationship, however, the fraudulent concealment doctrine does not apply when the plaintiff has actual knowledge of the facts underlying their claims.  Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 519 (1997); Stark v. Advanced Magnetics, Inc., 50 Mass. App. Ct. 226, 234 (2000) (recognizing that the statute will "not be tolled if the plaintiff also had the means to acquire the facts on which his cause of action is based").  In the absence of a fiduciary relationship, the statute of limitations may be tolled under the fraudulent concealment doctrine "if the wrongdoer . . . concealed the existence of a cause of action through some affirmative act done with intent to deceive."  Epstein v. C.R. Bard, Inc., 460 F.3d 183, 189 (1st Cir. 2006) (internal citations and quotation marks omitted).

BlueRadios's tolling argument is predicated on there being an attorney-client relationship, or at least a confidential relationship. D. 244 at 10-11, 19-20.  As noted, there is no basis for an attorney-client relationship, and, therefore, BlueRadios must establish that Defendants owed them a duty of disclosure as a nonclient based on a confidential relationship.  A duty to a nonclient, however, is less likely to be imposed "where an attorney is also under an independent and potentially conflicting duty to a client."  Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 91 Mass. App. Ct. 835, 846 (2017) (internal citation omitted).

Assuming *arguendo* that there was a confidential relationship, the record indicates that the Law Firm had a potential conflict such that the Court declines to impose on Defendants a duty to BlueRadios as a nonclient, particularly after the relationship between Kopin and BlueRadios broke down in 2009.  See D. 214-1 at 22-23.  Although BlueRadios argues that Kopin's and BlueRadios's interests were aligned when "they agreed to jointly develop the technology" under the Contract and the parties did not anticipate a conflict, BlueRadios also argues that Defendants had a duty to disclose that the Contract created some potential conflicts of interest.  See D. 244 at 17-18, 31-32; One Nat. Bank v. Antonellis, 80 F.3d 606, 610 (1st Cir. 1996) (reasoning that potential conflicts of interest can exist even where the particular activity in question "may not be adverse, and may actually be beneficial" but the appropriate inquiry concerns the purpose of the entire legal representation, which includes the duty of confidentiality) (internal citation omitted); Lamare v. Basbanes, 418 Mass. 274, 276-77 (1994) (holding that the attorney owed the plaintiff no duty of care as a nonclient because the plaintiff's interests were adverse to the defendant's interests and owed no duty of care to the plaintiff's children because there was a potential conflict).  Here, there is undisputed evidence that BlueRadios was aware of potential conflicts of interest arising from the Contract.  For example, in response to an email from Tucker about adding Sample to a patent in December 2008, Parkinson replied that "Kopin wants Kopin . . . on their patents, and wants only BlueRadios folks on your patents."  D. 234-91 at 2.  The record also demonstrates an actual conflict developed between the parties in July 2009 as BlueRadios noted that Kopin was operating as if there is no Contract and effectively had "abandoned" the Contract.  D. 247-1 ¶ 67.  Moreover, Thibodeau testified that with respect to the patent application process, BlueRadios's and Kopin's interests were different, D. 247-1 ¶ 114; D. 234-39 at 23, and that there were continued discussions between Kopin and the Law Firm to try to "split" out Kopin's and BlueRadios's claims in 2009.

D. 247-1 ¶ 20; D. 234-43 at 2.  Further, in 2012, the Law Firm and Kopin were discussing potential options for "handling any 'BlueRadios' related claims'" for amending the '646 Application to overcome the USPTO's rejection of the Patent Application, which BlueRadios argues here was against their interests and should have been disclosed.  D. 234-107 at 2; see D. 244 at 20.

The undisputed evidence indicates that there were potential conflicts between BlueRadios's and Kopin's interests, particularly after the breakdown of the relationship in 2009, and, therefore, Defendants did not owe a duty of disclosure to BlueRadios as a nonclient.  See Int'l Strategies Grp., Ltd., 482 F.3d at 13.  Absent a duty of disclosure, fraudulent concealment is "generally not available where the plaintiff is capable of discovering the facts allegedly concealed."  Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc., 119 F.3d 55, 67 (1st Cir. 1997) (internal citation and quotation marks omitted).  Here, it is undisputed that that the patents were published and the file histories publicly available, and there is record evidence that BlueRadios had patent files in their possession that they sent to Klobucar to review, and therefore, BlueRadios had the means to discover the factual basis for their claims, including any changes in ownership or abandonment.  Id.; Wise, 769 F.2d at 4.

Even assuming arguendo that there was a confidential relationship between BlueRadios and Defendants, and BlueRadios was owed a duty of disclosure, BlueRadios cannot show that fraudulent concealment is applicable because BlueRadios had actual knowledge of potential inconsistencies with the ownership and inventorship.  BlueRadios contends, among other things, that Defendants have not adduced evidence that BlueRadios had actual knowledge of all of Defendants' misconduct, such as, that the Law Firm erroneously added Jacobsen as an inventor on the '627 Application, and excluded Jones.  D. 244 at 11.  The undisputed facts indicate, however, that on March 27, 2009 BlueRadios received from the Law Firm the '627 Application which listed

Jacobsen, but not Jones, as an inventor on the patent application.  D. 247-1 ¶ 59b.  On April 21,

2009, Kramer sent Choi an executed Declaration for the '627 Application which identified

Jacobsen as an inventor.  Id. ¶ 59d.  On August 20, 2009, the '627 Application was published,

listing Jacobsen, and not Jones, as an inventor, and its file history was made public by the USPTO.

D. 234-124 ¶ 43b.  The '627 Application also issued as a patent on January 15, 2013.  D. 247-1 ¶

38.  Moreover, Klobucar's list in November 2014 also indicated that '627 Application included

Jacobsen, but not Jones, as an inventor.  D. 248-48 at 36-37, 41.  As BlueRadios has acknowledged

that it was the patent attorneys who would have listed as inventors, D. 234-3 at 39-40, there is no

reasonable dispute that BlueRadios had actual notice of their claims.  For all these reasons, the

tolling doctrines are inapplicable and BlueRadios's claims are untimely.[17]

### B.    The Existence of an Attorney-Client Relationship

Although the claims are time-barred, Defendants and BlueRadios have both moved for

summary judgment concerning whether there was an attorney-client relationship between the Law

Firm and BlueRadios, and the Court addresses this argument for completeness.[18]  D. 212; D. 214-

1 at 14-22.  "In bringing a legal malpractice claim, [BlueRadios] must prove (i) an attorney-client

relationship, which by law imposes a duty on the attorney to exercise care, skill and knowledge in

providing legal services to the client; (ii) breach of such duty; and a connection of legally

---

[17]  Given the Court's ruling on the statute of limitations, the Court does not reach Defendants' alternative arguments as to the merits of the claims, except for the issue of whether there was an attorney-client relationship.  See D. 214-1 at 13-38.

[18]  Defendants have also moved for summary judgment specifically as to Cogswell as to legal malpractice claim, arguing that there is no basis for an implied attorney-client relationship as to him because he never communicated with BlueRadios.  See D. 214-1 at 38.  On this more developed record, summary judgment is appropriate on Count I as to Cogswell for the independent reason that the undisputed facts show that Cogswell never communicated directly with BlueRadios and only became a partner in 2020, years after the alleged malpractice.  D. 227-1 at 5; D. 247-1 ¶¶ 90-91; see Williams, 423 Mass. at 480.

recognized causation between the breach and the resulting harm to the client." <u>Weber v. Sanborn</u>, 526 F. Supp. 2d 135, 149 (D. Mass. 2007) (internal citation and quotation marks omitted). "Under Massachusetts law, the existence of an attorney-client relationship is ordinarily a question of fact." <u>Max-Planck-Gesellschaft Zur Foerderung der Wissenschaften E.V. v. Wolf Greenfield & Sacks, PC</u>, 736 F. Supp. 2d 353, 359 (D. Mass. 2010) (concluding on summary judgment that there was an attorney-client relationship). The Court recognizes that "a power of attorney does not ipso facto create an attorney-client relationship." <u>Sun Studs, Inc. v. Applied Theory Assocs., Inc.</u>, 772 F.2d 1557, 1568 (Fed. Cir. 1985) (reasoning there was no attorney-client relationship based on effectuating powers of attorney for patent prosecution when one party had the sole discretion to prosecute patent applications).

The parties agree that there was no written or express agreement between BlueRadios and the Law Firm, D. 247-1 ¶ 113; D. 252 ¶ 36, and, therefore, whether there is an attorney-client relationship will depend upon whether BlueRadios can establish that there was an implied attorney-client relationship. "To imply an attorney-client relationship, . . . the law requires more than an individual's subjective, unspoken belief that the person with whom he is dealing, who happens to be *a* lawyer, has become *his* lawyer." <u>Sheinkopf v. Stone</u>, 927 F.2d 1259, 1265 (1st Cir. 1991) (emphasis in original). There is a three-part test to determine whether an implied attorney-client relationship exists:

> (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. . . . In appropriate cases the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it.

DeVaux, 387 Mass. at 817–18 (internal citations omitted).  The parties agree that the proper test for an implied attorney-client relationship is DeVaux and the dispute centers around the first and third prongs.  See D. 212 at 6, 11-17; D. 214-1 at 14; D. 251 at 3 n.3.

Here, BlueRadios cannot meet the first prong of the DeVaux test.  Courts have understood the first prong to "require concrete communication by the plaintiff requesting that the attorney represent him, or explicitly seeking individualized legal advisement."  See Int'l Strategies Grp., Ltd., 482 F.3d at 8-9 (holding that plaintiff did not have an implied attorney-client relationship where there was no evidence that plaintiff explicitly requested legal advice).  BlueRadios argues that it can meet the first prong because (1) the Law Firm was engaged to prosecute patents under the Contract and (2) BlueRadios communicated with Defendants regarding the patent prosecutions, reviewed patent applications and requested to broaden the scope of a claim.  D. 212 at 11-12; D. 244 at 12-13; D. 251 at 3-4.  Neither of these contentions satisfy the first prong.

First, the Contract alone does not establish the first DeVaux prong because courts have interpreted the first prong to require "active communication from the plaintiff to the lawyer requesting legal representation or legal advice."  Int'l Strategies Grp., Ltd. 482 F.3d at 8-9 (citing cases); see Sheinkopf, 927 F.2d at 1268 (concluding that there was no implied attorney-client relationship where the undisputed facts indicated that plaintiff, among other things, "never explicitly requested [attorneys] to represent him"); DaRoza v. Arter, 416 Mass. 377, 381-82 (1993) (reasoning that establishing the first prong requires plaintiff to expressly seek the advice or assistance of the attorneys).  BlueRadios counters that the first prong of the DeVaux test does not require express legal assistance and can be established by implied requests evidenced by BlueRadios communicating directly with the Law Firm concerning patent applications and through Jacobsen.  D. 244 at 13-14.  BlueRadios relies upon Mass. Eye & Ear Infirmary v. QLT

34

Phototherapeutics, Inc., 167 F. Supp. 2d 108, 110 (D. Mass. 2001), in which another session of this court analyzed on a motion to compel whether certain documents were properly withheld based on attorney-client privilege.  Id.  The court concluded that the common interest exception applied to documents relating to certain patent applications but did not apply to documents that related to licensing agreements.  Id. at 125-27.  In particular, the court reasoned that it was objectively reasonable for the plaintiff to assume that an attorney-client relationship was established in relation to prosecution of a certain patent because the plaintiff had initiated a communication to the attorney that was marked "Confidential," provided information on a patent project and suggestions for patent coverages, which the court interpreted as effectively requesting legal advice on preparing a patent application.  Id. at 117-18, 121.  The court, however, held that the plaintiff did not have an attorney-client relationship concerning licensing of a different patent because "[plaintiff] has not shown that [the attorney's] statements were given in response to [plaintiff's] request for legal advice on the licensing matters."  Id. at 123.  Here, the undisputed facts indicate that BlueRadios contracted its ability to determine what patents would be prosecuted to Kopin under the Contract, D. 247-1 ¶¶ 30-31; D. 213-26 at 5; D. 252 ¶ 13b.[19]  Moreover, although BlueRadios's reliance upon the Contract may support its reliance argument for the third prong, it does not establish the requisite request for legal advice required under the first prong of DeVaux.  See DaRoza, 416 Mass. at 381-82 (reasoning that plaintiff's reliance upon two actions by attorneys to show an implied attorney-client relationship "might have pertinence to the third

---

[19] BlueRadios's reliance upon Wolf Greenfield & Sacks, 736 F. Supp. 2d at 359-60, does not warrant a different conclusion.  D. 212 at 11; D. 244 at 12.  Unlike here, the plaintiff there adduced evidence that he had identified himself as one of the law firm's "clients" and requested specific legal advice several times regarding a patent prosecution.  Wolf Greenfield & Sacks, 736 F. Supp. 2d at 359-60.

element of the DeVaux test, they cannot satisfy the first element" because neither action involved

the plaintiff seeking advice or assistance from the attorneys).

Second, BlueRadios's communications with Defendants do not establish individualized

requests for legal advice.  Although BlueRadios argues that it did request legal advice because the

Law Firm spoke to BlueRadios about "possible new patent disclosures" and BlueRadios requested

that the Law Firm broaden claims in the '627 Application to include WiFi enablement, provided

revisions to certain patent applications and BlueRadios discussed with the Law Firm "possible

areas of patentability," D. 212 at 12; D. 251 at 3-4, these facts are insufficient because they are not

individualized requests for legal advice.  See Sheinkopf, 927 F.2d at 1265 (reasoning that plaintiff

failed to adduce evidence of an implied attorney-client relationship because "the record is barren

of any evidence that [plaintiff] explicitly requested legal advice from [the attorney]" and "[i]t is

equally devoid of any direct indication that [the attorney] ever considered [plaintiff] to be his, or a

[Law Firm], client (or treated him as such)" and neither the law firm or individual attorney ever

billed the plaintiff for legal services); Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515,

522-23 (1989) (reasoning that there was no implied attorney-client relationship because there was

no evidence that the plaintiff requested the attorney personally represent him in the matter at issue,

never was told that the attorney would protect his interests, and was never billed for any services);

Furtado v. Oberg, No. 15-cv-312-JJM-LDA, 2019 WL 430893, at *4 (D.R.I. Feb. 4, 2019), aff'd

on other grounds, 949 F.3d 56 (1st Cir. 2020) (reasoning that there was no implied attorney-client

relationship because there was "no evidence of any individualized advice" given to the plaintiff by

the attorney).  It is undisputed that "BlueRadios did not make any individual requests for

[Defendants] to perform discreet tasks," D. 247-1 ¶ 30; D. 213-26 at 5, BlueRadios was not

invoiced by the Law Firm for any legal services, D. 252 ¶ 36,  and did not voice that it considered

the Law Firm to be its counsel prior to the Colorado lawsuit where it sought to disqualify the Law Firm from representing Kopin.  Id. ¶ 66.  On this record, absent active communication from BlueRadios requesting individualized legal advice or request for legal representation, BlueRadios has failed to adduce evidence that there is a genuine dispute that an implied attorney-client relationship was formed.[20]

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion for summary judgment, D. 209, DENIES BlueRadios's partial motion for summary judgment on the issue of an attorney-client relationship, D. 208, and DENIES BlueRadios's partial motion for summary judgment on the issue of contract termination, D. 204, as moot.

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[20] Given the Court's holding as to the first prong, the Court does not reach the parties' additional arguments on whether the third prong of DeVaux is satisfied.  See DaRoza, 416 Mass. at 381 (recognizing that "[a]ll three requirements of [the DeVaux] test must be met to establish the relationship," and concluding no implied attorney-client relationship was formed because plaintiff could not establish the first prong of the DeVaux test).